# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| JOVANNA EDGE, an individual; LEAH HUMPHREY, an individual; LIBERTY ZISKA, an individual; AMELIA POWELL, an individual; NATALIE BJERKE, an individual; BRITTANY GIAZZI, an individual; JUANITA CASTANEDA GUERRERO, an individual; and MATTESON HERNANDEZ, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF EVERETT, a Washington Municipal Corporation, <br><br> Defendant. | Case No. 2:17-cv-01361-MJP <br><br> **PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** <br><br> NOTE ON MOTION CALENDAR: November 3, 2017 |

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

# TABLE OF CONTENTS

Introduction .............................................................................................................. 1

Facts ......................................................................................................................... 2

    A.    The Baristas work in bikinis to earn a living and express themselves. ........................ 2

    B.    The City enacted two ordinances, one regulates what women wear in public and the other imposes a restrictive dress-code on workers at "quick service facilities." ........................................................................................................... 4

    C.    The Baristas do not understand the ordinances, and would be harmed by enforcement. ........................................................................................................ 7

    D.    Crime existed in Everett before bikini-barista stands arrived, and Baristas deter crime rather than cause it. ............................................................................... 7

Argument ................................................................................................................... 8

I.    The Baristas are likely to succeed on the merits of their claims. ........................... 9

    A.    The Dress Code Ordinance violates the United States and Washington Constitutions because it prohibits free expression and is not narrowly tailored to address the City's interests. ......................................................................... 9

        1.    The Baristas choice of dress is an expressive message entitled to First Amendment protection. .......................................................................... 9

        2.    The Dress-Code Ordinance is content based, seeking to suppress the message expressed by wearing a bikini. ...................................................... 10

        3.    The Dress-Code Ordinance is invalid under strict scrutiny because it is not narrowly tailored to a compelling state interest and less-restrictive alternatives exist. ................................................................................ 11

        4.    The Dress Code Ordinance also fails intermediate scrutiny because the restriction on the Baristas' freedom of expression does not further the City's claimed substantial interests. ............................................................ 14

    B.    The ordinances violate the Fourteenth Amendment's substantive due-process guarantee, equal protection clause, and are unconstitutionally vague. .................... 17

        1.    The Dress-Code Ordinance violates the Barista's substantive due-process rights because choice of dress and occupation are liberty interests. .......................................................................................... 17

        2.    Both ordinances violate equal protection because they impose a burdensome regulation upon women but not men, and the City lacks an "exceedingly persuasive justification." ........................................................ 18

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION–i
[Case No. 2:17-CV-01361-MJP]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

3.      Both ordinances are unconstitutionally vague, and encourage arbitrary and abusive enforcement............................................................20

II.     The Baristas will suffer irreparable harm by losing their rights of expression and liberty. ...............................................................................................22

III.    The harm to the Baristas far outweighs the City's interest, and the public interest is served by an injunction because the ordinances impose prohibitive restrictions on all Everett citizens with criminal implications. ....................................................23

Conclusion ......................................................................................................24

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION–ii
[Case No. 2:17-CV-01361-MJP]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

# TABLE OF AUTHORITIES

**Cases**

*Alderwood Assocs. v. Wash. Envtl. Council*,
635 P.2d 108 (Wash. 1981) ................................................................. 9

*All. for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) ........................................................ 8, 23

*Citizens United v. Fed. Election Comm'n*,
558 U.S. 310 (2010) .......................................................................... 9

*City of Erie v. Pap's A.M.*,
529 U.S. 277 (2000) ...................................................................... 9, 14

*City of Los Angeles v. Alameda Books, Inc.*,
535 U.S. 425 (2002) .............................................................. 14, 15, 16

*DeWeese v. Town of Palm Beach*,
812 F.2d 1365 (11th Cir. 1987) ....................................................... 17

*Drakes Bay Oyster Co. v. Jewell*,
747 F.3d 1073 (9th Cir. 2014) ........................................................... 8

*Forsyth County v. Nationalist Movement*,
505 U.S. 123 (1992) ........................................................................ 16

*Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*,
237 F. Supp. 3d 1126 (D. Colo. 2017) .............................................. 19

*Grayned v. City of Rockford*,
408 U.S. 104 (1972) .............................................................. 20, 21, 22

*Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*,
515 U.S. 557 (1995) .......................................................................... 9

*In re Nat'l Sec. Letter*,
863 F.3d 1110 (9th Cir. 2017) ......................................................... 11

*Ino Ino, Inc. v. City of Bellevue*,
937 P.2d 154 (Wash. 1997) ............................................................... 9

*Int'l Franchise Ass'n, Inc. v. City of Seattle*,
803 F.3d 389 (9th Cir. 2015) ............................................................. 8

*J.L. Spoons, Inc. v. City of Brunswick*,
49 F. Supp. 2d 1032 (N.D. Ohio 1999) ............................................ 16

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION–iii
[Case No. 2:17-CV-01361-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

*Kev, Inc. v. Kitsap County,*
  793 F.2d 1053 (9th Cir. 1986) ................................................................. 20

*Klein v. City of San Clemente,*
  584 F.3d 1196 (9th Cir. 2009) ................................................................. 22

*Lovell v. City of Griffin, Ga,*
  303 U.S. 444 (1938) ................................................................................... 9

*Loving v. Virginia,*
  388 U.S. 1 (1967) ..................................................................................... 17

*Meyer v. Nebraska,*
  262 U.S. 390 (1923) ................................................................................. 17

*Obergefell v. Hodges,*
  135 S. Ct. 2584 (2015) ....................................................................... 17, 18

*Planned Parenthood of Se. Pennsylvania v. Casey,*
  505 U.S. 833 (1992) ................................................................................. 17

*Reed v. Town of Gilbert, Ariz.,*
  135 S. Ct. 2218 (2015) ............................................................................ 10

*Reno v. Am. Civil Liberties Union,*
  521 U.S. 844 (1997) ................................................................................. 11

*Rent-A-Ctr., Inc. v. Canyon Television and Appliance Rental, Inc.,*
  944 F.2d 597 (9th Cir. 1991) ................................................................... 22

*Renton v. Playtime Theatres, Inc.,*
   475 U.S. 41 (1986) .................................................................................. 16

*Roberts v. U.S. Jaycees,*
  468 U.S. 609 (1984) ................................................................................. 18

*Spence v. State of Wash.,*
  418 U.S. 405 (1974) ......................................................................... 9, 10, 13

*Terminiello v. Chicago,*
  337 U.S. 1 (1949) ..................................................................................... 13

*Texas v. Johnson,*
  491 U.S. 397 (1989) .................................................................... 9, 10, 11, 13

*Tinker v. Des Moines Indep. Comty. Sch. Dist.,*
  393 U.S. 503 (1969) ................................................................................... 9

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION–iv          NEWMAN DU WORS LLP
[Case No. 2:17-CV-01361-MJP]

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

*Turner Broad. Sys., Inc. v. F.C.C.*,
  512 U.S. 622 (1994) ................................................................ 12, 14, 16

*United States v. Davis*,
  36 F.3d 1424 (9th Cir. 1994) ..................................................... 20

*United States v. Playboy Entm't Grp., Inc.*,
  529 U.S. 803 (2000) ...................................................................... 11

*United States v. Virginia*,
  518 U.S. 515 (1996) ...................................................................... 19

