Honorable Marsha Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOVANNA EDGE, an individual; LEAH HUMPHREY, an individual; LIBERTY ZISKA, an individual; AMELIA POWELL, an individual; NATALIE BJERKE, an individual; BRITTANY GIAZZI, an individual; JUANITA CASTANEDA GUERRERO, an individual; and MATTESON HERNANDEZ, an individual,<br><br>                         Plaintiffs,<br><br>      v.<br><br>CITY OF EVERETT, a Washington Municipal Corporation,<br><br>                        Defendant. | No. 2:17-cv-01361<br><br>THE CITY OF EVERETT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION<br><br><br>NOTE ON MOTION CALENDAR: November 3, 2017 |

THE CITY OF EVERETT'S OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION
Cause No. 2:17-cv-01361
20061 00005 gj23bq19nk

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

# I.   INTRODUCTION

For nearly a decade, the City of Everett has grappled with the harms associated with "bikini barista" stands, including prostitution, violence, organized criminal activity and exploitation of women including minors. The City's experiences mirror similar concerns in other jurisdictions. Following various efforts at policing these issues, and extensive study, the Everett City Council passed legislation designed to remedy these harms. Plaintiffs challenge the constitutionality of this legislation, but they are unlikely to prevail on the merits of their claims.

Plaintiffs' primary allegation is that one of the ordinances violates the First Amendment, but the First Amendment protects speech, not the right to dress in a particular manner (much less in "pasties and a G-String", the most common outfit at issue). Plaintiffs attempt to shoehorn their state of undress into the realm of expressive conduct, but their claim to assert generalized messages such as empowerment or approachability is neither supported by the record, nor likely to be received by others in the manner suggested. And even if Plaintiffs' conduct fell within the First Amendment, the City's regulation of the numerous secondary effects associated with these businesses satisfies First Amendment scrutiny under the appropriate test. Plaintiffs' secondary constitutional claims are largely subject to rational basis review, and the legislation is easily sustained based on the extensive record. Finally, the harms associated with these businesses continue, and the public interest and a balancing of the equities do not support injunctive relief. Accordingly, the City requests that the Court deny Plaintiffs' motion.

# II.   FACTUAL BACKGROUND

## A.   The history of crime, lewd conduct and exploitation at Everett's bikini barista stands is well-established.

The ordinances at issue in this case follow a series of investigations over many years by at least four different law enforcement agencies. The Everett Police Department ("EPD") first began enforcement efforts at bikini barista stands in 2009, after receiving more than 40 citizen complaints about baristas blatantly violating lewd conduct laws by appearing in the windows of

THE CITY OF EVERETT'S OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION - 1
Cause No. 2:17-cv-01361
20061 00005 gj23bq19nk

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

coffee stands partially or fully nude. Collier Decl., ¶ 2.1; *see also, e.g.*, Dkt. #9-1 at 8, 18, 26, 41 (citizen complaints). EPD's 2009 investigations revealed that baristas routinely posed in various states of nudity, allowed customers to photograph and/or touch them for a fee, performed sexual "shows," openly advertised prostitution activities and permitted customers to masturbate while watching them perform, all within public view. Collier Decl., ¶¶ 2.3-2.5; *see also* Dkt. #9-1 at 4-5, 7, 11-12, 17-18, 21-22, 26-27, 29-30, 33-42.

Over the next several years, Snohomish County and the cities of Edmonds and Kent also investigated bikini barista stands. Collier Decl., ¶¶ 3.1-3.8. These included stands owned by Carmela Panico, operating as "Java Juggs" and "Twin Peaks." *Id*. Those investigations revealed that the same conduct observed by EPD was occurring at these stands. *Id*.; Dkt. #9-1 at 43-73, 131-63, 165-67. Panico trained her baristas to hide illegal conduct, and also corrupted Snohomish County Deputy Darrell O'Neill by trading sexual favors in return for enforcement information. Collier Decl., ¶¶ 3.3-3.4; Dkt. #9-1 at 131-37, 168-83.

Given the results of these investigations, in 2013, EPD invested substantial resources in undercover investigations of Panico's stands and the "Grab-N-Go" barista stands owned by Bill Wheeler, Jr. Collier Decl., ¶ 4.1; Dkt. #9-1 at 74-130. EPD again uncovered evidence of baristas engaging in lewd conduct. *Id*. EPD also learned baristas often were not paid hourly and instead worked solely for tips, resulting in significant pressure to "flash" customers to earn money. Collier Decl., ¶ 4.2; *see also*, *e.g.*, Dkt. #9-2 at 86. EPD also discovered that one of the Grab-N-Go baristas was underage and flashing customers with full knowledge of Wheeler, Jr. Collier Decl., ¶ 4.3; Dkt. #9-3 at 31-54.

EPD's 2013 investigation further uncovered financial exploitation of baristas by stand owners and an extensive prostitution ring operating out of Panico's stands. Collier Decl., ¶¶ 5.3-5.9; Dkt. #9-1 at 167-68, 192, 200; Dkt. #9-2 at 11-32, 56-58, 69-70, 104-12. Customers also still routinely masturbated at the barista stands. Collier Decl., ¶¶ 5.7.1-5.7.2; Dkt. #9-1 at 202, 206; Dkt. #9-2 at 50, 53, 70. Customers aggressively demanded that baristas provide "shows" and

THE CITY OF EVERETT'S OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION - 2
Cause No. 2:17-cv-01361
20061 00005 gj23bq19nk

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

engage in prostitution, brought baristas "gifts" such as dildos, and sexually assaulted baristas. Collier Decl., ¶¶ 5.8.1-5.8.4; Dkt. #9-1 at 195; Dkt. #9-2 at 4, 23, 25, 34, 37-40, 43. Customers were also observed "giving baristas money and then fondling and kissing baristas' breasts, [and] inserting their fingers into the baristas' vaginas and anuses as they stood outside their vehicles at the coffee stands' windows." Collier Decl., ¶ 5.4.3. Even after EPD arrested Panico, O'Neill and several baristas in 2013, lewd conduct and drug use continued unabated at the stands. Id., ¶ 5.9.4; Dkt. #9-2 at 131-53; Dkt. #9-1 at 34, 79.

In 2013 and 2014, EPD received reports that baristas were engaging in illegal conduct at the Hillbilly Hotties stands owned by plaintiff Jovanna Edge. Collier Decl., ¶ 6.1; Dkt. #9-2 at 154-73; Segal Decl., Ex. A (Edge at 101:6-104:2), Ex. E at 73-94. Undercover operations resulted in numerous arrests for lewd conduct and prostitution. Id. Ms. Edge testified she terminated these baristas, but that she never investigated what happened and never saw the police reports until the day of her deposition in this case (although these reports are part of the record supporting the ordinances at issue). Segal Decl., Ex. A (Edge at 101:6-104:2, 106:6-109:3). Hillbilly Hotties and other stands were subsequently cited by Snohomish County for violating the County's erotic entertainment ordinance. Collier Decl., ¶ 6.2; Dkt. #9-2 at 174-218.

**B.      The Ordinances are passed to address crime, lewd conduct and exploitation.**

The above experiences led the City to conclude that criminal conduct would continue to flourish unless the City took legislative action. Collier Decl., ¶ 10.2. In 2014, the City began considering two ordinances: a "Dress Code Ordinance" requiring persons working at "quick service" restaurants to wear at least shorts and tank tops; and amendments to the Lewd Conduct Ordinance to bar exposure of certain body parts. Id., ¶ 10.4-10.11; Dkt. #9-5 at 66-68, 85.

In considering the Ordinances, the Council reviewed over 800 pages documenting the secondary effects of these businesses. See Dkt. #9-1 to 9-4. The record was itself a distillation of thousands of pages of materials, including complete reports from the investigations.[1] The City

---

[1] For example, the record did not include copies of every police report generated since 2009. It also did not include more explicit investigatory material, such as video evidence of the criminal conduct. See Segal Decl., Ex. J.

