# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| JOVANNA EDGE, et al., | Case No. 2:17-cv-01361-MJP |
| Plaintiffs, | **PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| CITY OF EVERETT, | |
| Defendant. | NOTE ON MOTION CALENDAR November 3, 2017 |

PLS.' REPLY TO DEF.'S OPP'N TO
MOT. FOR PRELIMINARY INJUNCTION
[Case No.: 2:17-CV-01361-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

# TABLE OF CONTENTS

Introduction ........................................................................................................................1

Argument ...........................................................................................................................1

    A.    The Baristas meet the standard for protected expression, and the ordinances violate the First Amendment because they are not narrowly tailored to prevent crime. ......................................................................................................................1

        1.    The standard for protected expression is not limited to a "particularized message" that will necessarily be understood by those who view it. ...............1

        2.    Strict scrutiny applies to the Dress-Code Ordinance because it is content-based targeting the Baristas' "sexualized" message. .........................3

        3.    The City's justification for the ordinances is pretext because neither ordinance addresses preventing crime. ..........................................................4

        4.    The Dress-Code Ordinance fails intermediate scrutiny because it imposes a greater restriction on expression than necessary to advance City interests ....................................................................................................7

    B.    The Ordinances violate substantive due process and equal protection. ....................8

        1.    The Ordinances violate substantive due process because they prevent the Baristas from earning a living in their chosen field. ..........................................8

        2.    The Ordinances violate equal protection because they only apply to women. .................................................................................................................8

        3.    The Citywide Ordinance does not advance the City's stated reasons for the law, and thus fails a rational-basis review. ...............................................10

    C.    The Baristas have proven irreparable harm and that the balance of hardships tips sharply in their favor. .................................................................................... 11

Conclusion .......................................................................................................................12

PLS.' REPLY TO DEF.'S OPP'N TO
MOT. FOR PRELIMINARY INJUNCTION - i
[Case No.: 2:17-CV-01361-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. City of Hermosa Beach*,
 621 F.3d 1051 (9th Cir. 2010) .................................................................................. 2, 7

*City of Los Angeles v. Alameda Books, Inc.*,
 535 U.S. 425 (2002) ......................................................................................................7

*Clark v. Cmty. for Creative Non-Violence*,
 468 U.S. 288 (1984) ......................................................................................................7

*Conn v. Gabbert*,
 526 U.S. 286 (1999) ......................................................................................................8

*Hurley v. Irish-Am. Gay, Lesbian and Bisexual Grp. of Boston*,
 515 U.S. 557 (1995) ................................................................................................. 1, 2

*Klein v. City of San Clemente*,
 584 F.3d 1196 (9th Cir. 2009) .................................................................................... 11

*Members of the City Council of Los Angeles v. Taxpayers for Vincent*,
 466 U.S. 789 (1984) ......................................................................................................3

*Meyer v. Nebraska*,
 262 U.S. 390 (1923) ......................................................................................................8

*Mississippi Univ. for Women v. Hogan*,
 458 U.S. 718 (1982) .................................................................................................8, 9

*Obergefell v. Hodges*,
 135 S.Ct. 2584 (2015) ...................................................................................................8

*Personnel Adm'r v. Feeney*,
 442 U.S. 256 (1979) ......................................................................................................9

*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*,
 944 F.2d 597 (9th Cir. 1991) ...................................................................................... 11

*Spence v. Washington*,
 418 U.S. 405 (1974) ......................................................................................................1

*United States v. Playboy Entm't Grp., Inc.*,
 529 U.S. 803 (2000) ......................................................................................................4

PLS.' REPLY TO DEF.'S OPP'N TO MOT. FOR PRELIMINARY INJUNCTION - ii
[Case No.: 2:17-CV-01361-MJP]

NEWMAN DU WORS LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

## INTRODUCTION

The City misstates the standard for expression under the First Amendment. The Supreme Court clarified that requiring a particularized message "is not a condition of constitutional protection." The City submits an expert declaration opining that the message is one of sexualization. But whether the Baristas' message is one of freedom, empowerment, openness, acceptance, approachability, vulnerability, individuality—or sexuality, as the City interprets it— the expression is nonetheless protected. And the City's focus on a sexualized message confirms its goal is not to prevent crime, but rather to suppress the message of sexualization. The City cannot overcome the strict scrutiny which applies to this content-based regulation.