*Vaughn v. St. Helena Parish Police Jury*,
  192 F. Supp. 2d 562 (M.D. La. 2001) ...................................... 16

*Ward v. Rock Against Racism*,
  491 U.S. 781 (1989) ................................................................ 11, 16

*Wedges/Ledges of Cal., Inc. v. City of Phoenix, Ariz.*,
  24 F.3d 56 (9th Cir. 1994) ......................................................... 18

*Williamson v. Lee Optical of Okla. Inc.*,
  348 U.S. 483 (1955) ...................................................................... 18

*Wolff v. McDonnell*,
  418 U.S. 539 (1974) ...................................................................... 21

*Yick Wo v. Hopkins*,
  118 U.S. 356 (1886) ...................................................................... 20

**Statutes and Other Authorities**

Everett, Wash., Code § 5.132.020 (2017) ............................ 12, 19, 20, 21

Everett, Wash., Code § 5.132.040 (2017) ................................ 21

U.S. Const. amend. XIV, § 1 .......................................................... 18

Wash. Const. art. I, § 5 ................................................................... 9

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION–v
[Case No. 2:17-CV-01361-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

# INTRODUCTION

This case is about free speech and women's rights to equal protection under the law. The plaintiffs (the "*Baristas*") work at bikini-barista stands. Defendant City of Everett (the "*City*") just enacted two ordinances, one that restricts what all women may wear in public, and the other specifically regulates what the Baristas may wear to work.

The Baristas work in their bikinis not just to earn a living, but to convey a message that is protected by the First Amendment. Although the message from a male perspective may be sexual in nature, the Baristas wear bikinis to express freedom, empowerment, openness, acceptance, approachability, vulnerability, and individuality. By confidently revealing tattoos, scars, and personal attributes in the bikinis they select, Baristas open dialogue with customers about personal experiences. The City seeks to deny them this expression through an ordinance mandating a dress code on all "Quick Service Facilities," targeting bikini-barista stands.

The City also seeks to broaden the definition of lewd behavior with a second ordinance specifically calling out the "female breast." That ordinance includes a restriction on what women may wear using a measurement from the "top of the areola" that would subject women to a humiliating search.

Both ordinances violate substantive due-process because they are not rationally related to the various interests the City states. By requiring women to dress with restrictions that do not apply to men, the ordinances also violate women's rights to equal protection under the Fourteenth Amendment.

The Baristas earn their living working at bikini-baristas stands. Women across the City of Everett are being threatened with an unfairly sexist law that has criminal implications. All women are entitled to free speech and equal protection. The Baristas respectfully request the Court grant a preliminary injunction to prevent the City from enforcing the ordinances until the Court can determine whether they violate the Constitution.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION–1
[Case No. 2:17-CV-01361-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

# FACTS

## A.     The Baristas work in bikinis to earn a living and express themselves.

A drive-thru coffee stand serves coffee drinks, other nonalcoholic beverages, and food items to customers who order from their car and are served through a window. (Declaration of Jovanna Edge, dated September 21, 2017 ("Edge Decl.") ¶ 2.) A bikini-barista stand is a drive-thru coffee stand where the baristas are women dressed in bikinis. (*Id.* ¶ 8.) The bikini-barista stands provide these women opportunities to earn a living they otherwise could not.

Plaintiff Amelia Powell was struggling to manage a heavy course load at a major four-year university in Seattle and two full-time retail jobs before she became a bikini barista. (Declaration of Amelia Powell, dated September 18, 2017 ("Powell Decl.") ¶¶ 3–7.) To earn a living with a flexible schedule allowed her to work less hours and focus more on her studies. (*Id.* ¶ 8.) Plaintiff Liberty Ziska "can't work at another coffee place because with three kids, daycare would cost $4000 a per month." (Declaration of Liberty Ziska, dated September 21, 2017 ("Ziska Decl.") ¶ 16.) Working as a bikini barista allows her to be home during the day and earn enough to pay her living expenses. (*Id.*)

But for the Baristas, working at a bikini-barista stand is not just about the flexible schedule or money. Dressing in a bikini at work speaks to who they are as people and how they value their freedom. Plaintiff Natalie Bjerke says that "bikinis are a big part of the message of empowerment and approachability." (Declaration of Natalie Bjerke, dated September 20, 2017 ("Bjerke Decl.") ¶ 6.) Wearing a bikini at a barista stand "sends the message that we should be comfortable with our bodies and who we are." (*Id.* ¶ 9.)

"The bikini is an invitation to discuss." (Bjerke Decl. ¶ 8.) Plaintiff Brittany Giazzi agrees that wearing a bikini at work "helps customers open up and not be as shy." (Declaration of Brittany Giazzi, dated September 18, 2017 ("Giazzi Decl.") ¶ 7.) She explains that "the message I express by wearing a bikini…is confidence." (*Id.* ¶ 5.) Plaintiff Matteson Hernandez says "a bikini breaks down walls with customers and they feel more comfortable, maybe because we're in a more vulnerable state." (Declaration of Matteson Hernandez, dated September 18, 2017 ("Hernandez Decl.") ¶ 6.) Plaintiff Leah Humphrey explains that "the bikini allows me

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION–2
[Case No. 2:17-CV-01361-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

to…catch people's attention and from there, people exchange their viewpoints with me."
(Declaration of Leah Humphrey, dated September 18, 2017 ("Humphrey Decl.") ¶ 13.) She adds
that sometimes "they see me as a counselor because I am a good listener and give good advice."
(*Id.*) She says in "a bikini there is a transparency, where people can see me in a revealing way and
I am comfortable with that. And people feel that I'm an open person, and that makes them
comfortable too." (*Id.* ¶ 7.)

Wearing a bikini sparks political discussions about First Amendment freedoms. Ms.
Hernandez explains that some "countries make you wear lots of clothing because of their
religious beliefs. But America is different because you can wear what you want to wear. I wear
what I'm comfortable with and others can wear what they are comfortable with. Wearing a bikini
sends this message to others." (Hernandez Decl. ¶ 10.) Plaintiff Liberty Ziska states, "I get [to]
choose my own clothing at work. For me…the message I send is freedom. From the 40s-50s you
had to wear clothes a certain way. We are here saying we watched our moms and grandmas going
through hell and we don't have to. Millions of women fought for our rights and right to vote and
it's my right to wear what I want. It's my right as a person." (Ziska Decl. ¶ 4.)

Many of these Baristas have tattoos, scars, and other distinguishing features which are
visible only when wearing a bikini. Revealing these allows the baristas to express personal stories,
like how an accident or injury affected life or what a tattoo means to them personally. For Ms.
Humphrey, her scar from a childhood accident tells "a personal story about my own growth and
how far I've come and I share that story with customers, who open up about their own stories."
(Humphrey Decl. ¶ 9.) And for Ms. Ziska, tattoos on her arms, back, stomach, and hip inspire
"questions from customers about my tattoos – they ask me how, why, who, and what." (Ziska
Decl. ¶ 5.) She adds, "Most of [my tattoos] are not visible if I have to wear the clothing the
ordinance demands." (*Id.*)

Ms. Bjerke, who previously worked at Starbucks, explains that Starbucks is corporate and
professional. (Bjerke Decl. ¶ 6.) "The bikini barista image is more genuine, friendly, and
empowered." (*Id.*) Ms. Humphrey says that in "a traditional coffee place, that is not the bikini

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION–3
[Case No. 2:17-CV-01361-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

barista model, they require you to dress to their image. But being in a bikini expresses freedom and feels very free to me personally." (Humphrey Decl. ¶ 10.)