THE CITY OF EVERETT'S OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION - 3
Cause No. 2:17-cv-01361
20061 00005 gj23bq19nk

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

Council also heard a detailed presentation by the City Attorney describing the conduct observed at the stands.[2] The Council learned the behavior went well beyond flashing and sex shows and encompassed "consistent acts of prostitution at the stand[s]." Dkt. #9-5 at 70; *see also* Dkt. #9-4 at 83-84. The presentation detailed the significant secondary harms associated with this business model, including lewd conduct, prostitution and drug use; exploitation of baristas; pressure to engage in illegal acts; sexual assault and public masturbation by customers; and operation of escort businesses out of the stands. Dkt. #9-5 at 76-81; Dkt. #9-4 at 83-92. EPD officers saw repeated instances of these harms despite high-profile arrests. Dkt. #9-5 at 82; Dkt. #9-4 at 92.

The Council also heard about the difficulties in addressing this conduct with existing enforcement tools, including the requirement that police engage in time-consuming and expensive undercover operations to catch violators, and the resulting creation of videos and photographs that engendered numerous public records requests. Dkt. #9-5 at 71, 84; Dkt. #9-4 at 92-93, 96. The Council also learned that prosecuting individual baristas was ineffective due to the lucrative nature of the business, while prosecution of owners was largely unsuccessful because of how they covered their tracks. Dkt. #9-5 at 72; *see also* Dkt. #9-4 at 93. The Council further considered evidence that this business model is transferable to other types of quick service facilities. Dkt. #9-5 at 88-89; Dkt. #9-4 at 95.

The City Council passed the Ordinances on August 16, 2017. Dkt. #8-1; Dkt. #8-2. It made numerous findings, including the need to update the City's lewd conduct ordinance, and that the existing regulatory and enforcement scheme was insufficient. Dkt. #8-1 at 2; Dkt. #8-2 at 2-4. The lewd conduct amendment prohibits exposure of, among other things, the "bottom one-half of the anal cleft" and "more than one-half of the female breast located below the top of the areola." Dkt. #8-1 at 6. The Dress Code Ordinance requires all employees of "Quick Service Facilities" – defined as coffee stands, fast food restaurants, food trucks and the like – to wear

---

[2] The full transcript of the City Attorney's presentation to the Council, and the slides used in that presentation, provide an in-depth summary of secondary harms the City is attempting to combat with this legislation. *See* Dkt. #9-4 at 82-96; Dkt. #9-5 at 67-90. The declaration of Sgt. Collier provides an even more in-depth summary of EPD's investigations, along with an explanation of why the new Ordinances are needed to combat the secondary harms.

THE CITY OF EVERETT'S OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION - 4
Cause No. 2:17-cv-01361
20061 00005 gj23bq19nk

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

clothing that covers certain "minimum body areas" including the "upper and lower body (breast/pectorals, stomach, back below the shoulder blades, buttocks, top three inches of legs below the buttocks, pubic area and genitals." Dkt. #8-2 at 5. Through a licensing system, the Dress Code Ordinance makes facility owners the primary enforcers of this requirement. *Id*. at 4-8. Thus, the Dress Code Ordinance both (1) makes it more challenging for employees to engage in surreptitious activity by instituting minimum clothing requirements, and (2) incentivizes facility owners to police employee conduct at risk of losing their business license.

## C. The bikini barista "business model" remains inherently harmful.

After Plaintiffs brought this lawsuit, the City agreed to a moratorium on enforcement of the Ordinances pending the outcome of Plaintiffs' motion. Dkt. #5. And despite the lack of any recent concerted EPD law enforcement effort targeting the stands, Collier Decl., ¶ 6.3, discovery and investigation show the same concerns continue today. For example, in 2017, Ms. Edge made reports of exposure and "shows" at other bikini barista stands. Segal Decl., Ex. A (Edge at 139:10-144:9). One such stand owner is reported to engage in sexual relations with baristas. Segal Decl., Exs. A, D (Edge at 90:9-92:4; Powell at 99:2-16); Doe Decl., ¶ 12.[3] Public masturbation continues at Hillbilly Hotties stands. Segal Decl., Exs. A, D (Edge at 117:1-16; Powell at 97:24-98:21). Crime and other suspicious activity in and around the barista stands also is present. *Id*., Ex. A-D (Edge at 61:20-62:21; Bjerke at 91:6-15; Humphrey at 83:4-84:11; Powell at 97:24-98:21, 100:17-101:13); DeRousse Decl., ¶ 3, Exs. A-B; Dkt. #10 at 4; Dkt. #13 at 6.[4] Two of the Plaintiffs have been terminated since this case was filed. Brittany Giazzi was fired over "provocative" social media posts, and while a barista, she advertised she was launching a "XXX" website. Segal Decl., Ex. A (Edge at 52:20-53:17, 54:8-55:6, 71:11-73:11).

Other conditions that incentivize illegal activity continue to exist: all Hillbilly Hotties baristas are paid minimum wage, and while Ms. Edge claims to enforce the law, she does not

---

[3] "Jane Doe" has requested permission to submit anonymous testimony in part to avoid retaliation. *See* Dkt. #25.
[4] For examples of similar activity, *see* Segal Decl., Ex. F; *State v. Swanson*, 327 P.3d 67, 69, 75 (Wash. Ct. App. 2014); *State v. Mishkov*, No. 69076-1-I, 2014 WL 1692240, at *1 (Wash. Ct. App. Apr. 28, 2014) (similar).

THE CITY OF EVERETT'S OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION - 5
Cause No. 2:17-cv-01361
20061 00005 gj23bq19nk

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

employ formal training of her employees and is unable (or unwilling) to monitor much of what goes on at the stands, including admittedly criminal conduct. Segal Decl., Ex. A (Edge at 69:17-25, 119:22-120:6, 124:16-126:7); *see also* Doe Decl., ¶ 14; Collier Decl., ¶¶ 7.2-7.9.

Moreover, the outfits Plaintiffs wear are the type EPD has identified as allowing for the practice of "flashing" customers. Collier Decl., ¶¶ 7.5, 8.3. Although Plaintiffs refer to these outfits as "bikinis," Ms. Edge concedes they are usually pasties and G-strings, and testified that, with respect to the front lower body, as long as a barista covers her labia and clitoris, the outfit is appropriate for Hillbilly Hotties. *See* Segal Decl., Ex. E at 1-6, 9-43, 45-55, 61-72; *see also id.*, Exs. A-D (Edge at 89:25-91:3, 99:4-15; Bjerke at 50:10-51:1, 64:10-65:1; Humphrey at 66:2-6, 88:22-89:10; Powell at 64:4-14, 80:1-6). Ms. Edge also allows baristas to pose in a manner suggesting they are willing to take off the limited clothing they are wearing, and to wear outfits that make accidental (or intentional) exposure almost inevitable. *Id.*, Ex. A (Edge at 89:5-17, 93:22-95:10), Ex. E at 5, 10, 12, 16, 28, 33, 52, 60. Bikini baristas often engage in activities such as selling nude photos, Doe Decl., ¶ 16, and two Plaintiffs admit to having sold photos of themselves in outfits typical of those they wear at the stands. Segal Decl., Exs. C-D (Humphrey at 18:24-21:15, 82:11-18; Powell at 55:24-56:16). Plaintiffs also solicit, receive, and display gifts of pasties, thongs, and other items through Amazon wish lists. *Id.*, Exs. B-D (Bjerke at 39:12-20, 52:1-55:7; Humphrey at 26:25-28:6, 61:25-62:24, 66:16-67:25; Powell at 58:1-60:24).