The stated reasons for the ordinances are pretext. The City's existing lewd-conduct ordinance and laws against prostitution are sufficient to protect its interests. The fact that two criminals violated those laws several years ago does not justify imposing a dress code on law-abiding baristas now. The City cannot show that wearing bikinis while serving coffee has caused any of the alleged secondary effects. And the City misstates evidence when arguing that crime continues at bikini-barista stands. It does not.

The Court should grant a preliminary injunction because the ordinances violate the First Amendment, as well as the Fourteenth Amendment's substantive due-process and equal-protection guarantees.

## ARGUMENT

**A. The Baristas meet the standard for protected expression, and the ordinances violate the First Amendment because they are not narrowly tailored to prevent crime.**

**1. The standard for protected expression is not limited to a "particularized message" that will necessarily be understood by those who view it.**

The City argues that the First Amendment only protects conduct conveying a "particularized message" with a great likelihood that the message will be understood by those who view it. *See Spence v. Washington*, 418 U.S. 405, 411 (1974). The standard is not so rigid. The Supreme Court clarified that "a narrow, succinctly articulable message is not a condition of constitutional protection…." *Hurley v. Irish-Am. Gay, Lesbian and Bisexual Grp. of Boston*, 515 U.S. 557, 569 (1995). If protection was "confined to expressions conveying a 'particularized

PLS.' REPLY TO DEF.'S OPP'N TO
MOT. FOR PRELIMINARY INJUNCTION - 1   NEWMAN DU WORS LLP
[Case No.: 2:17-CV-01361-MJP]

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

message'" then the First Amendment "would never reach the unquestionably shielded" protection of various artists. *Id.* In *Hurley*, the Court answered whether a parade is protected expression even though the message may be unclear. *Id.* at 568–70. The Court unanimously found "protected expression that inheres in a parade is not limited to its banners and songs" because "the Constitution looks beyond written or spoken words as mediums of expression." *Id.* at 569.

In *Anderson v. City of Hermosa Beach*, 621 F.3d 1051 (9th Cir. 2010), the Ninth Circuit interpreted *Hurley* broadly. The ordinance in *Anderson* imposed a ban on tattoo parlors, just as the Dress-Code ordinance operates as a ban on bikini-barista stands. The city in *Anderson* argued that the act of tattooing someone does not "carry with it an intent to convey a message that will be understood by those who viewed it." *Id.* at 1060. "The district court assumed that the process of tattooing is at most 'non-verbal conduct expressive of an idea' rather than speech itself." *Id.* at 1059. But the Ninth Circuit held "that tattooing is purely expressive activity…entitled to full First Amendment protection…." *Id.*

Serving coffee in a bikini is pure expression regardless of whether that expression can be reduced to a "narrow, succinctly articulable message." *See Hurley*, 515 U.S. at 569. The Baristas are engaged in expression, essentially performing, the entire time they are working. Their style of dress while serving coffee to customers makes the expression possible. Serving coffee while confidently wearing a bikini is like marching in a parade. The message may be interpreted and perceived in different ways, but like the parade in *Hurley* the Baristas are engaged in expressive activity. Like a tattoo artist in *Anderson*, Plaintiff Natalie Bjerke designs all her own outfits specifically for the bikini-barista stand to enhance and personalize her performance. (Dkt. No. 32-1, Ex. B at 27:24–28:15.) The bikini-barista stand provides her the unique forum for her expression. She explains it is the "the only place that I can express and show off my outfits that I've made. It's my only chance that I have to express myself like that." (*Id.* at 29:7–10.) If the Dress-Code Ordinance is enforced, Ms. Bjerke will be denied her right to express herself using the distinctive outfits she creates for the bikini-barista environment. At the very least, the Baristas are engaged in the same pure expression conveyed by the parade in *Hurley* or the

PLS.' REPLY TO DEF.'S OPP'N TO
MOT. FOR PRELIMINARY INJUNCTION - 2
[Case No.: 2:17-CV-01361-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

tattooing in *Anderson*.