Ms. Hernandez notes that the "bikini tells customers that we are relatable and human." (Hernandez Decl. ¶ 6.) For her, wearing "a bikini is not a sexual message, more a message of empowerment." (*Id.* ¶ 9.) Ms. Humphrey doesn't "see being in a bikini as being sexual…it is more about accepting myself, and being accepted by the people around me." (Humphrey Decl. ¶ 6.) Ms. Bjerke says she wears "the same thing you can see at the beach." (Bjerke Decl. ¶ 21.)

**B.    The City enacted two ordinances, one regulates what women wear in public and the other imposes a restrictive dress-code on workers at "quick service facilities."**

Effective September 5, 2017, the City enacted Ordinance Nos. 3559-17 and 3560-17. Ordinance No. 3559-17 (the "*Citywide Ordinance*"), Attachment 1 to this motion, amends the City's lewd-conduct ordinance. It requires women to wear clothing that covers "more than one-half of the part of the female breast located below the top of the areola." The definition of "lewd conduct" now includes exposure of the "bottom one-half of the anal cleft." The City claims the Citywide Ordinance is designed to protect against "public acts of lewd conduct in Everett and neighboring communities and the negative effects of those public acts." (Citywide Ordinance at 1, ¶ 2.)

Ordinance No. 3560-17 (the "*Dress-Code Ordinance*"), Attachment 2 to this motion, regulates "quick service facilities." The Dress-Code Ordinance only applies to bikini-barista stands because no other "quick service facilities" exist. (Dress-Code Ordinance at 1–2.) The City is concerned that others might follow the bikini-barista model. (*Id.* at 2, ¶ 9.) The Dress-Code Ordinance requires baristas to completely cover their undergarments and upper and lower bodies, including "breast/pectorals, stomach, back below the shoulder blades, buttocks, top three inches of legs below the buttocks, pubic area and genitals." (*Id.* at 4, § 2(B).)

On July 19 and August 16, 2017, Everett's City Council held meetings where the City presented proposed versions of the ordinances. (Declaration of Jason Sykes, dated September 21, 2017 ("Sykes Decl.") ¶ 3, Ex. E ("July 19 Tr."), Ex. F ("Aug. 16 Tr.").) Citizens, including some bikini-barista owners, expressed their concerns about application and enforcement. One

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION–4
[Case No. 2:17-CV-01361-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

owner, Denver Reedy, stated he and his wife have "been operating for seven and a half years since 2010 without having issues with our fine police force. This is a poorly constructed ordinance that…segregates a small portion of the community and enforces standards upon us that will not be enforced on the community as a whole." (Aug. 16 Tr. 57:19–58:1.) He expressed concern about arbitrary enforcement asking the council, "Do we really want our police force…going around with a tape measure so they can check to be sure the…shorts are long enough or that blouses aren't cut too low?" (*Id.* at 58:16–20.) An owner of five stands discussed never having any problems with police or arrests, maintaining live-video monitoring at the stands, and not allowing drugs or alcohol. (July 19 Tr. at 109:17–110:4, 111:4–9; Aug. 16 Tr. at 61:2–16.)

A citizen commented that the problems the City wishes to combat are already addressed with other laws. (July 19 Tr. at 112:1–23.) And Council Member Brenda Stonecipher stated "I'm having a hard time understanding how this actually helps solve the problem…I don't think it changes the opportunity for prostitution and some of the other concerns that we have." (Aug. 16 Tr. at 77:18–24.) Ms. Stonecipher also questioned how the Dress-Code Ordinance would be enforced and how it would impact law-abiding businesses. (*Id.* at 81:9–10, 14–16.)

The City created a legislative record providing justifications for the ordinances, together with evidence to support its claimed interests. (Sykes Decl. ¶ 2, Exs. A–D (the "Record").) The City alleges lewd conduct by bikini baristas ranging from flashing, to "x-rated sex shows" and in-stand prostitution. (Record at LEG000774–75.) It describes law-enforcement challenges in investigating and stopping this conduct. (*Id.* at LEG000776.) The City alleges exploitation of baristas and drug use. (*Id.* at LEG000777–81.) The City is concerned about sexual assaults against baristas and using barista stands as cover for an escort business. (*Id.* at LEG000781.) The City is concerned about public masturbation by customers and a fatal fire at one barista stand. (*Id.* at LEG000782.) Finally, the City received verbal complaints from citizens and verbal complaints by competitors running "family friendly" barista stands. (*Id.* at LEG000783.)

The City claims the Dress-Code Ordinance is necessary because the "minimalistic nature of the clothing worn by baristas at these 'bikini' stands lends itself to criminal conduct." (Dress-Code Ordinance at 1, ¶ 2.) The City seeks to prevent: "a) increases in crime; b) increases in

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION–5
[Case No. 2:17-CV-01361-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

public sexual conduct; c) increases in the opportunity for the spread of sexually transmitted diseases; d) increases in corruption of minors; and e) adverse impacts upon the aesthetics and property values of the surrounding neighborhoods and businesses." (*Id.* at 2, ¶ 10.) The City conducted no research about bikini-barista impacts on aesthetics or property values. The City has no evidence that minors would be corrupted by women serving coffee in bikinis. The City has no evidence of any sexually-transmitted diseases at or near bikini-barista stands. The City did not consider evidence from other cities that have bikini-barista stands.

"Not every owner will allow illegal conduct," the City acknowledged, but it concluded that "risk is inherent in the bikini barista business model." (Record at LEG000784.) The City relied on "7 investigations from 2009-2014 by 4 different law enforcement agencies," which it argues shows the "problem is industry wide." (*Id.* at LEG000783.)

But the bulk of those reports can be traced to two bad actors, both of whom were ultimately convicted of serious crimes. The first, Bill Wheeler, Jr., owned and operated the Grab-N-Go barista stand and encouraged his employees to commit lewd conduct. (*Id.* at LEG000001–41, 73–129, 435–43, 458–81.) Wheeler was convicted of sexual exploitation of a minor. (*Id.* at 458–81.) Files relating to the investigation of Wheeler, the Grab-N-Go stand, and his subsequent conviction and failed appeal consume 131 pages of the Record. (*Id.* at LEG000001–41, 73–129, 435–43, 458–81.)

The second, Carmela Panico, owned and operated the Twin Peaks and Java Juggs stands. (*Id.* at LEG000042–72, 130–363, 482–97.) She had ties to organized crime, and rewarded baristas who committed lewd conduct. (*Id.*) Panico was convicted of several crimes and also violated Washington's wage laws. (*Id.*) She also may have corrupted a Snohomish County Sherriff's deputy by providing the officer with lewd acts in exchange for the officer informing her about law-enforcement sting operations planned for the stands. (*Id.* at LEG000166.) Files relating to Panico, the potentially corrupted deputy, Panico's stands, and the wage violations consume 281 pages. (*Id.* at LEG000042–72, 130–363, 482–97.) Between them, Wheeler and Panico account for about 90% (412 of 455 pages) of the police and state reports that the City relies on for its Record.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION–6
[Case No. 2:17-CV-01361-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

**C.    The Baristas do not understand the ordinances, and would be harmed by enforcement.**

Several Baristas find the ordinances confusing and do not know how to comply. (Bjerke Decl. ¶ 26.) Ms. Bjerke "tried to draw a diagram to figure out what the ordinances are trying to say," but couldn't, even after looking up the words in the ordinances. (*Id.*) Ms. Hernandez says the "new law is turning us into objects. The city wants to dress us up in ways that we're not comfortable with. They don't do that to men. That's sexist. People shouldn't objectify me because of what I wear, and that's what this new law is doing." (Hernandez Decl. ¶ 9.)