### III.   ARGUMENT

A preliminary injunction is "an extraordinary remedy" and "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Plaintiffs must show (1) it is "likely" they will "succeed on the merits;" (2) it is "likely" they will "suffer irreparable harm" without the requested relief; (3) the "balance of equities tips" in their favor; and (4) the requested relief is "in the public interest." *Id.* at 20. Here, Plaintiffs have not made the required showing as to any element, much less all of them.[5]

---

[5] The Ninth Circuit also employs a sliding scale test whereby "serious questions going to the merits" and "a balance of hardships that tips sharply towards the plaintiff" can support a preliminary injunction, if plaintiff also shows "a

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

**A. Plaintiffs are unlikely to succeed on the merits.**

1. <u>Plaintiffs fail to present a viable First Amendment claim.</u>

"The protections of the First Amendment do not generally apply to conduct in and of itself." *Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 388 (6th Cir. 2005). Plaintiffs challenge the Dress Code Ordinance, claiming it is a content-based restriction on their freedom of expression. As the Ordinance regulates only conduct and not pure speech, it only implicates the First Amendment if the conduct is "inherently expressive." *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 66 (2006). In this case, it is not.

a. *Plaintiffs' clothing choice is not protected expressive conduct.*

"[T]he Supreme Court has repeatedly rejected the view that 'an apparently limitless variety of conduct can be labeled "speech" whenever the person engaging in the conduct intends thereby to express an idea.'" *Zalewska v. Cnty. of Sullivan*, 316 F.3d 314, 319 (2d Cir. 2003) (quoting *U.S. v. O'Brien*, 391 U.S. 367, 376 (1968)). Plaintiffs must show their conduct "convey[s] a particularized message"[6] and the "likelihood [is] great that the message [will] be understood by those who view[] it." *Spence v. Washington*, 418 U.S. 405, 411 (1974); *see also Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984) ("[I]t is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate that the First Amendment even applies."). Plaintiffs cannot establish either element here.

First, the message the baristas intend to convey through their clothing choice is not specific or particularized, but is rather a "vague and unfocused" message that does not qualify as expressive. *Zalewska*, 316 F.3d at 319-20; *see also Villegas v. Cit. of Gilroy*, 363 F. Supp. 2d 1207, 1217-18 (N. D. Cal. 2005), *aff'd on other grounds*, 541 F.3d 950 (9th Cir. 2008) (even when a uniform identifies someone as a group member, if group only conveys vague messages

---

likelihood of irreparable injury" and that "the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Plaintiffs also fail to meet this test.

[6] The Ninth Circuit has clarified that the "particularized message" requirement remains intact following *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 569 (1995). *See, e.g., Kaahumanu v. Hawaii*, 682 F.3d 789, 798 (9th Cir. 2012); *Zalewska*, 316 F.3d at 319-20.

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

like "[f]raternity, freedom, equality, and/or death," the uniform does not convey any "particularized message").[7] Here, Plaintiffs claim that serving coffee in "bikinis" expresses varying generalized messages of *inter alia* "empowerment, personal freedom, openness . . . vulnerability, and individuality." Dkt. #8 at 10. But courts have repeatedly rejected the premise that a person's choice of what to wear (or not to wear) is inherently expressive. *See, e.g., City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000) ("Being 'in a state of nudity' is not an inherently expressive condition."); *Zalewska*, 316 F.3d at 320 (stating that "a woman today wearing a dress or a skirt on the job does not automatically signal any particularized message about her culture or beliefs"); *Blau*, 401 F.3d at 389 (holding no protection for clothing because it "look[s] nice" or conduct that "amounts to nothing more than a generalized and vague desire to express . . . individuality"); *Brandt v. Bd. of Educ.*, 480 F.3d 460, 465 (7th Cir. 2007) (noting that "clothing as such is not—not normally at any rate—constitutionally protected expression" and that the "kind of 'message' that clothing normally sends—'I am rich,' 'I am sexy,' 'I have good taste'" is not recognized as expressive).[8] The baristas themselves acknowledge their "message" is one open to a wide variety of interpretations, therefore lacking any particularity. *See, e.g.,* Segal Decl., Exs. C-D (Humphrey at 50:15-18; Powell at 81:14-82:2, 82:15-83:1, 86:9-17).

Plaintiffs' conduct also cannot satisfy the comprehensibility requirement. The Supreme Court distinguishes "communicative activity with a clear contextual message, such as the wearing of a black armband in protest during the Vietnam War, compared with other types of activity, like choosing what to wear in the ordinary course of employment." *Zalewska*, 316 F.3d at 320. Serving coffee in pasties and G-strings simply does not demonstrate a comprehensible

---

[7] On review, the Ninth Circuit reached the same outcome, but on other grounds. 541 F.3d at 956-57. The district court opinion is still informative on this issue.

[8] Even when persons seek to use nudity to protest prohibitions on public nudity, courts have rejected claims that this is protected speech, except in narrow circumstances. *See Hightower v. City and Cnty. of San Francisco*, 77 F. Supp. 3d 867, 877-880 (N.D. Cal. 2014) (holding only naked protests that occurred at city hall within days or two months of enactment of prohibition qualified as expressive conduct); *Naturist Soc'y v. Fillyaw*, 736 F. Supp. 1103, 1111 (S.D. Fla. 1990) ("Even if the plaintiffs intend to advocate a clothing optional lifestyle by appearing on the beach in G–Strings, pasties, and socks, the court finds, as a matter of law, that there is not a *great* likelihood that other beach patrons would understand this message."), *rev'd on other grounds*, 958 F.2d 1515 (11th Cir. 1992); *Tagami v. City of Chicago*, No. 14 cv 9074, 2016 WL 397322, at *2 (N.D. Ill. Feb. 1, 2016).

THE CITY OF EVERETT'S OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION - 8
Cause No. 2:17-cv-01361
20061 00005 gj23bq19nk

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

message under the First Amendment. Nor do Plaintiffs offer any objective evidence that customers actually understand and receive the varying messages they may subjectively wish to convey. *See* Segal Decl., Ex. B (Bjerke at 43:16-21 ("Q: Have any customers specifically told you that they understand that you're providing them a message of empowerment? . . . A. I can't remember."), 49:11-12 (cannot say whether message is appropriate for anyone but herself)), Ex. C (Humphrey at 50:15-18 ("Q. Do you think different customers understand what you're conveying in your bikini in different ways? A. Yes.")), Ex. D (Powell at 81:14-82:2). Indeed, the extreme comments posted on Plaintiffs' Instagram photos indicate their message of empowerment is not received as such. *See* Segal Decl., Exs. B-D (Bjerke at 26:5-21; Humphrey at 57:14-59:21, 63:2-13, 64:1-13, 65:7-22; Powell at 75:23-76:19, 84:3-18).[9] And Dr. Mary Anne Layden, a noted psychologist and professor, confirms the overwhelming reaction to Plaintiffs' conduct is not empowerment or other expressive messages, but an entirely "sexualized image." Layden Decl., ¶¶ 11, 13; *see also Craft v. Hodel*, 683 F. Supp. 289, 292 (D. Mass. 1988) (recognizing nudity often offers the "polar opposite[]" message to that which Plaintiffs profess).

Outside of the erotic dance context, courts have rarely found there is a "great" likelihood viewers will understand any message conveyed by a person appearing in a state of partial or total nudity. *See, e.g., Vivid Entm't, LLC v. Fielding*, 774 F.3d 566, 579 (9th Cir. 2014) (holding that "whatever unique message Plaintiffs might intend to convey by depicting condomless sex, it is unlikely that viewers of adult films will understand that message"). Here, Plaintiffs disclaim any analogy to erotic dance in their message, further evidence of the lack of any particularized message. Segal Decl., Exs. A, B, D (Edge at 39:4-8; Bjerke at 70:8-13; Powell at 83:18-84:2).