The City points to the "extreme comments posted on Plaintiffs' Instagram photos" as confirmation of their expert's opinion that the Baristas are conveying "an entirely sexualized image." It also points out that a Barista agrees that "different customers understand what you're conveying in your bikini in different ways." But the fact that expression—whether performance art, a parade, a piece of art, a theatrical performance, or a barista in a bikini—can be interpreted in different ways does not disqualify that expression from protection. If the First Amendment was so limited, NFL players kneeling during the national anthem to protest police brutality would not be protected expression because the President interprets this as anti-American sentiment. The government may not censor activity because there are different interpretations of a speaker's message. The City acknowledges that the Baristas are expressing a message. And that expression is protected, regardless of how the City perceives it.

**2. Strict scrutiny applies to the Dress-Code Ordinance because it is content-based targeting the Baristas' "sexualized" message.**

An ordinance is content based when it is "designed to suppress certain ideas that the City finds distasteful or that it has been applied" because of the message conveyed by the expression. *Members of the City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984). The Dress-Code Ordinance is content based because it is designed to suppress what the City interprets as a message of sexualization.

The City objects to women "pos[ing] in a manner suggesting they are willing to take off the limited clothing they are wearing," and objects to baristas selling photos in "outfits typical of those they wear at the stands." The City relies on Dr. Mary Ann Layden's declaration to establish that "the message received by others might send a negative message about the plaintiffs to others." The City confirms through an expert that a message is being expressed. The impetus behind the City's Dress-Code Ordinance is to kill that message because the City objects to it.

The City does not argue that it could survive strict scrutiny, only that strict scrutiny should not apply. The Dress-Code Ordinance is content based, targeting the message, so strict scrutiny applies. *See United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000). And since less

PLS.' REPLY TO DEF.'S OPP'N TO
MOT. FOR PRELIMINARY INJUNCTION - 3
[Case No.: 2:17-CV-01361-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

restrictive means exist to regulate the City's state interests, the Dress-Code Ordinance cannot survive strict scrutiny.

### 3. The City's justification for the ordinances is pretext because neither ordinance addresses preventing crime.

Relying on the declaration of Captain John DeRousse, the City misleads that the "history of crime, lewd conduct and exploitation at Everett's bikini barista stands is well-established." Captain DeRousse did a keyword search using the term "barista" in the New World police records system and created a log of incidents of police involvement. But of the 65 incidents listed, only 12 of them occurred at or near a bikini-barista stand. (Ard Decl. ¶ 17.) The overwhelming majority of them—53 incidents—did not. (*Id.*) They either occurred at a regular coffee stand, or nowhere near a coffee stand. (*Id.*) Only four incidents in the roughly two-year period were of a sexual nature, and three of those four occurred at regular coffee stands, not at a bikini-barista stand. (*Id.* ¶ 18.) Additionally, most of the incidents at bikini-barista stands were determined to be unfounded. (*Id.* ¶ 19.) The ordinances would have no effect on the type of crime that Captain DeRousse reported.

As one justification for the ordinances, the City claims that "[c]rime and other suspicious activity in and around the barista stands also is present." But the City references police reports from Yakima and Spokane—not Everett. The City's own publicly-available crime information about Everett establishes otherwise. (*See* Declaration of Hannah Ard, dated November 3, 2017 ("Ard Decl.") ¶¶ 3–6.) Bikini-barista stands are no more likely to attract crime than are Starbucks or McDonald's restaurants. In the past year, the number of crimes around Edge's bikini-barista stand was less than half the crimes outside the Starbucks at 515 SE Everett Mall Way. (*Id.* ¶¶ 10–11, Ex. A.) Starbucks experienced eight criminal incidents. (*Id.* ¶¶ 11, 14, Ex A.) In contrast, Edge's stand only experienced three incidents limited to theft. (*Id.* ¶¶ 11, 14, Ex A.) Bikini-barista stands Dream Bean Coffee and Double Divas Espresso also experienced only three incidents. (*Id.* ¶¶ 11, 14, Ex A.) The McDonalds at 2001 Everett Avenue experienced six criminal incidents. (*Id.* ¶¶ 11, 14, Ex A.) There was also a sexual assault about a third of a mile from the McDonalds. (*Id.* ¶¶ 11, 14, Ex A n.4.) No sexual assaults occurred anywhere near Edge's bikini-

PLS.' REPLY TO DEF.'S OPP'N TO
MOT. FOR PRELIMINARY INJUNCTION - 4
[Case No.: 2:17-CV-01361-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

barista stand. (*Id.* ¶ 11, 14, Ex A.)