Ms. Hernandez relies on her income from the stand to pay her house payments, student loans, car insurance, and other bills. (Hernandez Decl. ¶ 17.) Full-time bikini barista, Ms. Bjerke, testified that without her job at the stand, she will lose income. (Bjerke Decl. ¶ 25.) She has "my apartment, my car payment, my pet dog. I pay my taxes. This is about all I have money for. I don't have a lot of extra money." (*Id.* ¶ 19.) She would not have an apartment or vehicle without the job. (*Id.* ¶ 17.) The Baristas would have to work twice the number of hours at a regular coffee stand to earn the same money. (*Id.* ¶ 18; Powell Decl. ¶ 8.) Ms. Humphrey also testified, "Without the money I make from being a bikini barista, I would just barely be getting by because the cost of living is so high. And I definitely could not make the same amount working for a regular coffee stand." (Humphrey Decl. ¶ 18.) Ms. Powell said that she "could not make anywhere near this amount of money working at a different job." (Powell Decl. ¶ 13.)

**D.    Crime existed in Everett before bikini-barista stands arrived, and Baristas deter crime rather than cause it.**

In 2015[1], Everett had 6,653 serious crimes, including 44 rapes and 225 aggravated assaults.[2] Bikini-barista stands are often the eyes and ears of the local neighborhood. One bikini-barista stand, owned by Plaintiff Jovanna Edge, shares a parking lot with a hotel and marijuana dispensary, which were open before Edge began business. (Edge Decl. ¶¶ 2, 9, 51; Bjerke Decl. ¶¶ 23, 27.) Several times, Baristas have called the police to report crime, vandalism, drug abuse,

---

[1] The most recent year statistics are available.
[2] FBI Seattle, *The FBI Releases 2015 Crime Statistics for Washington State*, September 26, 2016, https://www.fbi.gov/contact-us/field-offices/seattle/news/press-releases/the-fbi-releases-2015-crime-statistics-for-washington-state

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION–7                    NEWMAN DU WORS LLP
[Case No. 2:17-CV-01361-MJP]

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

and suspicious activity at or around these other businesses. (Bjerke Decl. ¶¶ 27–28.) Ms. Edge installed cameras at all her stands, and she provides real-time access to police officers. (Edge Decl. ¶ 16.)

Ms. Hernandez reported that nothing "illegal happens at the stand. The bikini stand doesn't cause the illegal activity." (Hernandez Decl. ¶ 25.) Ms. Bjerke testified, "I've seen criminal activity in the parking lot and when I see that I call [the police]." (Bjerke Decl. ¶ 27.) She notes that the barista stands do not cause the crime. (*Id.*) "I can guarantee there was criminal activity at that hotel and parking lot long before we got there." (*Id.*)

The Baristas say that working in a bikini does not make it more likely that they would do lewd or criminal acts. "Dressing in a bikini makes it less likely that baristas will expose themselves further because we make enough money doing what we are doing," Ms. Powell said. (Powell Decl. ¶ 15.) And Ms. Bjerke added, "I think being in a bikini, I am actually less likely to take my clothes off for tips" because Baristas earn enough money in bikinis. (Bjerke Decl. ¶ 22.) And Ms. Hernandez says that if she took off her clothes at work, she would lose her job. (Hernandez Decl. ¶ 22.) Ms. Hernandez does not need to remove her clothes. "I make enough money without taking my clothes off. All I have to do is be nice to customers. If I wanted to take my clothes off, I would be a stripper not a barista." (*Id.* ¶ 21.)

## ARGUMENT

A preliminary injunction should issue when a plaintiff shows that "(1) it is likely to succeed on the merits of its claim, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of hardships tips in its favor, and (4) a preliminary injunction is in the public interest." *Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 399 (9th Cir. 2015). "When the government is a party, these last two factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). Alternately, a preliminary injunction should issue when "serious questions going to the merits [are] raised and the balance of hardships tips sharply in the plaintiff's favor," combined with a likelihood of irreparable harm and showing that an injunction serves the public interest. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION–8
[Case No. 2:17-CV-01361-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

**I. The Baristas are likely to succeed on the merits of their claims.**

**A. The Dress Code Ordinance violates the United States and Washington Constitutions because it prohibits free expression and is not narrowly tailored to address the City's interests.**

"Congress shall make no law…abridging the freedom of speech, or of the press." U.S. Const. amend. I. The Fourteenth Amendment applies this prohibition to municipal corporations like the City of Everett. *Lovell v. City of Griffin, Ga*, 303 U.S. 444, 449–50 (1938). The First Amendment secures discourse. *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 349 (2010). Washington's Constitution provides that "Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that right." Wash. Const. art. I, § 5. Washington offers greater freedom-of-expression protection than does the federal constitution. *Ino Ino, Inc. v. City of Bellevue*, 937 P.2d 154, 163 (Wash. 1997); *Alderwood Assocs. v. Wash. Envtl. Council*, 635 P.2d 108, 112–113 (Wash. 1981).

First Amendment protection is not limited "to expressions conveying a particularized message" because then it "would never reach the unquestionably shielded painting of Jackson Pollock, music of Arnold Schöenberg, or Jabberwocky verse of Lewis Carroll." *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557, 569 (1995) (internal quotation marks omitted). Clothing choices can be protected forms of expression. *See Tinker v. Des Moines Indep. Comty. Sch. Dist.*, 393 U.S. 503, 505–06, 513–14 (1969). Even nudity combined with other acts is protected by the First Amendment. *City of Erie v. Pap's A.M.*, U.S. 277, 289 (2000).

**1. The Baristas choice of dress is an expressive message entitled to First Amendment protection.**

The First Amendment protects far more than spoken and written word. *See Texas v. Johnson*, 491 U.S. 397, 404 (1989). "In deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, we have asked whether '[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it.'" *Id.* at 404 (citing *Spence v. State of Wash.*, 418 U.S. 405, 410–11 (1974)) (alteration in original). Activity or conduct "sufficiently imbued with elements of communication" is expressive conduct entitled to protection. *Johnson*,

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION–9
[Case No. 2:17-CV-01361-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

491 U.S. at 404 (citing *Spence*, 418 U.S. at 409).

The Baristas dress in bikinis while serving coffee to express empowerment, personal freedom, openness, acceptance, friendly approachability, vulnerability, and individuality. In a society where much focus is placed on body image, Baristas working confidently dressed in bikinis convey their fearless body acceptance and freedom from judgment. Exposing tattoos and scars expresses personal viewpoints, and an invitation for customers to ask questions and open dialogue. The message sent is not necessarily sexual. Dressing in a bikini allows the Baristas to show who they are, connect with customers, and exchange viewpoints.