Moreover, typical commercial interactions do not qualify as "expressive conduct." *See Las Vegas Nightlife, Inc. v. Clark Cnty., Nev.*, 38 F.3d 1100, 1102 (9th Cir. 1994) ("Ordinary commercial activity of the kind conducted by the Clubs is subject to governmental regulation

---

[9] "I bet you taste so…good", *id.*, Ex. E at 21; "[Do] you like anal sex baby?" *id.*, Ex. E at 20; "You have sexy tits and ass", *id.*, Ex. E at 32.

THE CITY OF EVERETT'S OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION - 9
Cause No. 2:17-cv-01361
20061 00005 gj23bq19nk

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

without offending the First Amendment."). Courts have therefore rejected claims that the First Amendment protects the right to serve customers in various states of undress. *See*, *e.g.*, *Shetler v. State*, 681 So.2d 730, 731 (Fla. Dist. Ct. App. 1996) (prohibition on wearing "T-back" swimsuit did not violate First Amendment because "[w]hen nudity is employed as sales promotion in bars and restaurants, nudity is conduct"); *King Cnty. ex rel. Sowers v. Chisman*, 658 P.2d 1256, 1258 (Wash. 1983) ("Nudity, in and of itself, is clearly conduct and has traditionally been subject to the police power of the State, particularly when used as sales promotion in bars and restaurants."). Here, the Ordinance only regulates the attire of baristas at work and does not limit the exercise of these activities outside this commercial context. Segal Decl., Ex. B (Bjerke at 78:4-12), Ex. C (Humphrey at 30:6-31:7 (describing interaction with customer as typical commercial transaction)), Ex. A (Edge at 79:17-80:1, 85:8-86:12, 114:12-25 (same)).

In sum, the baristas' clothing choice does not qualify as expressive conduct, and for this reason alone, Plaintiffs are unlikely to prevail on the merits of their First Amendment claim.

      **b.**     *Even assuming expressive conduct, there is no First Amendment violation.*

Plaintiffs also are unlikely to prevail on the merits because, even if their conduct has deemed sufficiently expressive, the Dress Code Ordinance complies with the First Amendment, either as a reasonable restriction on expressive conduct or as a time, place or manner regulation targeted at secondary effects. *O'Brien*, 391 U.S. at 376-77 (expressive conduct); *Dream Palace v. Cnty. of Maricopa*, 384 F.3d 990, 1014 (9th Cir. 2004) (secondary effects).[10] Although Plaintiffs claim the Ordinance is content-based and must satisfy strict scrutiny, this is wrong.

      **i.**     *The Dress Code Ordinance is content neutral.*

The principal inquiry as to content neutrality is "whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock*

---

[10] Alternatively, because Plaintiffs' conduct is admittedly commercial in nature, the Ordinance also satisfies *Central Hudson* analysis. *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 564 (1980). For the same reasons discussed *supra* Section III.A.1.b.ii, the City has a substantial interest in preventing unlawful conduct, the Ordinance directly and materially serves that interest, and it is no more extensive than necessary. *Id.*

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

*Against Racism*, 491 U.S. 781, 791 (1989). "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Id.* Courts "do not make a searching inquiry of hidden motive" or rely on unsupported assertions of censorial intent. *Menotti v. City of Seattle*, 409 F.3d 1113, 1129 (9th Cir. 2005). Rather, "'whether a statute is content neutral or content based is something that can be determined on the face of it; if the statute describes speech by content then it is content based.'" *Id.* (quoting *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 448 (2002) (Kennedy, J. concurring)); *see also City of Everett v. Heim*, 859 P.2d 55, 58 (Wash. 1993).

Here, the City did not enact the Ordinance because it disagrees with the "messages" the baristas intend to convey, it did so to target the negative secondary effects of this business model. *See, e.g.,* Dress Code Ord. at 1 ("[B]ikini barista stands . . . create adverse secondary effects, including health, safety, economic, and aesthetic impacts, upon neighboring properties and the community as a whole, and that they have adverse impacts upon minors[.]"); Collier Decl., ¶¶ 10.1-10.7. When laws are enacted to combat the non-expressive secondary harms that are caused by expressive conduct, that purpose is content neutral. *Pap's A.M.*, 529 U.S. at 294-94 (noting that *O'Brien*, *Clark* and *Ward* all related to regulation of harmful secondary effects "unrelated to the suppression of expression" and were accordingly content neutral); *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48-49 (1986) (law to combat undesirable secondary effects of adult businesses was content-neutral); *One World One Family Now v. City and Cnty. of Honolulu*, 76 F.3d 1009, 1012 (9th Cir. 1996) (purpose of alleviating secondary effects from street vendors was content neutral).[11] And the fact that the City did not include sit down restaurants as part of the Ordinance is strong evidence that it was not trying to suppress women's ability to express themselves wearing bikinis and was instead attempting to regulate harmful secondary effects.

The Dress Code Ordinance also is content neutral on its face. It applies solely to the

---

[11] Because bikini stands are not adult establishments per se, and Plaintiffs disclaim they are in adult entertainment, the presumption that the Ordinance is content based is inapplicable. *See Alameda Books*, 535 U.S. at 448 (recognizing that virtually all regulation of adult business is content-based but is still subject to intermediate rather than strict scrutiny in most cases) (Kennedy, J., concurring)); Segal Decl., Ex. A (Edge at 39:4-8).

THE CITY OF EVERETT'S OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION - 11
Cause No. 2:17-cv-01361
20061 00005 gj23bq19nk

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

clothes quick service employees wear at work and is similar to other regulations on clothing that are routinely found content neutral. *See, e.g.*, *Blau*, 401 F.3d at 391; *Jacobs v. Clark Cnty. Sch. Dist.*, 526 F.3d 419, 432-33 (9th Cir. 2008). It does not target any particular message and applies to conduct across the board, regardless of its expressive quality. *See Pap's A.M.*, 529 U.S. at 290 (law content neutral because it banned all nudity, not just nude dancing); *Hill v. Colorado*, 530 U.S. 703, 719 (2000) (law content neutral because it applied "equally to all demonstrators, regardless of viewpoint"); *One World*, 76 F.3d at 1012 (law content neutral because it "imposes a flat ban, one that is applied without regard to content"). All "objective indicators" are that, in passing these minimum dress code requirements, the City's "predominant concern was with the amelioration of secondary effects." *Dream Palace*, 384 F.3d at 1014. This is content neutral.

### ii. The Dress Code Ordinance withstands First Amendment scrutiny.

Where a law regulating expressive conduct is content neutral, it must be upheld if it is narrowly tailored to further a substantial government interest and leaves open adequate alternate forums of expression. *World Wide Video of Wash., Inc. v. City of Spokane*, 368 F.3d 1186, 1192 (9th Cir. 2004).[12] To the extent the Court reaches this analysis, all elements of this test are met.

"[A] court's job in evaluating a policy under this test's first step is to determine whether the government's stated goals qualify as important or substantial." *Jacobs*, 526 F.3d at 435 (emphasis original, citation omitted). Laws targeted at reducing criminal conduct and other secondary harms associated with a particular business serve important governmental interests. *See, e.g., Dream Palace*, 384 F.3d at 1015; *Colacurcio*, 163 F.3d at 551-52. The relevant inquiry is "'whether the municipality can demonstrate a connection between the speech regulated by the ordinance and the secondary effects that motivated the adoption of the ordinance.'" *World Wide Video*, 368 F.3d at 1196 (quoting *Alameda Books*, 535 U.S. at 441). This burden is "not high," and the City may rely on evidence that is "'reasonably believed to be relevant for demonstrating

---

[12] Plaintiffs apply the time, place or manner *O'Brien* test, but the test for "validating a regulation of expressive conduct . . . is little, if any, different from the standard applied to time, place, or manner restrictions." *Clark*, 468 U.S. at 298; *see also Colacurcio v. City of Kent*, 163 F.3d 545, 551 & n.4 (9th Cir. 1998).