The City also stretches the truth by stating that "[p]ublic masturbation continues at Hillbilly Hotties stands." Ms. Edge did not testify to any continuing activity at her stands, but instead testified about one incident where she obtained the license plate number of the vehicle and told the driver that he could not engage in such conduct at her stand. (Dkt. No. 32-1, Ex. A at 118:2–17.) And the one other similar incident cited by the City did not occur in Everett, but in Monroe. (Dkt. No. 32-1, Ex. D at 97:24–98:21.) Banning an entire industry over a single incident in Everett is unreasonable.

The City asserts that the "bikini barista 'business model' remains inherently harmful." As evidence of this, the City reports that an owner of one of the stands "is reported to engage in sexual relations with baristas." But this type of conduct is sadly not limited to any particular business. As media revelations regarding Hollywood directors and producers, the "me too" campaign, and recent stories about misconduct in our state and national capitols demonstrates, men sometimes abuse positions of power. A ban on bikini-barista stands will not have any impact on this type of crime.

The City also complains that Baristas have sold photographs of themselves in bikinis, accepted gifts of swimwear and lingerie, and that one barista "advertised she was launching a 'XXX' website." But none of these are criminal acts, and the City has no evidence that any barista engaged in prostitution. The City's final justification—that bikinis are easier to remove than other clothing—lacks merit. The t-shirts and shorts the City sanctioned could be pulled up, pushed down, or slid aside using the same or less effort than it takes to remove a bikini. And some bikini outfits, like the elaborately sculpted designs that Plaintiff Natalie Bjerke makes for herself, take considerable effort to remove. The ordinances do not prevent body touching if a rogue barista and customer decide to break the law against prostitution or lewd conduct.

The City puts forth a "series of investigations over many years," relying heavily on the Declaration of Sgt. James Collier of the Everett Police Department. But the Collier Declaration is based on investigations that occurred four to eight years ago, focusing on two bad actors convicted of criminal activity. The City argues that even after the arrest of Panico and others

PLS.' REPLY TO DEF.'S OPP'N TO
MOT. FOR PRELIMINARY INJUNCTION - 5    NEWMAN DU WORS LLP
[Case No.: 2:17-CV-01361-MJP]

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

involved with her stands, "lewd conduct and drug use continued unabated at the stands." But the Collier Declaration makes clear that this activity occurred only for a short period of time *at the same stands* owned by Panico and others previously targeted. (Dkt. No. 29 ¶ 5.9.4.) And Ms. Panico's stands were the exception rather than the rule. Police interviews with the baristas who worked for Panico show a completely different story at other stands, including Edge's Hillbilly Hotties. For example, in an interview with police, one barista stated that "she worked at the Bee Hive and there was a no tolerance policy." (Dkt. No. 9-2 at 31.)

Two of Panico's former employees came to work for Edge and were subsequently arrested in 2013. The City claims that Edge "never investigated what happened." No investigation was required—two rogue employees violated the law and were fired. (Dkt. No. 32-1, Ex. A at 102:17–19.) Edge then began checking criminal records, and now will not hire an employee who has ever been arrested while working as a barista or for prostitution. (*Id.* at 62:4–63:14.) She installed cameras and monitors them to make sure the baristas are safe and following the rules. (Dkt. No. 10 ¶ 16.) And she met with Everett police and did what they asked. (Dkt. No. 21-1, Ex. A at 102:24–103:2.) After Edge made those changes, there were no further issues. Nor after the City conducted its few enforcement operations, which ended nearly four years ago, have there been arrests made at any other Everett bikini-barista stand.