Bikini-barista stands also express a branding message. In the flooded market of retail coffee stores, where the largest players have a lock on the eyes and dollars of consumers by pushing out expensive advertisements, the Baristas distinguish themselves with bikinis. Just like Starbucks green aprons, UPS brown trucks and outfits, or Hooters short orange shorts for sex appeal—the Baristas present coffee in their unique way. For Starbucks, the brand message may be corporate and professional. The Baristas' message is more genuine, friendly, and empowered. Bikini-barista stands present coffee with an escape from everyday life because the apparel is reminiscent of a beach or resort. Without the bikini, this unique message is removed.

And these messages are "understood by those who viewed it." *See Johnson*, 491 U.S. at 404. As Ms. Bjerke testified, customers "see us as open and expressive in our bikinis and they feel they can open up." (Bjerke Decl. ¶ 8.) The Baristas explain how their choice of dress prompts conversations with customers about body image and self-confidence. The Baristas use their workplace outfits to send impactful messages, similar to uniforms in other industries like hospital scrubs (conveying cleanliness), a judge's robe (conveying solemnity and neutrality), a police uniform (conveying order and protection), or a business suit (conveying seriousness and professionalism).

**2.    The Dress-Code Ordinance is content based, seeking to suppress the message expressed by wearing a bikini.**

A law is content-based if it applies to speech because of the topic discussed or the idea or message expressed. *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2227 (2015). Even if a law is

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION–10
[Case No. 2:17-CV-01361-MJP]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

content-neutral on its face, the court must consider whether it is nevertheless content-based "because it 'cannot be justified without reference to the content of the regulated speech, or [was] adopted by the government because of disagreement with the message [the speech] conveys.'" *In re Nat'l Sec. Letter*, 863 F.3d 1110, 1123 (9th Cir. 2017) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)) (alterations in original).

The Supreme Court in *Johnson* held the statute, addressing the act of flag-burning, was a content-based restriction. 491 U.S. at 412. "Johnson's political expression was restricted because of the content of the message he conveyed." *Id.* Here, the Baristas' expression of bikini-wearing is restricted by the Dress-Code Ordinance because the City objects to the message.

The City identifies the Baristas manner of dress as "closely and customarily associated with adult entertainment or adult situations." (Dress-Code Ordinance at 1, ¶ 1.) It then forbids baristas from wearing bikinis, which is the way baristas express themselves. Since the Dress-Code Ordinance is targeted specifically at the manner of dress that forms the Baristas' expression, the regulation is content based.

**3.** **The Dress-Code Ordinance is invalid under strict scrutiny because it is not narrowly tailored to a compelling state interest and less-restrictive alternatives exist.**

When a law is a "content-based speech restriction, it can stand only if it satisfies strict scrutiny." *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000). When strict scrutiny applies, the law is presumed unconstitutional unless it is narrowly tailored to promote a compelling state-interest. *Id.* at 817. The restriction must be the least-restrictive means of achieving that compelling state-interest. *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 874 (1997). If less-restrictive alternatives would be at least as effective in achieving the state's purpose, the regulation fails strict scrutiny and is unconstitutional. *Id.*

The City's claimed interest is to prevent "the opportunity for scantily clad baristas to easily engage in sexual conduct with customers." (Dress-Code Ordinance at 1, ¶ 2.) And according to the City, bikinis cause "health, safety, economic, and aesthetic impacts, upon neighboring properties and the community as a whole, and that they have adverse impacts upon minors." (*Id.* ¶ 4.)

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION–11
[Case No. 2:17-CV-01361-MJP]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

The Court must first determine whether the government's evidence demonstrates "that the recited harms are real, not merely conjectural and that the regulation will in fact alleviate these harms in a direct and material way." *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 664 (1994). The City points to "a proliferation of crimes of a sexual nature occurring at bikini barista stands" and its conjecture that it is "the minimalistic nature of clothing" that "lends itself to criminal conduct." (Dress-Code Ordinance at 1, ¶ 2.) It also points to "the legislative record…including court cases, police records, memoranda and other information related to conduct of bikini barista stands." (*Id.* ¶ 3.) The City acknowledged that "[n]ot every owner will allow illegal conduct" but concluded that "risk is inherent in the bikini barista business model."

The City lacks data to support its claim that the risk of criminal activity is "inherent" in the bikini-barista business model. The Record focuses on two specific criminals. About ninety percent of the police and state reports in the Record concern these two criminals. The City ignored the statements of several law-abiding owners of bikini-barista stands who spoke at the July and August City Council Hearings. A married couple who owned several stands spoke about how they had never been in trouble with the law. Another owner of five stands discussed having live-feed video monitoring at the stands, and not allowing drugs, alcohol, or lewd conduct.

The City does not link the "minimal nature" of bikini attire to any of the City's interests. The Record ignores evidence of law-abiding people and does not show how a dress code "will in fact alleviate these harms in a direct and material way." Even City Council member Brenda Stonecipher questioned how enforcing a dress code would stop prostitution.

With no link of the "minimal nature of clothing" to the ill effects, the City attempts to impose a "Dress Requirement" on all "Quick-Service Facilities." This requires employees to cover "upper and lower body," eliminating not only bikinis from the workplace, but also any tank top, shirt, or halter top that would not cover the stomach or back below the shoulder blades. It would also penalize an exposed bra-strap or slip since "undergarments" must be completely covered. Everett, Wash., .Code § 5.132.020(A) (2017). The City does not narrowly tailor the law to address its stated interests such as the "spread of sexually transmitted diseases" and "corruption of minors" and "property values of surrounding neighborhoods and businesses."

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION–12
[Case No. 2:17-CV-01361-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

1  (*Id.* at 2.) The City has no evidence that mandating a cover-up of "minimum body areas" would

2  reduce those concerns. Instead it casts a wide net, placing the upper and lower body of Baristas

3  under wraps.

4      And the City admits it can use its existing ordinances to combat criminal behavior. In

5  *Johnson*, the state of Texas argued that the ordinance prohibiting desecration of the American

6  flag was to curtail breaches of the peace. 491 U.S. at 402. But the Supreme Court held this was

7  not narrowly tailored because "in fact, Texas already has a statute specifically prohibiting

8  breaches of the peace, Tex. Penal Code Ann. § 42.01 (1989), which tends to confirm that Texas

9  need not punish this flag desecration in order to keep the peace." *Id.* at 410. Similarly, the City

10  admits "it has primarily used its lewd conduct and adult entertainment regulations and

11  ordinances to regulate inappropriate conduct at these stands." So the City need not restrict what

12  baristas wear, thereby squelching their expressive conduct, in order to prevent or protect against

13  its laundry list of harms. A mandated dress code upon Quick Service Facilities is highly

14  restrictive and captures protected expression. A less-restrictive alternative, including use of

15  existing laws, would target the crime and not the clothing.

16      Finally, the City indicates the ordinances are intended to respond to public complaints. But

17  if "there is a bedrock principle underlying the First Amendment, it is that the government may

18  not prohibit the expression of an idea simply because society finds the idea itself offensive or

19  disagreeable." *Johnson* 491 U.S. at 414; *see also Spence*, 418 U.S. at 412 (noting that expression

20  may not be prohibited merely "to protect the sensibilities of passersby"). A "principal 'function

21  of free speech under our system of government is to invite dispute. It may indeed best serve its

22  high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they

23  are, or even stirs people to anger.'" *Johnson*, 491 U.S. at 408–09 (citing *Terminiello v. Chicago*,

24  337 U.S. 1, 4 (1949)). The citizen complaints are irrelevant to the analysis and cannot provide a

25  legitimate justification for banning the Baristas' expression.