THE CITY OF EVERETT'S OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION - 12
Cause No. 2:17-cv-01361
20061 00005 gj23bq19nk

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

a connection between speech and a substantial independent government interest.'" *Dream Palace*, 384 F.3d at 1015 (quoting *Alameda Books*, 535 U.S. at 441). Thus, for example, in *Mini Spas, Inc. v. S. Salt Lake City Corp.*, the court upheld a dress code ordinance on massage parlors that was intended to prevent prostitution. 810 F.2d 939, 940-41 (10th Cir. 1987) (analyzing "ordinance requir[ing] that massage practitioners and employees be 'fully covered from a point not to exceed four (4) inches above the center of the knee cap to the base of the neck' by an opaque material"). The Tenth Circuit upheld the trial court's conclusion "that the city's interest in suppressing illegal sexual conduct is a 'substantial' or 'important' one, and that the dress code furthers that interest." *Id*. at 941.

The City's stated (and well supported) goals here are *inter alia* to "prevent dangerous and unlawful conduct" in and around quick service facilities, such as bikini barista stands. Dress Code Ord. at 4. The City relied on data from within the City and surrounding jurisdictions[13] highlighting the significant secondary effects of these stands. This evidence included police reports and interviews describing various criminal acts at bikini stands (flashing, explicit shows, sexual contact in exchange for money and public masturbation). *See* Dkt. #9-1; Dkt. #9-2. The Council also heard testimony that the bikini stands are closely associated with prostitution, lewd conduct, drug use, sexual exploitation and sexual assault. Dkt. #9-5 at 67-90. These harmful effects are real and substantial. Doe Decl., ¶¶ 5-6, 9-10, 12-13, 15-16; Layden Decl., ¶¶ 16, 17. Courts have recognized that anecdotal evidence of harms can alone be sufficient, especially when dealing with novel issues where studies may not exist. *See, e.g., World Wide Video*, 368 F.3d at 1194-96; *Alameda Books*, 535 U.S. at 437-38.

Plaintiffs attempt to undercut the City's evidence, claiming the secondary effects are not inherent in the bikini barista model. Plaintiffs offer no actual evidence to support this claim other than their own testimony that they individually have not engaged in any illegal conduct, although Ms. Edge's business certainly has experienced the same issues as other stands. *See*, *e.g.*, Segal

---

[13] Plaintiffs concede, Dkt. #8 at 14, that the City can rely on such studies and data in considering secondary harms. *See, e.g., Playtime Theatres*, 475 U.S. at 51; *World Wide Video*, 368 F.3d at 1195-96.

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

Decl., Ex. A (Edge at 101:6-104:2, 106:6-109:3). Regardless, "'so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses[,]' it is sufficient to support the Ordinance." *Gammoh v. City of La Habra*, 395 F.3d 1114, 1126-27 (9th Cir. 2005) (city could rely on studies involving nude erotic dancing to support restrictions on partially clothed erotic dancing) (quoting *Playtime Theatres,* 475 U.S. at 51-52).[14]

The Dress Code Ordinance also is narrowly tailored. An ordinance "need not be the least restrictive or least intrusive means" of serving the government's interests. *Ward*, 491 U.S. at 789-99. "Rather, the requirement of narrow tailoring is satisfied so long as the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Id.* at 799 (quotation omitted). When a restriction prohibits the conduct that is causing the secondary harms, it is narrowly tailored because it is targeting the exact source of the harm. *See, e.g., One World*, 76 F.3d at 1014.

Here, the record before the Council and this Court explains why the Ordinance is important to the regulation of secondary effects and why the ability to do so would be less effective absent the regulation. *See* Dkt. #9-1; Dkt. #9-2; Dkt. #9-4 at 82-96; Dkt. #9-5 at 67-90. Detecting criminal activity is difficult at barista stands because it can be undertaken surreptitiously. Collier Decl., ¶¶ 7-8. The stands also differ from a sit down restaurant or coffee shop because they offer the type of privacy akin to "high-backed chairs and dark corners that once flourished at strip clubs before cities adopted lighting and distance requirements." *Id.*, ¶ 7.8. Because of the lucrative nature of the stands, the risk of lewd conduct convictions is not a significant disincentive. *Id.*, ¶ 7.6. And, because it is typically the baristas who are directly implicated by undercover operations, the stand owners can escape enforcement. *Id.*, ¶ 7.3. The

---

[14] Courts have recognized that restrictions that make it easier for police to detect illegal conduct serve to "further" the city's legitimate goals of preventing that conduct. *See, e.g., Ino Ino, Inc. v. City of Bellevue*, 937 P.2d 154, 161, 169, 172 (Wash. 1997) (upholding lighting and distance requirements because "low lighting and close proximity between patrons and dancers hindered the officers' ability to detect violations"). Courts also have approved regulations designed to conserve police resources. *See, e.g., Techtow v. City Council of North Las Vegas*, 775 P.2d 227, 229 (Nev. 1989) (affirming restrictions on massage parlor hours of operation to conserve police resources).

THE CITY OF EVERETT'S OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION - 14
Cause No. 2:17-cv-01361
20061 00005 gj23bq19nk

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

Dress Code Ordinance appropriately incentivizes owners to regulate the conduct at their stands at risk of losing their business license.

Thus, while Plaintiffs contend the City should use existing laws to regulate conduct, these laws have been on the books for years but have not addressed these harms. And although Plaintiffs suggest that the City monitor the stands by video surveillance, this is resource intensive and would require substantial investment. Collier Decl., ¶¶ 8-9. Courts have rejected the same argument regarding use of camera surveillance as a purportedly "less-restrictive means of reducing illicit sexual activities." *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 299 (6th Cir. 2008). The Ordinance is not invalid "simply because there is some imaginable alternative that might be less burdensome on speech." *Ward*, 491 U.S. at 797 (quotation omitted). Rather, the City must be "allowed a reasonable opportunity to experiment with solutions to admittedly serious problems." *Playtime Theatres*, 475 U.S. at 52 (quotation omitted).

Finally, the Ordinance leaves open ample alternate channels of communication. The Ordinance regulates attire only at quick service facilities. It places no restriction on the Plaintiffs' chosen form of dress outside of work, and Plaintiffs are free to express whatever message they wish by wearing bikinis (or less) in other aspects of their lives, including on social media (which they unquestionably do). *Jacobs*, 526 F.3d at 437 (finding students have alternate channels of communication despite dress code because they may "choose what clothing to wear after school, on weekends, and at non-school functions"); *Blau*, 401 F.3d at 392. Plaintiffs also can convey feelings of "freedom, empowerment, openness, acceptance, approachability, vulnerability, and individuality" in other ways at work, such as by conversation. Unlike cases where the plaintiffs are trying to convey a message through erotic dance, which can only be expressed while in a state of undress, the messages Plaintiffs claim to convey do not require a person to be nearly naked when they express it. Instead, Plaintiffs' primary objection appears to be that a state of undress maximizes tips. *See* Segal Decl., Ex. B-D (Bjerke at 43:2-6; Humphrey at 40:10-12; Powell at 46:2-15). But Ms. Edge testified that the top way baristas earn tips is by being

THE CITY OF EVERETT'S OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION - 15
Cause No. 2:17-cv-01361
20061 00005 gj23bq19nk

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

"friendly," "nice," or "well-rounded." *Id.*, Ex. A (Edge at 134:18-135:10). And even if alternative means of conveying Plaintiffs' desired message may be less profitable (which has not been established here), that does not demonstrate a First Amendment violation. *Colacurcio*, 163 F.3d at 557 ("irrelevant" that strip clubs could not operate profitably with 10-foot requirement because requirement did not prevent erotic dance); *One World*, 76 F.3d at 1015 (fact that selling t-shirts on street was profitable means of delivering message did not mean alternate channel was insufficient). For these reasons, Plaintiffs are unlikely to prevail under the First Amendment.[15]

    2.   The Dress Code Ordinance does not violate substantive due process.

       Plaintiffs also challenge the Dress Code Ordinance based on substantive due process, claiming it infringes on their "right to choose clothing and occupation . . . ." Dkt. #8 at 23. Plaintiffs are unlikely to prevail on their due process claim.