The Dress-Code Ordinance would not have provided the City with any greater leverage than the prostitution and racketeering laws, and it is unreasonable to suggest that the Panico and Wheeler gang would have followed the law if the ordinances were in effect. The exceptional cases of Wheeler and Panico do not justify imposing a dress code on the existing law-abiding baristas.

Banning bikinis at barista stands will not reduce crime. The City's stated reason for imposing the Dress-Code Ordinance is pretext to justify a ban of the Baristas' protected expression.

PLS.' REPLY TO DEF.'S OPP'N TO
MOT. FOR PRELIMINARY INJUNCTION - 6    Newman Du Wors LLP
[Case No.: 2:17-CV-01361-MJP]

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

### 4. The Dress-Code Ordinance fails intermediate scrutiny because it imposes a greater restriction on expression than necessary to advance City interests.

If the Dress-Code Ordinance is content neutral, intermediate scrutiny applies and the law must be narrowly tailored to further a substantial government interest while leaving open adequate alternate forums of expression. *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984). The City's claimed interest is to target the secondary effect of crime. The City has the burden to establish the existence of the secondary effects, the causal link between the regulated conduct and those effects, and that the regulation is narrowly tailored to address the effects. *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 439 (2002). And in doing so, the City cannot "get away with shoddy data or reasoning." *Id.*

The City argues that when "a restriction prohibits the conduct that is causing the secondary harms, it is narrowly tailored because it is targeting the exact source of the harm." The City must then establish that the bikini-barista stand causes the harm. There is nothing inherent in wearing a bikini to serve coffee that causes the secondary effects complained of by the City. Yet the City's solution is to ban serving coffee in bikinis.

Any content-neutral regulation must "leave open ample alternative channels" for the expressive conduct. *Anderson*, 621 F.3d at 1065 (citing *Clark*, 468 U.S. at 293). The City says it passes this test because it regulates attire "only at quick service facilities" and the Baristas are "free to express whatever message they wish by wearing bikinis (or less) in other aspects of their lives." This argument ignores that a core part of the Baristas' expression is wearing the bikinis to work. It is wearing bikinis at a barista stand that allows them to express their control and agency over their personal appearance in their professional lives. As Ms. Bjerke testified when talking about the bikinis she designs for her performances at work: "it's the *only* place that I've ever been able to express myself like that." (Dkt. No. 32-1, Ex. B at 30:4–6.) That expression is not possible "in other aspects of their lives." The Dress Code Ordinance shuts down all avenues for the Baristas to engage in their expressive activity. Thus, the Dress-Code Ordinance fails the "alternative channels" requirement of intermediate scrutiny.

PLS.' REPLY TO DEF.'S OPP'N TO
MOT. FOR PRELIMINARY INJUNCTION - 7
[Case No.: 2:17-CV-01361-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

**B.  The Ordinances violate substantive due process and equal protection.**

**1.  The Ordinances violate substantive due process because they prevent the Baristas from earning a living in their chosen field.**

The City attempts to rebut the Baristas' substantive due-process arguments by analogizing to cases involving personal appearance or hair length. But the Supreme Court held that substantive due-process "liberty…includes certain specific rights that allows persons…to define and express their identity." *Obergefell v. Hodges*, 135 S.Ct. 2584, 2593 (2015). This case is about self-expression and identity, and thus addresses a fundamental liberty interest. Working as a bikini-barista allows each Barista to express her identity and define herself.

The City also argues that substantive due-process rights are intact if the Baristas can pursue an occupation in the coffee service industry, even if they cannot work as bikini baristas. But the Supreme Court has recognized "that the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment." *Conn v. Gabbert*, 526 U.S. 286, 292 (1999). That right extends beyond being able to work in the coffee business generally. *See Meyer v. Nebraska*, 262 U.S. 390, 399 (1923) (recognizing a liberty right of an individual to contract and "engage in any of the common occupations of life.").