26      The Dress-Code Ordinance does not survive strict scrutiny because it is a content-based

27  regulation that is not narrowly tailored to the City's stated interest.

28

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION–13      Newman Du Wors LLP
[Case No. 2:17-CV-01361-MJP]

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

**4. The Dress Code Ordinance also fails intermediate scrutiny because the restriction on the Baristas' freedom of expression does not further the City's claimed substantial interests.**

A content-neutral law that incidentally burdens expression as part of a time, place, or manner restriction is subject to intermediate scrutiny. *See City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 443 (2002). Intermediate scrutiny provides that a "content-neutral regulation will be sustained [1] if 'it furthers an important or substantial governmental interest; [2] if the governmental interest is unrelated to the suppression of free expression; and [3] if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.'" *Turner Broad. Sys.*, 512 U.S. at 662 (citing *United States v. O'Brien*, 391 U.S. 367, 377 (1968)). The City cannot meet any of these three requirements.

**First**, the Dress-Code Ordinance does not further the City's stated interest. The City claims the ordinance addresses "narrowly the negative adverse impacts associated with bikini barista stands while allowing these types of businesses adequate alternative channels for communication of protected expression." (Dress-Code Ordinance at 3, ¶ 12.) The City claims the secondary effects of bikini barista stands are "a) increases in crime; b) increases in the opportunity for the spread of sexually transmitted diseases; c) increases in corruption of minors; and d) adverse impacts upon aesthetics and property values of surrounding neighborhoods and businesses." (*Id.* at 2, ¶ 10.) But the Dress-Code Ordinance targets clothing, not conduct.

The City can rely on studies conducted in other jurisdictions to show the law furthers its interest, but those studies must be related to conduct "of the same character" as the City's ordinance. *Pap's*, 529 U.S. at 296. The City fails to provide studies "of the same character" and instead relies heavily on studies about crime at adult movie theaters and sex businesses. (Record at LEG000537–692.) A drive-up coffee stand is not an adult movie theater or sex business. There is no parallel between a two-minute exchange buying coffee outdoors through a window, and an hour-and-a-half spent watching videos of people having sex in a darkened room.

Bikini-barista businesses are actively operating in Seattle, Portland, Tacoma, Spokane and other metropolitan areas. Rather than seek data from these similar businesses in neighboring communities, the City stretched across the globe. The sole report of food service, is a brief

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION–14
[Case No. 2:17-CV-01361-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

mention of "juicy bars" in South Korea that advertise for prostitution and are known to have prostitutes available. (Record at LEG000533–36.) The South Korea juicy bars were really brothels. (*Id.*) That never happened here. And if that was the concern, the City's remedy is anti-prostitution laws—not banning an entire category of innocent business.

The City's evidence must fairly support the rationale for its ordinance, and a court should not allow a city to get away with "shoddy data or reasoning." *Alameda Books*, 535 U.S. at 438. The City relies on police, state, and city reports, but the overwhelming majority of them involve just two actors whose crimes spanned far beyond the bounds of a common bikini-barista stand. The problem lies in those criminals rather than being "inherent in the bikini barista business model" as the City claims. If a city could base a law on anecdotal criminal reports, state-bar-association records would justify banning the practice of law because several attorneys have committed crimes in connection with their practices.

The City's other evidence does not tie bikinis to crime. Unpaid wages and a fatal fire bear no relationship to clothes women wear at work. (Record at LEG000429–34, 444–57, 484–97.) The City relies on news reports about ice cream and food trucks, but does not connect these to any sort of crime. (*Id.* at LEG000498–506.) The City also relies on an opinion piece from an advocacy group placing bikini-barista stands on a "dirty dozen" list of sexually exploitive businesses. (*Id.* at LEG000507–10.) But that article was pure opinion from a randomdom author finding the business immoral, not criminal.

The City relies on insufficient "shoddy data or reasoning" that *Alameda Books* proscribes. *See* 535 U.S. at 438. The City then leaps to a conclusion that the "minimal nature" of barista clothing is linked to crime, sexually transmitted diseases, corruption of minors and neighborhood aesthetics. But the City failed to account for other factors—including proximity to liquor stores, marijuana shops, and adult businesses—that might have caused the problems facing Everett. There is no evidence the minimum dress requirement will solve these issues.

And the Baristas testify that wearing bikinis while working at the barista stand makes it less likely they would commit lewd acts. They earn a good living at a bikini-barista stand. Accepting a tip for lewd conduct would be shortsighted because it would result in losing the job.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION–15
[Case No. 2:17-CV-01361-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

**Second**, the City's interest is not unrelated to free expression. The Dress-Code Ordinance expressly seeks to suppress "dressing in a manner that is closely and customarily associated with adult entertainment." (Dress-Code Ordinance at 1, ¶ 1.) Since the ordinance stops the Baristas from dressing in an expressive manner—and imparting their messages through tattoos, scars, and other attributes—the ordinance is related to free expression.

A city may not regulate the secondary effects of speech by suppressing the speech itself, even if it purports to justify the restrictions by reference to secondary effects. *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 134–36 (1992). An ordinance targeted at secondary effects is valid only when regulations reduce crime and blight while at the same time leaving the quantity and accessibility of speech substantially undiminished. *See Alameda Books*, 535 U.S. at 427 (citing *Renton v. Playtime Theatres, Inc.,* 475 U.S. 41 (1986)). The Dress-Code Ordinance extinguishes the Baristas' message, while not having any impact on alleged secondary effects.

**Third**, the restriction on expression is greater than is essential to the furtherance of the City's stated interest. Even under intermediate scrutiny, the law "must be narrowly tailored to serve the government's legitimate, content-neutral interests." *Ward*, 491 U.S. at 798. Narrowly tailored requires that the means do not "burden substantially more speech than is necessary to further the government's legitimate interests." *Turner Broad. Sys.*, 512 U.S. at 662 (quoting *Ward*, 491, U.S. at 799.).

In *J.L. Spoons, Inc. v. City of Brunswick*, 49 F. Supp. 2d 1032, 1045 (N.D. Ohio 1999), the court found a ten-foot distance restriction was invalid because a shorter distance would be sufficient. In *Vaughn*, the court invalidated a restriction that required full-body coverage in a bar because it was more restrictive than necessary. *Vaughn v. St. Helena Parish Police Jury*, 192 F. Supp. 2d 562, 574 (M.D. La. 2001). Like *J.L. Spoons* and *Vaughn*, the City went too far.

The dress code imposed on baristas allows only lower legs, arms and head and neck to be revealed. This is more clothing than required at most other businesses or worn by most pedestrians during summer months. The ordinance is broad, going far beyond eliminating nudity or sexual conduct.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION–16
[Case No. 2:17-CV-01361-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

Less-restrictive alternatives exist. The City could apply different escalating structures for existing criminal statutes addressing lewd and other harmful behaviors. Plaintiff Jovanna Edge installed cameras at all her locations, and she provides real-time access to police officers. The City could require cameras at all bikini-barista businesses to monitor activity, which would curtail expensive police patrol and sting operations. The City could require warning signs, along with the cameras, with the wording of ordinances penalizing lewd behavior so customers know the laws and act accordingly. And the City's goal of reducing unlawful behavior could be met creating penalties under the city's nuisance code for businesses that allow prostitution or other sex acts to occur, and under the existing statute regulating lewd behavior.