       This Court should first reject Plaintiffs' assertion that the unfettered right to choose their clothing while at work equates to the types of fundamental rights at issue in *Planned Parenthood of Southeastern Penn. v. Casey*, 505 U.S. 833, 851 (1992) and *Obergefell v. Hodges*, 135 S. Ct. 2584, 2593 (2015). There is no fundamental right to "go about in a public place in a state of partial or complete nudity," let alone in the course of employment. *United States v. Biocic*, 730 F. Supp. 1364, 1366 (D. Md. 1990), *aff'd*, 928 F.2d 112 (4th Cir. 1991). Some courts have found a limited "liberty interest" in this area, but not a fundamental right. *See Kelley v. Johnson*, 425 U.S. 238, 244 (1976) (distinguishing "liberty interest" in personal appearance from "substantial claim of infringement on the individual's freedom of choice with respect to certain basic matters of procreation, marriage, and family life"); *Karr v. Schmidt*, 460 F.2d 609, 615-16 (5th Cir. 1972) (student's right to wear hair at desired length not a fundamental right); *Neinast v. Bd. of Trustees of Columbus Metro. Library*, 346 F.3d 585, 596 (6th Cir. 2003) (personal appearance not a fundamental right). Assuming Plaintiffs could establish such a "liberty interest," rational

---

[15] Plaintiffs do not promote their claimed messages in any other locations; in fact, they conceal them. Segal Decl., Ex. B (Bjerke at 29:4-30:6 (does not wear "bikini" anywhere other than work), 77:8-78:7 (does not post on personal Facebook account)); Ex. C (Humphrey at 51:9-52:10).

THE CITY OF EVERETT'S OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION - 16
Cause No. 2:17-cv-01361
    20061 00005 gj23bq19nk

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

basis is the proper standard of review. *See, e.g., DeWeese v. Town of Palm Beach*, 812 F.2d 1365, 1367 (11th Cir. 1987). Plaintiffs must therefore prove the Dress Code Ordinance is "so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the [City's] actions were irrational." *Vance v. Bradley*, 440 U.S. 93, 96, (1979). As detailed in above, the City has made reasonable determinations that the Ordinance is necessary to stem harmful effects of bikini barista stands. This satisfies rational basis review.[16]

Finally, to establish a substantive due process claim for violation of the right to engage in an occupation, Plaintiffs must show "first, that they are unable to pursue an occupation in the [coffee service industry], and, second, that this inability is due to actions that substantively were clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Wedges/Ledges of Calif., Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 65 (9th Cir. 1994) (quotation omitted).[17] Plaintiffs do not contend they will be unable to work in the coffee business if the Ordinance is upheld. *See, e.g.*, Segal Decl., Ex. D (Powell at 102:20-25). Nor were the City's actions arbitrary or unreasonable; to the contrary, the record demonstrates the reasonableness of the Ordinance. Plaintiffs fail to meet their "heavy burden" to show that the City "could have had no legitimate reason for its decision." *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1234 (9th Cir. 1994) (quotations omitted), and are unlikely to prevail on their substantive due process claim.

> 3. The Ordinances do not violate equal protection.

Plaintiffs also fail to establish a likelihood of success on their equal protection claim. Plaintiffs claim the Ordinances unconstitutionally discriminate against women because (1) the Lewd Conduct Ordinance criminalizes the partial exposure or touching of female breasts but not male breasts and (2) the Dress Code Ordinance "targets bikini-barista stands which only employ women." Dkt. #8 at 25-26. The Lewd Conduct Ordinance, however, treats women and men

---

[16] The recitals alone in the Dress Code Ordinance show a rational basis. *Witt v. Dep't of Air Force*, 527 F.3d 806, 817 (9th Cir. 2008) ("When "applying rational basis review…any hypothetical rationale for the law [will] do.").
[17] Courts have recognized a liberty interest in pursuing the occupation of one's choice, but not the right to be in any particular job or position. *See Pavel v. Univ. of Or.*, 2017 WL 1827706, at *12 (D. Or. May 3, 2017).

THE CITY OF EVERETT'S OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION - 17
Cause No. 2:17-cv-01361
20061 00005 gj23bq19nk

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

equally, and the Dress Code Ordinance is gender-neutral and non-discriminatory.

### a. The Lewd Conduct Ordinance does not discriminate on the basis of gender.

The equal protection clause "is not a demand that a [law] necessarily apply equally to all persons," nor does it "require things which are different in fact to be treated in law as though they were the same." *Rinaldi v. Yeager*, 384 U.S. 305, 309 (1966) (quotation marks and alterations omitted). Accordingly, a plaintiff must "demonstrat[e] that she was treated differently than others who were similarly situated to her." *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994); *see also Michael M. v. Superior Court of Sonoma Cnty.*, 450 U.S. 464, 469 (1981) (noting court will uphold "statutes where the gender classification is not invidious, but rather realistically reflects the fact that the sexes are not similarly situated in certain circumstances").

Thus, when a lewd conduct law "applies alike to men and women, requiring both to cover those parts of their bodies which are intimately associated with the procreation function," that law "does not classify or discriminate on the basis of sex." *City of Seattle v. Buchanan*, 584 P.2d 918, 921 (Wash. 1978). Such ordinances "recogniz[e] that females and males have different anatomies" for purposes of what constitutes nudity. *City of Albuquerque v. Sachs*, 92 P.3d 24, 29 (N.M. Ct. App. 2004); *see also Tolbert v. City of Memphis, Tenn.*, 568 F. Supp. 1285, 1290 (W.D. Tenn. 1983) ("In our culture, for the purpose of [a lewd conduct] ordinance, female breasts are a justifiable basis for a gender-based classification."); *Eckl v. Davis*, 51 Cal. App. 3d 831, 848 (Cal. Ct. App. 1975) (holding that "[u]nlike the situation with respect to men, nudity in the case of women is commonly understood to include the uncovering of the breasts" making it "necessary to include express reference to that area of the body"). As in the above cases, the Lewd Conduct Ordinance does not treat men and women differently; it defines what constitutes lewd conduct by reference to both genders' most intimate body parts.[18]

---

[18] Plaintiffs cite *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, but this case is an extreme outlier. 237 F. Supp. 3d 1126, 1133 (D. Colo. 2017) (court recognizing it was "going out on a lonely limb"). Other courts have recognized that the physiological and sexual distinctions between male and female breasts constitute "self-evident truths about the human condition." *Hang On, Inc. v. City of Arlington*, 65 F.3d 1248, 1257 (5th Cir. 1995); *see also Craft*, 683 F. Supp. at 299-300 (regulation's objective was not to perpetuate a stereotype, but reflected community standards as to what is nudity); *Biocic*, 928 F.2d at 115-16 (unlike male breast, female breast traditionally regarded

THE CITY OF EVERETT'S OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION - 18
Cause No. 2:17-cv-01361
20061 00005 gj23bq19nk

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

The Lewd Conduct Ordinance is not discriminatory, and the equal protection clause is inapplicable here. *See Wright v. Incline Vill. Gen. Imp. Dist.*, 665 F.3d 1128, 1141-42 (9th Cir. 2011) (finding no equal protection violation where groups were not similarly situated).