**2.  The Ordinances violate equal protection because they only apply to women.**

The Citywide Ordinance discriminates against women because it criminalizes partial exposure of the female breast but not the male breast. The Supreme Court noted that the test for determining the validity of a gender-based classification "must be applied free of fixed notions concerning the roles and abilities of males and females. Care must be taken in ascertaining whether the statutory objective itself reflects archaic and stereotypic notions." *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 724–25 (1982). The City asserts that the Citywide Ordinance requires both men and women to "cover those parts of their bodies which are intimately associated with the procreation function." But courts have acknowledged that nudity is a social concept which has changed over time. *See, e.g.*, *Free the Nipple – Ft. Collins v. City of Ft. Collins, Colo.*, 237 F. Supp. 3d 1126, 1134 (D. Colo. 2017).

PLS.' REPLY TO DEF.'S OPP'N TO
MOT. FOR PRELIMINARY INJUNCTION - 8   Newman Du Wors LLP
[Case No.: 2:17-CV-01361-MJP]

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

And how society views the female breast has changed and evolved over time. For example, breastfeeding in public was once taboo, and now it is widely accepted. Women are not charged with lewd behavior when feeding an infant. The idea that a woman who partially exposes her breast is engaging in criminal conduct while a man who does the same is an archaic and stereotypical notion, violating equal protection.

And the invasive search required to enforce the law—where an officer must take measurements on and about a woman's breast to determine whether she complies—would be extraordinary. The fact that one of the City's witnesses asserts that "EPD would never use the type of techniques the plaintiffs appear to be concerned about" is meaningless. Just because enforcement has not happened does not mean it will not happen. And when it does, the invasive search will impact women and not men, violating their equal-protection rights. Side-stepping the issue by saying the search has not happened yet does not escape the fact that the Ordinance is set up for discriminatory and offensive treatment of women.

While the Dress Code Ordinance is gender-neutral on its face, it violates equal protection because it has both a discriminatory impact and a discriminatory purpose. *See Personnel Adm'r v. Feeney*, 442 U.S. 256, 274 (1979). The City acknowledges that no "quick service facilities" exist except bikini-barista stands, and that the law was designed to target "crimes of a sexual nature occurring at bikini barista stands." Thus, the real target of the Dress-Code Ordinance is bikini-barista stands, where only female employees work. While the City talks about "bro-rista stands" with male employees, none exist in the City of Everett.

And the legislative history of the Dress Code Ordinance demonstrates targeting of women. Even though there is rampant crime throughout the City at places like Starbucks and McDonalds where men also work, the City made no effort to examine criminal activity in other commercial locations. The Dress-Code Ordinance was targeted at a women-only business.

Gender-based classifications require an exceedingly persuasive justification to pass muster. An ordinance is unconstitutional unless it serves an important governmental objective and the means employed are substantially related to the achievement of the objective. *See Mississippi University for Women*, 458 U.S. at 721–22. The City claims the prevention of "public acts of lewd

PLS.' REPLY TO DEF.'S OPP'N TO
MOT. FOR PRELIMINARY INJUNCTION - 9        Newman Du Wors LLP
[Case No.: 2:17-CV-01361-MJP]

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

conduct" to justify the Citywide Ordinance, and prevention of "crimes of a sexual nature" to justify the Dress-Code Ordinance. But there is no higher incidence of "crimes of a sexual nature" or "public acts of lewd conduct" at bikini-barista stands in Everett than at McDonald's restaurants or Starbucks coffee shops. Indeed, there is no higher incidence of crimes of *any* nature at bikini-barista stands than at other similar commercial establishments. So the means employed—a dress code and preventing exposure of part of a woman's breast—to achieve these objectives cannot be substantially related to the objectives themselves. Thus, the ordinances violate equal protection.

### 3. The Citywide Ordinance does not advance the City's stated reasons for the law, and thus fails a rational-basis review.

The City claims two reasons for the Citywide Ordinance—protecting "unwilling audiences from exposure to nudity" and "simplifying enforcement." The Citywide Ordinance addresses neither goal. To support the justification for regulating nudity, the City cites a wide range of cases addressing toplessness or full nudity. But being completely nude or exposing a nipple, areola, or the entirety of the buttocks has always violated the law. The existing law fully addresses the concern. The Citywide Ordinance makes it unlawful to expose "more than one-half of the part of the female breast located below the top of the areola" and the "bottom one-half of the anal cleft." The city has no evidence that partial exposure of a woman's breast violates community standards, or that there is an unwilling audience that requires protection from a partial breast. Nor is there anything even remotely linking the Citywide Ordinance to the secondary harms the City claims it wants to remedy.