The Dress-Code Ordinance does not survive intermediate scrutiny because [1] it does not further an important or substantial governmental interest; [2] the governmental interest is not unrelated to the suppression of free expression; and [3] the incidental restriction on alleged First Amendment freedoms is much greater than is essential to the furtherance of the City's interest. *See O'Brien*, 391 U.S. at 377.

**B.     The ordinances violate the Fourteenth Amendment's substantive due-process guarantee, equal protection clause, and are unconstitutionally vague.**

   **1.     The Dress-Code Ordinance violates the Barista's substantive due-process rights because choice of dress and occupation are liberty interests.**

To establish a substantive due-process claim, a plaintiff must show a government deprivation of life, liberty, or property. *See Loving v. Virginia*, 388 U.S. 1, 2 n.1 (1967). The right to choose clothing and occupation are liberty interests. *See DeWeese v. Town of Palm Beach*, 812 F.2d 1365, 1367 (11th Cir. 1987); *see also Meyer v. Nebraska*, 262 U.S. 390, 399 (1923).

The right to make decisions about body integrity and self-definition is fundamental because those decisions are core to each person's identity, central to an individual's dignity and autonomy, and can shape an individual's destiny. *See Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S. 833, 847–52 (1992); *see also Obergefell v. Hodges,* 135 S. Ct. 2584, 2593, 2597, 2599 (2015). "The Constitution promises liberty to all within its reach, a liberty that includes certain specific rights that allow persons, within a lawful realm, to define and express their identity."

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION–17
[Case No. 2:17-CV-01361-MJP]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

*Obergefell*, 135 S. Ct. at 2593; *see also Roberts v. U.S. Jaycees*, 468 U.S. 609, 619 (1984) (The Constitution "safeguards the ability independently to define one's identity that is central to any concept of liberty.").

The Baristas' choice of clothing and expression of who they are as people is a fundamental liberty interest because those choices allow the Baristas "to define and express their identity." *Obergefell*, 135 S. Ct. at 2593. Working as a bikini-barista shapes their identity, and makes them feel empowered as women. The ability to express themselves in a bikini changes them in deeper ways than what is obvious. And working as bikini baristas allow them the freedom to thrive as students and single mothers.

The Baristas are suited to the job because of who they are: young, energetic, outgoing women who have communications skills and body confidence. They use these parts of their identity in their gainful employment as bikini baristas. The Dress-Code Ordinance impacts their ability to earn a living. Complying with it, the Baristas would make fifty-percent less income, and they would lose the unique job satisfaction as a bikini barista.

A regulation that invades a liberty interest must be struck down if there is no rational connection between the challenged regulation and a legitimate government objective. *Williamson v. Lee Optical of Okla. Inc.*, 348 U.S. 483, 488 (1955). In the context of a public-safety regulation, the law must bear a "substantial relation to the public health, safety, morals, or general welfare." *Wedges/Ledges of Cal., Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 65 (9th Cir. 1994). The City asserts that requiring Baristas to cover their upper and lower body parts will result in a reduction in acts of prostitution and lewdness. That is unfounded. The City cannot show that wearing more clothes would have a "substantial relation to the public health, safety, morals, or general welfare." The Dress-Code Ordinance violates their substantive due-process rights.

**2.      Both ordinances violate equal protection because they impose a burdensome regulation upon women but not men, and the City lacks an "exceedingly persuasive justification."**

"No State shall…deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. .amend. XIV, § 1. When a law discriminates between men and women, the

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION–18
[Case No. 2:17-CV-01361-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

government must show "an exceedingly persuasive justification" for the policy. *United States v. Virginia*, 518 U.S. 515, 559 (1996). "The burden of justification is demanding and rests entirely" on the City. *Id.* at 533.

**The Citywide Ordinance** openly discriminates against women because it criminalizes the touching or partial exposure of the "female breasts" while silently condoning the "touching, caressing or fondling" or exposure of the entire male upper body. Everett, Wash., Code § 10.24.010(A)(2)–(3) (2017). The ordinance also subjects only women to a humiliating and intrusive examination where an officer must view, evaluate, and take measurements from the "top of a woman's areola," which can only be seen by exposing her breast. *Id.* § 10.24.010(A)(2).

These sexist provisions are not supported by "an exceedingly persuasive justification." Rather, they are premised on the idea that when a woman touches or *partially* exposes her breasts in public she is engaging in a sexualized act and is a criminal, while a man who does the same is not. This "perpetuates a stereotype engrained in our society that female breasts are primarily objects of sexual desire whereas male breasts are not." *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 237 F. Supp. 3d 1126, 1132 (D. Colo. 2017). Under the Citywide Ordinance, the City may imprison one gender for conduct that the other may freely engage in.

The City does not provide any rationale for the Citywide Ordinance's gender discrimination. It generically refers to "evidence regarding recent public acts of lewd conduct…and the negative effects of those public acts" and the City's intention to "prevent the negative effects of such conduct." None of these stated reasons support the blatant sexism in criminalizing women, but not men for the same act.

**The Dress-Code Ordinance** also violates the equal-protection clause. It requires all "quick service facility" employees to cover their "breast/pectorals, stomach, back below the shoulder blades, buttocks, top three inches of legs below the buttocks." Everett, Wash., Code § 5.132.020(B) (2017). They must cover all undergarments, even when "sitting, standing, bending, reaching or performing other work duties." *Id.* § 5.132.020(A). Although that provision is gender-neutral on its face, the Ordinance targets bikini-barista stands which only employ women. The City admits that only bikini-barista stands have servers dressed in bikinis. Going

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION–19
[Case No. 2:17-CV-01361-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

back as far as *Yick Wo v. Hopkins*, 118 U.S. 356 (1886), the Court has recognized that even a law that is "fair on its face" and "impartial in appearance" violates equal protection if its enforcement disproportionately affects a certain class of people. *Yick Wo*, 118 U.S. at 373–74.

The Dress-Code Ordinance disproportionately and only affects woman. Women who work at bikini barista stands are required to dress as if they are visiting the Vatican. These women are penalized for inadvertently revealing "undergarments" of a slip or bra-strap while actively working in their jobs. Other workplaces—including law firms and courts—have employees who show portions of their pectorals, or lower or upper back in common work attire. Singling out a women-only business for offensive and business-destroying regulation violates equal protection.

### 3. Both ordinances are unconstitutionally vague, and encourage arbitrary and abusive enforcement.

"A fundamental requirement of due process is that a statute must clearly delineate the conduct it proscribes." *Kev, Inc. v. Kitsap County*, 793 F.2d 1053, 1057 (9th Cir. 1986) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). And "where first amendment freedoms are at stake, an even greater degree of specificity and clarity of laws is required." *Kev, Inc.*, 793 F.2d at 1057. A regulation is unconstitutionally void for vagueness if it "(1) does not define the conduct it prohibits with sufficient definitiveness and (2) does not establish minimal guidelines to govern law enforcement." *United States v. Davis,* 36 F.3d 1424, 1434 (9th Cir. 1994).

**The Dress-Code Ordinance** requires Baristas to cover "breast/pectorals, stomach, back below the shoulder blades, buttocks, top three inches of legs below the buttocks." Everett, Wash., Code § 5.132.020(B) (2017). This leaves police to deal with difficult questions because of the ordinance's ambiguity. Would a typical v-neck shirt violate the ordinance because part of the pectoral muscles show? How would a woman who does not have visible shoulder blades, and police officers pursuing her, determine the location of the "back below the shoulder blades"?