     b.     *The Lewd Conduct Ordinance's provisions serve important City objectives and the distinctions drawn are substantially related to those objectives.*

Even if Plaintiffs could demonstrate that the Lewd Conduct Ordinance treats similarly situated persons differently based on gender (which they cannot), their equal protection claim still fails. Although gender-based classifications require an "exceedingly persuasive justification" this test is met if the government shows "at least that the classification serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives." *United States v. Virginia*, 518 U.S. 515, 524 (1996). Under this standard, the "overwhelming majority" of courts have held that laws or ordinances prohibiting public exposure of female (but not male) breasts do not violate equal protection.[19]

The Lewd Conduct Ordinance is substantially related to the City's objectives in protecting unwilling audiences from exposure to nudity (which, consistent with community standards, includes the public exposure of female breasts) and in simplifying enforcement activities with respect to lewd conduct violations. *See* Collier Decl., ¶¶ 8, 10; Dkt. #9-5 at 72-74, 88-89. Similar objectives have been recognized as legitimate and important, *see, e.g.*, *Biocic*, 928 F.2d at 115-16 (protecting "moral sensibilities" of society); *Ways*, 331 F.3d at 600 (protecting order, morality, health, safety, and well-being of populace), and the Ordinance's distinction between male and female breasts is substantially related to those goals. The Lewd Conduct Ordinance meets equal protection.

---

as "erogenous zone[]"); *Buzzetti v. City of New York*, 140 F.3d 134, 143 (2d Cir. 1998) (holding similarly); *Locker v. Kirby*, 31 Cal. App. 3d 520, 526 (Cal. Ct. App. 1973) (noting "indisputable fact that the naked female breast has for centuries been a symbol of sexuality").

[19] *See, e.g.*, *State v. Vogt*, 775 A.2d 551, 558 (N.J. Ct. App. 2001); *Ways v. City of Lincoln*, 331 F.3d 596, 600 (8th Cir. 2003); *Buzzetti*, 140 F.3d at 142-43; *Biocic*, 928 F.2d at 115-16; *SDJ, Inc. v. City of Houston*, 837 F.2d 1268, 1279-80 (5th Cir. 1988); *J & B Social Club No. 1, Inc. v. City of Mobile*, 966 F. Supp. 1131, 1139-40 (S.D. Ala. 1996); *Craft*, 683 F. Supp. at 299-300; *Tolbert*, 568 F. Supp. at 1290; *City of Tucson v. Wolfe*, 917 P.2d 706, 707-08 (Ariz. Ct. App. 1995); *Locker*, 31 Cal. App. 3d at 526; *State v. Turner*, 382 N.W.2d 252, 255-56 (Minn. Ct. App. 1986); *City of Jackson v. Lakeland Lounge of Jackson*, Inc., 688 So.2d 742, 751-52 (Miss. 1996).

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

*c.* *The Dress Code Ordinance is gender-neutral and non-discriminatory.*

Plaintiffs' equal protection challenge to the Dress Code Ordinance also fails. On its face, this Ordinance applies regardless of gender. It would, for instance, govern acceptable clothing for male "bro-istas" as well. Segal Decl., Exs. H-I; *Bolser v. Wash. State Liquor Control Bd.*, 580 P.2d 629, 633 (Wash. 1978), *superseded by statute on other grounds in Allan v. Univ. of Wash.*, 997 P.2d 360 (Wash. 2000) (regulation governing topless table dancing did not violate state equal rights amendment where it applied equally to male and female dancers).

Plaintiffs claim the Dress Code Ordinance disproportionately affects women. Such claims are analyzed using a twofold inquiry. First courts inquire whether the classification is indeed neutral in the sense that it is not gender-based. *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 274 (1979). "If the classification itself, covert [or] overt, is not based upon gender, the second question is whether the adverse effect reflects invidious gender-based discrimination." *Id.*

Plaintiffs concede the Ordinance is "gender-neutral on its face." *See* Dkt. #8 at 25. The Ordinance regulates all quick service facilities and their unique secondary effects, not the gender of employees who may work there. To the extent Plaintiffs claim only women are affected because only women are bikini baristas, even if this were true it alleges solely discriminatory impact. This is insufficient to prove an equal protection violation. *See Zalewska*, 316 F.3d at 323 (gender-neutral dress code mandating shirt, jacket, and pants did not violate equal protection despite having effect of prohibiting female employees from wearing skirts). Moreover, Ms. Edge does not hire men, even though male baristas could equally communicate messages of empowerment, approachability and the like. This is because men do not fit the "brand." Segal Decl., Ex. D (Powell at 21:17-20).

"In the absence of discriminatory intent, gender-neutral classifications that burden one sex more than the other are subject only to rational basis review." *Zalewska*, 316 F.3d at 323. As

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

discussed above, the Ordinance passes this test and does not violate equal protection.[20]

4. The Ordinances are not unconstitutionally vague.

Because both Ordinances use easily understood terms and set sufficiently precise standards, Plaintiffs' vagueness challenge also should be rejected. An ordinance is impermissibly vague only if it (1) fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits, or (2) authorizes or encourages arbitrary and discriminatory treatment. *Hill*, 530 U.S. at 732. An ordinance will be upheld if it "clearly delineate[s] the conduct it proscribes" and "set[s] forth reasonably precise standards for law enforcement officials and triers of fact to follow." *Kev, Inc. v. Kitsap Cnty.*, 793 F.2d 1053, 1057 (9th Cir. 1986). In this pre-enforcement context, Plaintiffs must show the Ordinances are "impermissibly vague in all of [their] applications." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982).

a. The Dress Code Ordinance is not vague.

Plaintiffs do not argue that the terms "breast/pectorals, stomach, back below the shoulder blades, buttocks, top three inches of legs below the buttocks" and "undergarments…remain covered at all times" are vague or that a person of reasonable intelligence cannot understand them. Plaintiffs instead claim the Ordinance's references to "arbitrary measurements", "random body parts", and "extremely restrictive conditions" leave room for error and arbitrary enforcement by police. Dkt. #8 at 27. In doing so, Plaintiffs invent hypothetical scenarios of arbitrary enforcement. *Id.* at 26-27. But Plaintiffs' "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications." *Hill*, 530 U.S. at 733 (quotation and citation omitted). Moreover, cities can provide guidance to narrow potentially vague or arbitrary interpretations of their ordinances, and in evaluating a facial challenge, courts should

---

[20] Functionally, the rational-basis test is the same for due process and equal protection claims. *See Munoz v. Sullivan*, 930 F.2d 1400, 1404-05 & n.10 (9th Cir. 1991). It is "highly deferential." *Kahawaiolaa v. Norton*, 386 F.3d 1271, 1279 (9th Cir. 2004) (quotation omitted).

THE CITY OF EVERETT'S OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION - 21
Cause No. 2:17-cv-01361
20061 00005 gj23bq19nk

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

consider such guidance. *Vill. of Hoffman Estates*, 455 U.S. at 504; *see also Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972). Here, the City published specific examples of clothing acceptable under the Ordinance and provided contact information to obtain additional detail. Plaintiffs received this guidance and largely understood it. Segal Decl., Exs. A-B (Edge at 109:5-110:1; Bjerke at 92:11-17). Finally, the argument that the Ordinance is arbitrary because it applies to only quick service facilities "speaks to the wisdom and reasonableness of the Ordinance, not its linguistic precision, and accordingly does not support voiding the language on grounds of vagueness." *Int'l Food & Bev. Sys. v. City of Fort Lauderdale*, 724 F. Supp. 942, 945 (S.D. Fla. 1989).