And the City's position that the Citywide Ordinance has made enforcement simpler is puzzling. Before the Citywide Ordinance amending the existing lewd-conduct ordinance, a quick glance by a police officer would reveal whether a woman violated the law. But now, a woman is required to expose her areola so that law enforcement can measure with a ruler or tape measure how much of her breast is revealed in order to enforce the ordinance. The Citywide Ordinance achieves the opposite of the City's stated reason or the law. Enforcement becomes much more difficult, not simpler.

PLS.' REPLY TO DEF.'S OPP'N TO
MOT. FOR PRELIMINARY INJUNCTION - 10   NEWMAN DU WORS LLP
[Case No.: 2:17-CV-01361-MJP]

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

**C. The Baristas have proven irreparable harm and that the balance of hardships tips sharply in their favor.**

The City does not dispute that losing free-speech rights, even for minimal time, is sufficient harm to support an injunction. *See Klein v. City of San Clemente*, 584 F.3d 1196, 1207–08 (9th Cir. 2009). Because the ordinances burden speech, this element is met and irreparable harm is unchallenged. But even if the Baristas did not have this harm, they have amply demonstrated irreparable harm if the ordinances are not enjoined.

The City admits that loss of business goodwill can provide sufficient harm but argues the Baristas must support this allegation with evidence. The Baristas have many regular customers who expect to interact with them wearing their regular attire. (Dkt. No. 10 ¶¶ 45–50.) When they were forced to wear the City's prescribed uniform, business fell and the regulars stopped coming. (*Id.* ¶¶ 46–48.) If the Baristas are forced to abandon the bikini-barista model, it is likely that they will permanently lose the goodwill of those regular customers. (*Id.*)

To meet the standard for an injunction, the Baristas may demonstrate either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. *Rent-A-Ctr., Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597, 602 (9th Cir. 1991). Because the Baristas have demonstrated probable success on the merits and irreparable injury, the Court need not reach the balance of hardships. If the Court reaches the issue, the Baristas' inability to earn the same living and interference with their right of expression outweighs the City's short delay in enforcing new ordinances.

PLS.' REPLY TO DEF.'S OPP'N TO
MOT. FOR PRELIMINARY INJUNCTION - 11
[Case No.: 2:17-CV-01361-MJP]

Newman Du Wors LLP

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800

## CONCLUSION

The Baristas are likely to succeed on the merits of their claims. There is no reasonable dispute that the Baristas are engaged in pure expression. The Supreme Court clarified that expression need not be a succinctly articulable message as the City argues. And since the City has other means to achieve its stated goals, the ordinances violate the Barista's First Amendment rights. The ordinances also violate substantive due-process because they interfere with the Baristas' ability to define themselves and earn a living.

The ordinances also violate equal protection because they apply to women and not men, without an exceedingly persuasive justification. The Baristas would suffer irreparable harm and the balance of hardships tips in their favor because they would lose their free-speech rights and ability to earn the same living if the ordinances are enforced.

The Court should issue a preliminary injunction preventing enforcement of the ordinances until the Court can finally determine if they are unconstitutional.

Dated: November 3, 2017

**NEWMAN DU WORS LLP**

_____
Derek A. Newman, WSBA No. 26967
*dn@newmanlaw.com*
Jessica V. Newman, WSBA No. 28080
*jessica@newmanlaw.com*
Keith Scully, WSBA No. 28677
*Keith@newmanlaw.com*
Jason Sykes, WSBA No. 44369
*Jason@newmanlaw.com*

Attorneys for Plaintiffs

PLS.' REPLY TO DEF.'S OPP'N TO
MOT. FOR PRELIMINARY INJUNCTION - 12      **NEWMAN DU WORS LLP**
[Case No.: 2:17-CV-01361-MJP]

2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800