Proper enforcement by employers or police officers requires a viewing of the buttocks, a determination of where the buttocks end and the legs begin, and then a measurement to determine compliance. At the City Council hearings, citizens expressed concerns about the unfair application and enforcement of this type of regulation.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION–20
[Case No. 2:17-CV-01361-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

The "Dress Requirement" also requires "undergarments…remain covered at all times." *Id.* § 5.132.020(A). Women often inadvertently expose a bra-strap or slip or other undergarment, even in the most conservative outfits, and especially when doing active work like Baristas do. Does this requirement propose that each exposure of a bra-strap is an infraction? In practice, "two or more infractions" of a bra-strap revealed by any employee at a Quick service facility would mean their Quick Service Probationary License could be revoked. Everett, Wash., Code. § 5.132.040(C)(3) (2017). This would put that shop out of business.

"The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). With arbitrary measurements (below the buttocks), random body parts (back below the shoulder), and extremely restrictive conditions (undergarments remain covered at all times while sitting, standing, bending or reaching), the Dress-Code Ordinance leaves room for error and arbitrary enforcement.

The Dress-Code Ordinance is arbitrary in its application to "quick service," but not to other restaurant facilities. Regular non "quick service" restaurants, where customers and servers linger together for longer periods of time and are not separated by car and window, are left out of the City's analysis. The City provides no reasoning to impose regulation on coffee stands where the customer and barista never touch, while leaving out restaurants where alcohol is served, and employees can touch customers or take them to back rooms. The City has no logical rationale for singling out bikini-barista stands.

**The Citywide Ordinance** is also vague and prone to arbitrary enforcement. A law is unconstitutional if a person of ordinary intelligence cannot reasonably discern what is or is not permitted. *Grayned*, 408 U.S. at 108. The Citywide Ordinance references the "bottom one-half of the anal cleft." Everett, Wash., Code § 10.24.010(A)(1) (2017). The term "anal cleft" is not reasonably discernable to a person of even above-ordinary intelligence. A google search of the term leads to more confusion. Searching "anal cleft" on dictionary.com or merriam-webster.com reveals the word cannot be found in the dictionary.

The Citywide Ordinance also prohibits exposure of "more than one-half of the part of the female breast located below the top of the areola." *Id.* § 10.24.010(A)(2). Measuring from the

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION–21
[Case No. 2:17-CV-01361-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

"top of the areola" is subject to arbitrary enforcement. Women's breast sizes, shape and location of areola vary. For a woman with larger breasts, the "one-half" of the female breast below the areola may expose more surface of the breast than a smaller breasted woman. The amount of breast exposed will be different for women with larger areola, or areola not centrally located on the breast. Some women who have undergone mastectomies do not have an areola.

Perhaps most problematic is the humiliating search a woman would be subject to for a police officer to determine if she is compliant with the Citywide Ordinance. To enforce the law, police must first determine the location of the "top of the areola," which is only revealed when a woman exposes her breast. Next, the suspect woman must undergo a humiliating and intrusive examination so the officer can calculate if her clothing choice exposes more than the law allows.

Laws are unconstitutionally vague whenever they delegate "basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned*, 408 U.S. at 109. Allowing police to subjectively wrangle with these tricky issues concerning women's areola, the Citywide Ordinance creates "dangers of arbitrary and discriminatory application." *See id.*

## II. The Baristas will suffer irreparable harm by losing their rights of expression and liberty.

The Baristas will suffer at least three forms of irreparable harm if an injunction does not issue. First, the loss of First Amendment freedoms, for even minimal periods of time, "unquestionably constitutes irreparable injury." *Klein v. City of San Clemente*, 584 F.3d 1196, 1207–08 (9th Cir. 2009). The Baristas will lose their ability to express themselves through clothing choices at work.

Second, losing goodwill constitutes irreparable harm because it cannot be compensated with money damages. *Rent-A-Ctr., Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991). The bikini-barista stands rely on the goodwill they have built with customers who have come to expect coffee service from a friendly bikini-barista. Removing the "bikini" part of that message will irreparably damage their business.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION–22
[Case No. 2:17-CV-01361-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

Third, the Baristas will be unable to earn an adequate living. The Baristas have testified that income from a bikini-barista stand allows them to pay for school, housing, car insurance, and other necessary expenses. Even if the Baristas ultimately recover damages, the harms of eviction, not being able to pay the mortgage, and the loss or delay of an education are irreparable.

**III.    The harm to the Baristas far outweighs the City's interest, and the public interest is served by an injunction because the ordinances impose prohibitive restrictions on all Everett citizens with criminal implications.**

In balancing harm, the Baristas will be deprived of their liberty, free-speech rights, and income. In contrast, the City faces no emergency requiring immediate enforcement. The likelihood of imminent crime in a barista stand is low, as the City has no record of recent crime at bikini-barista stands. The City has an existing criminal code that penalizes prostitution, public nudity, and all harms identified. The City has been investigating bikini-barista stands for years. The City can wait a few months to enforce the ordinances if they are constitutional, and meanwhile enforce its existing laws to reach the conduct that concerns the City.

The Court must weigh the public interest affected by allowing the City to enforce the ordinances against the public interest affected by temporarily enjoining enforcement. *All. for the Wild Rockies*, 632 F.3d at 1138. For the Citywide Ordinance, women completely unconnected to bikini-barista operations will face the risk of embarrassing and intrusive public examinations of their clothing and bodies. If the Citywide Ordinance is enforced, police officers may stop, measure, and prod to ascertain the exact coverage of a piece of swimwear or top.

Likely hundreds of women will lose their livelihood at bikini-barista stands if enforcement proceeds. Customers will lose access to businesses they have come to expect and value. The public is served by delaying enforcement until the Court can determine the constitutionality of the ordinances.

On the other side, the City's existing lewd-conduct ordinance already prohibits public view of nipples and other body parts. Any criminal conduct can be addressed by existing criminal laws.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION–23
[Case No. 2:17-CV-01361-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

# CONCLUSION

Arbitrary and oppressive government power can be most problematic at the local municipal level where laws most directly affect daily lives of every day citizens. The City enacted two ordinances which purport to address many problems in Everett, but unfairly target the Baristas because their choice of dress and occupation are controversial. The new laws do nothing to cure what ails the City. The ordinances are unconstitutionally vague and overbroad, violate free speech rights, and offend the rights of women to due process under the law. The harm to the Baristas and citizens of Everett will be irreparable and immediate without an injunction to maintain the status quo until the ordinances can be properly evaluated.

The City of Everett should police the crime and criminal actors, and not the clothing choices of women. Because the Baristas have shown a likelihood of success on the merits and irreparable harm, the Court should issue an injunction delaying enforcement of the ordinances.

Respectfully submitted September 21, 2017.

NEWMAN DU WORS LLP

Derek A. Newman, WSBA #26967
*derek@newmanlaw.com*
Jessica V. Newman, WSBA #28080
*jessica@newmanlaw.com*
Keith Scully, WSBA #28677
*keith@newmanlaw.com*
Jason Sykes, WSBA #44369
*jason@newmanlaw.com*

Attorneys for Plaintiffs

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION–24
[Case No. 2:17-CV-01361-MJP]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800