        **b.**       *The Lewd Conduct Ordinance is not vague.*

Plaintiffs' arguments regarding the Lewd Conduct Ordinance also fail. Although Plaintiffs claim that the term "anal cleft" is not reasonably discernible, courts have upheld ordinances containing this term. *See, e.g.*, *Int'l Food & Bev. Sys.*, 724 F. Supp. at 944-45 ("Despite Plaintiff's contention that it is impossible to tell with precision where the anal cleft or cleavage begins or ends, the Court finds that the term is sufficiently communicative to put the average citizen on notice as to the exposure prohibited by the Ordinance."); *see also Fillingim v. Boone*, 835 F.2d 1389, 1391 n.1, 1398 (11th Cir. 1988) (upholding ordinance prohibiting public exposure of "anus or anal cleft or cleavage"); *DPR, Inc. v. City of Pittsburg*, 953 P.2d 231, 241-42 (Kan. Ct. App. 1998) (holding similarly). The meaning of "anal cleft" can be gleaned from the dictionary, and to the extent Plaintiffs sincerely do not understand this phrase, that appears due to deliberate avoidance. *See* Segal Decl., Exs. A-B (Edge at 110:7-112:11; Bjerke at 93:14-95:2); *U.S. v. Kilbride*, 584 F.3d 1240, 1257 (9th Cir. 2009) (relying on dictionary definition to reject vagueness challenge).[21] Moreover, the use of the term within an ordinance listing several other intimate body parts provides "sufficient clarity." *See Gammoh*, 395 F.3d at 1120.

---

[21] "Anal" is defined as "of, relating to, or situated near the anus." Webster's Third New International Dictionary 76 (1993). "Cleft" is defined as "a space or opening made by or as if by splitting … <u>the anal ~ of the human body</u>". *Id.* at 421 (emphasis added).

THE CITY OF EVERETT'S OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION - 22
Cause No. 2:17-cv-01361
   20061 00005 gj23bq19nk

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

Plaintiffs also claim the Lewd Conduct Ordinance's prohibition on exposing "more than one-half of the part of the female breast located below the top of the areola" is subject to arbitrary enforcement. But Plaintiffs' entire argument in this regard is that the Ordinance will be difficult for police to enforce. That is not the proper test. *See United States v. Williams*, 553 U.S. 285, 306 (2008) ("What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is."). Here the relevant standards are precise even if they ultimately prove difficult to enforce. Words such as "female breast" and "areola" are commonly understood, including by Plaintiffs. Segal Decl., Ex. B (Bjerke at 94:3-6 ("Q: Do you know what an areola is? . . . A: Yes."), Ex. A (Edge at 98:8 ("Everybody knows what an areola is.")). Plaintiffs speculate that enforcement will require a "humiliating search" by police officers, *see* Dkt. #8 at 28, but there is no evidence that any such searches will ever occur. Collier Decl., ¶ 11. And numerous courts have upheld similar terms against vagueness challenges.[22]

In sum, Plaintiffs have not shown they will prevail on the merits of any of their claims.

**B.  Plaintiffs have not established the other elements for injunctive relief.**

Plaintiffs also fail to meet the remainder of their burden under *Winter*.

First, Plaintiffs are unable to establish the likelihood of irreparable harm absent injunctive relief. Although Plaintiffs claim their "loss of First Amendment freedoms" suffices, Plaintiffs fail to demonstrate the existence of a colorable First Amendment claim necessary to establish such harm. *Chiafalo v. Inslee*, 224 F. Supp. 3d 1140, 1147-48 (W.D. Wash. 2016); *see also* Dkt. #209, *Hooper v. City of Seattle,* No. 2:17-cv-00077-RSM, at 31 (W.D. Wash. Oct. 4, 2017). Plaintiffs' claimed loss of business goodwill and unspecified economic injuries also do not satisfy their burden. *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League,* 634 F.2d 1197, 1202

---

[22] *See Dodger's Bar & Grill, Inc. v. Johnson Cnty. Bd. of Cnty. Comm'rs*, 32 F.3d 1436, 1444-45 (10th Cir. 1994) (holding that ordinance prohibiting individuals from "displaying…the female breast below the top of the nipple" was not vague); *SDJ, Inc.*, 837 F.2d at 1278 & n.36 (upholding ordinance containing the language "Female breast or breasts below a point immediately above the top of the areola"); *Fillingim*, 835 F.2d at 1398 (holding similarly); *Bushco v. Shurtleff*, 729 F.3d 1294, 1306-08 (10th Cir. 2013) (holding similarly); *City of Jackson*, 688 So.2d at 746-47 (holding similarly).

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

(9th Cir. 1980) ("It is well established ... that ... monetary injury is not normally considered irreparable."). The existence of intangible harms such as loss of goodwill must be shown by evidence, *Herb Reed Enter., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1251 (9th Cir. 2013), as must any purported economic damages. *See Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985) (conclusory affidavits are insufficient to demonstrate irreparable harm); *Goldie's Bookstore v. Sup. Ct.*, 739 F.2d 466, 472 (9th Cir. 1984) (finding that plaintiff would lose goodwill and "untold" customers held speculative on appeal). Here, Plaintiffs have offered no such evidence, making any such claim speculative, even if such an alleged economic injury justified an injunction. *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction."); Segal Decl., Ex. A (Edge at 119:10-12 (business is "so subjective" it is difficult to identify reasons why customers patronize it)).

Second, Plaintiffs fail to establish the balance of the equities weighs in their favor or that an injunction would serve the public interest. Plaintiffs allege the loss of their "liberty, free-speech rights, and income" outweighs the City's interests in immediate enforcement. Dkt. #8 at 29. But as noted above, Plaintiffs' liberty and free speech arguments lack merit, and their loss of income claim is speculative. In contrast, the City has a strong and certain interest in enforcing the Ordinances to limit the ongoing harms discussed above. *See also* Layden Decl., ¶¶ 12-17; *Morrow v. City of San Diego*, No. 11cv1497-IEG (KSC), 2013 WL 2416322, at *3 (S.D. Cal. May 31, 2013) (balance of equities favored city where harm to plaintiffs was speculative and harm to city was "more certain and more burdensome" in that injunctive relief would constitute a "severe interference" with city's ability to enforce its ordinances).

## IV.    CONCLUSION

For the above reasons, the City respectfully requests the motion be denied.

THE CITY OF EVERETT'S OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION - 24
Cause No. 2:17-cv-01361
20061 00005 gj23bq19nk

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

1       DATED this 23rd day of October, 2017.

2 CITY OF EVERETT                PACIFICA LAW GROUP LLP

3 By */s/Ramsey Ramerman*          By */s/Matthew J. Segal*

4    Ramsey Ramerman, WSBA #30423       Matthew J. Segal, WSBA #29797
                                    Sarah C. Johnson, WSBA #34529

5                                     Sarah S. Washburn, WSBA #44418

6 ATTORNEYS FOR DEFENDANT CITY OF EVERETT

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

THE CITY OF EVERETT'S OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION - 25
Cause No. 2:17-cv-01361
   20061 00005 gj23bq19nk

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of October, 2017, I electronically filed the foregoing document with the Clerk of the United States District Court using the CM/ECF system which will send notification of such filing to all parties who are registered with the CM/ECF system.

| | |
|---|---|
| Ramsey Ramerman | Derek A. Newman, WSBA #26967 |
| City of Everett | Jessica V. Newman, WSBA #28080 |
| 2930 Wetmore Ave | Keith Scully, WSBA #28677 |
| Everett, WA 98201-4067 | Jason Sykes, WSBA #44369 |
| Email: RRamerman@everettwa.gov | NEWMAN DU WORS LLP |
| | 2101 Fourth Avenue, Suite 1500 |
| *Co-Counsel for Defendant* | Seattle, WA 98121 |
| | |
| | *Attorneys for Plaintiffs* |

DATED this 23rd day of October, 2017.

_____
Katie Dillon

THE CITY OF EVERETT'S OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION - 26
Cause No. 2:17-cv-01361
20061 00005 gj23bq19nk

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750