UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOVANNA EDGE, et al.,

              Plaintiff,

      v.

CITY OF EVERETT,

              Defendant.

CASE NO. C17-1361-MJP

ORDER GRANTING PLAINTIFFS'
MOTION FOR PRELIMINARY
INJUNCTION

THIS MATTER comes before the Court on Plaintiffs' Motion for a Preliminary Injunction (Dkt. No. 8) and Defendant's Motion to Strike (Dkt. No. 40). Having reviewed the Motions, the Response (Dkt. No. 28), the Reply (Dkt. No. 36), the Surreply (Dkt. No. 40) and all related papers, the Court GRANTS Defendant's Motion to Strike and GRANTS Plaintiffs' Motion for a Preliminary Injunction.

**Opinion Summary**

Plaintiffs Jovanna Edge and others are employed by "bikini barista stands," drive-through stands where baristas serve coffee to customers while wearing bikinis. Plaintiffs challenge the

1  constitutionality of two ordinances recently enacted by the City of Everett.  The Citywide

2  Ordinance restricts dress citywide, and prohibits exposure of "more than one-half of the part of

3  the female breast located below the top of the areola," "the genitals, anus, bottom one-half of the

4  anal cleft, or any portion of the areola or nipple of the female breast."  The Dress Code

5  Ordinance requires "bikini baristas" and employees of similar facilities to wear clothing that

6  covers "the upper and lower body (breast/pectorals, stomach, back below the shoulder blades,

7  buttocks, top three inches of the legs below the buttocks, pubic area and genitals)."  Plaintiffs

8  have moved for a preliminary injunction to prevent the City from enforcing these ordinances.

9        The Court finds that the Citywide Ordinance and the Dress Code Ordinance are likely

10  void for vagueness under the Fourteenth Amendment.  The term "bottom one-half of the anal

11  cleft" is not well-defined or reasonably understandable, and the ordinances otherwise fail to

12  provide clear guidance and raise risks of arbitrary enforcement.  The Court finds that the Dress

13  Code Ordinance likely violates Plaintiffs' right to free expression under the First Amendment.

14  Accordingly, the Court GRANTS Plaintiffs' Motion for a Preliminary Injunction.

15                                    **Background**

16        Plaintiffs Jovanna Edge, et al. challenge the constitutionality of two ordinances recently

17  enacted by Defendant City of Everett.  (See Dkt. No. 1.)  Plaintiffs include the owner and

18  employees of "bikini barista stands," which are drive-through stands where baristas serve coffee

19  to customers while wearing bikinis.  (Dkt. No. 8 at 8.)

20        The challenged ordinances are Ordinance No. 3559-17 (the "Citywide Ordinance") and

21  Ordinance No. 3560-17 (the "Dress Code Ordinance") (collectively, the "Ordinances").  (Id. at

22  10.)

23

24

1        The Citywide Ordinance amends the City's existing definition of "Lewd Conduct" to

2  include "exposure of more than one-half of the part of the female breast located below the top of

3  the areola" and "exposure or display" of "one's genitals, anus, bottom one-half of the anal cleft,

4  or any portion of the areola or nipple of the female breast." (Dkt. No. 8-1 at 4.) Violation is

5  punishable by up to 90 days in jail and a fine of up to $1,000. (Id. at 2.) An owner, manager, or

6  operator of a public place who "knowingly permits, encourages, or causes to be committed lewd

7  conduct" is guilty of "facilitating lewd conduct," and is subject to up to one year in jail and a

8  $5,000 fine. (Id. at 5.)

9        The Dress Code Ordinance requires employees of "Quick-Service Facilities," including

10  coffee stands and coffee shops, fast food restaurants, delis, food trucks, and "businesses that

11  provide drive-thru forms of food and/or beverage service" to wear clothing that covers "the

12  upper and lower body (breast/pectorals, stomach, back below the shoulder blades, buttocks, top

13  three inches of the legs below the buttocks, pubic area and genitals)." (Dkt. No. 8-2 at 5.)

14  Violations are issued against the owner of the Quick-Service Facility, and are punishable by a

15  fine of up to $500 and revocation of license to operate. (Id. at 6-7.)

16        Plaintiffs contend the Ordinances violate their rights to free expression and discriminate

17  on the basis of gender, and bring causes of action for violations of the First Amendment; the

18  Equal Protection Clause of the Fourteenth Amendment; Substantive Due Process under the Fifth

19  and Fourteenth Amendments; Article I, Sections 5 and 12 of the Washington State Constitution;

20  and 42 U.S.C. § 1983. (Dkt. No. 1 at 11-22.) Plaintiffs further contend the Ordinances are void

21  for vagueness under the Fourteenth Amendment and Article I, Section 5 of the Washington State

22

23

24

1    Constitution.  (Id. at 15, 18.)  Plaintiffs move for a preliminary injunction to prevent the city

2    from enforcing the Ordinances until the Court rules on their constitutionality.[1]  (See Dkt. No. 8.)

3            Plaintiffs claim they wear bikinis to express personal and political messages, including

4    messages of "freedom, empowerment, openness, acceptance, approachability, vulnerability, and

5    individuality."  (Id.)  Plaintiffs claim that "[b]y confidently revealing tattoos, scars, and personal

6    attributes in the bikinis they select," they "convey their fearless body acceptance and freedom

7    from judgment," "express[] personal viewpoints," and invite "customers to ask questions and

8    open dialogue."  (Id. at 7, 16.)  Plaintiffs claim these messages are understood by customers and

9    prompt conversations about "body image and self-confidence."  (Id. at 16.)

10           The City contends the Ordinances are needed to "prevent dangerous and unlawful

11   conduct" inherent to bikini barista stands, including "flashing, explicit shows, sexual contact in

12   exchange for money and public masturbation" and "prostitution, lewd conduct, drug use, sexual

13   exploitation and sexual assault."  (Dkt. No. 28 at 14.)  The City contends that "the minimalistic

14   nature of the clothing" worn by bikini baristas lends itself to this conduct because baristas can

15   quickly and easily remove or adjust their bikinis to engage in sexual contact with customers.

16   (Dkt. No. 8-2 at 2.)  The City cites a series of law enforcement investigations which led to

17   "numerous arrests for lewd conduct and prostitution" over several years.  (Dkt. No. 28 at 3-4, 7.)

18   The City claims its existing laws are insufficient, and that the Ordinances will allow it to more

19   readily impose penalties on stand owners who permit employees to engage in such conduct.  (Id.

20   at 5-6.)

21

22

23   ─────────────────────

     [1] The City has agreed to suspend enforcement until the Court rules on Plaintiffs' Motion.

24   (Dkt. No. 10 at 7.)

ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 4

1

**Discussion**

2   **I.    Motion to Strike**

3          The City moves to strike the Declaration of Hannah Ard, filed in support of Plaintiffs'

4   Reply.  (Dkt. No. 40.)  The declaration was prepared by counsel and purports to compare crime

5   rates in areas surrounding bikini barista stands and other businesses.  (See Dkt. No. 37.)  The

6   Court finds that the declaration is based upon hearsay not subject to any exception, and is

7   therefore inadmissible.  The screenshots attached to the declaration are not public records, are

8   not properly authenticated under Fed. R. Evid. 901, and are not self-authenticating under Fed. R.

9   Evid. 902.  The declaration relies upon the screenshots to form improper expert opinions not

10  permitted under Fed. R. Evid. 702 and 703.  Therefore, the Court GRANTS Defendant's Motion

11  to Strike.  The Declaration of Hannah Ard is stricken in its entirety and is not relied upon in the

12  Court's consideration of Plaintiffs' Motion.

13  **II.   Motion for Preliminary Injunction**

14         The Court considers four factors in examining Plaintiffs' request for a preliminary

15  injunction: (1) likelihood of success on the merits, (2) likelihood of irreparable harm, (3) the

16  balance of equities, and (4) the public interest.  Winter v. Natural Res. Def. Council, Inc., 555

17  U.S. 7, 20 (2008).  "When the government is a party, these last two factors merge."  Drakes Bay

18  Oyster Co. v. Jewell, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing Nken v. Holder, 556 U.S. 418,

19  435 (2009)).

20         **A.  Likelihood of Success on the Merits**

21         The Court finds that Plaintiffs have established a likelihood of success on the merits at

22  least with regard to their Fourteenth Amendment and First Amendment claims.

23

24

ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 5

1

### i. Fourteenth Amendment: Void for Vagueness

2    An ordinance is void for vagueness if it (1) fails to give a "person of ordinary intelligence

3  a reasonable opportunity to know what is prohibited" or (2) "impermissibly delegates basic

4  policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis,

5  with the attendant dangers of arbitrary and discriminatory application." See Grayned v. City of

6  Rockford, 408 U.S. 104, 108-109 (1972).  Plaintiffs contend that the Citywide Ordinance and the

7  Dress Code Ordinance are unconstitutionally vague and subject to arbitrary and abusive

8  enforcement.

9    The Citywide Ordinance prohibits exposure of the "bottom one-half of the anal cleft."

10  (Dkt. No. 8-1 at 4.)  While the term "anal cleft" is not defined, the City claims its meaning can be

11  readily discerned from the dictionary, which defines "anal" to mean "of, relating to, or situated

12  near the anus," and "cleft" to mean "a space or opening made by or as if by splitting." [2]  (Dkt.

13  No. 28 at 23 n.21.)  Notwithstanding these definitions, the Court is uncertain as to the meaning

14  of the compound term "anal cleft" as used in the Citywide Ordinance, and finds that this term is

15  not reasonably discernable to a person of ordinary intelligence.

16    The Court also finds that the Citywide Ordinance and the Dress Code Ordinance create

17  dangers of arbitrary enforcement.  Both Ordinances require law enforcement to engage in a

18  "highly fact-specific analysis" and leave determinations of compliance "to the subjective

19

20    [2] The City also cites several cases upholding ordinances containing the term "anal cleft"
in other jurisdictions.  (See Dkt. No. 28 at 23.)  The Court notes that in each of these ordinances,
21  the term appeared in context and without the fractional modifier "bottom one-half of."  The
Citywide Ordinance is an outlier in this regard.  See Int'l Food & Bev. Sys. v. City of Fort
22  Lauderdale, 724 F. Supp. 942, 944-45 (S.D. Fla. 1989) ("anal cleft or cleavage"); Fillingim v.
Boone, 835 F.2d 1389, 1393 (11th Cir. 1988) ("buttocks, anus or anal cleft, or cleavage"); DPR,
23  Inc. v. City of Pittsburg, 24 Kan. App. 2d. 703, 715 (1998) ("anal cleft or cleavage of the
buttocks").

24

ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 6

judgment of the officer." Hunt v. City of Los Angeles, 638 F.3d 703, 712 (9th Cir. 2011). For instance, to determine whether "more than one-half of the part of the female breast located below the top of the areola" is exposed in violation of the Citywide Ordinance, an officer must locate and measure from the "top of the areola" to the bottom of the breast. To determine whether the "top three inches of legs below the buttocks" are exposed in violation of the Dress Code Ordinance, an officer must identify precisely where the buttocks end and the legs begin. While these determinations may be straightforward in some cases, they will inevitably be less so in others.

Therefore, the Court finds that Plaintiffs are likely to prevail on their claims that the Ordinances are void for vagueness in violation of the Fourteenth Amendment.

### ii. First Amendment

#### 1. *Plaintiffs' Choice of Clothing is Communicative*

Conduct is communicative if coupled with an "intent to convey a particularized message" and a likelihood that "the message would be understood by those who viewed it." Thomas v. City of Beaverton, 379 F.3d 802, 810 (9th Cir. 2004) (quoting Spence v. Washington, 418 U.S. 405, 410-11 (1974)). A "narrow, succinctly articulable message" is not required. Hurley v. Irish-Am. Gay, Lesbian, and Bisexual Grp. Of Boston, 515 U.S. 557, 569 (1995). Clothing (or lack thereof) and personal appearance, though important forms of self-expression, are not inherently communicative. See, e.g., Brandt v. Bd. of Educ. of City of Chicago, 480 F.3d 460, 465 (7th Cir. 2007); Zalewska v. Cty. of Sullivan, N.Y., 316 F.3d 314, 320 (2d Cir. 2003). However, clothing that conveys a political or other message has long been recognized as a form of communication. See, e.g., Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 505-506 (1969) (black arm band protesting war was protected speech); Bd. of Airport Comm'rs of

1    City of Los Angeles v. Jews for Jesus, Inc., 482 U.S. 569, 576 (1987) (shirt or button bearing

2    political message was protected speech); see also Canady v. Bossier Parish Sch. Bd., 240 F.3d

3    437, 441 (5th Cir. 2001) ("The choice to wear clothing as a symbol of an opinion or cause is

4    undoubtedly protected under the First Amendment if the message is likely to be understood by

5    those intended to view it.").

6         Plaintiffs contend that wearing bikinis allows them to convey messages of freedom,

7    empowerment, body acceptance, self-confidence, approachability, vulnerability and

8    individuality, and that these messages are understood by customers.  (Dkt. No. 8 at 7, 16.)  The

9    City responds that the messages are "vague and unfocused," are not "particularized," and are

10   understood only as a "sexualized image."  (Dkt. No. 28 at 10.)  But Courts have long recognized

11   nude or partially nude dancing as a form of communicative conduct under the First Amendment.

12   See, e.g., Barnes v. Glen Theatre, Inc., 501 U.S. 560, 565-66 (1991); City of Erie v. Pap's A.M.,

13   529 U.S. 277, 289 (2000); Young v. City of Simi Valley, 216 F.3d 807, 815 (9th Cir. 2000).  The

14   City does not explain how nude dancing conveys a more "particularized" or less "sexualized"

15   message than serving coffee in a bikini.

16        Having reviewed the record, the Court observes that what Plaintiffs refer to as "bikinis"

17   may be described more accurately as "pasties and G-strings."  (See Dkt. No. 9, Exs. A-D; see

18   also Dkt. No. 28 at 7.)  However, it is not the Court's responsibility to comment on taste or

19   decorum, but rather to determine whether Plaintiffs' choice of clothing is communicative.  The

20   Court concludes that it is.  While some customers view the bikinis as "sexualized," to others,

21   they convey particularized values, beliefs, ideas, and opinions; namely, body confidence and

22   freedom of choice.  Moreover, in certain scenarios, bikinis can convey the very type of political

23   speech that lies at the core of the First Amendment.  For instance, Plaintiffs might wear bikinis

24

1    constructed of the bright pink "pussyhats" worn by protesters during the Women's March or the

2    black armbands worn by students during the Vietnam War, or emblazoned with the logos and

3    colors of their favorite sports teams.  Accordingly, the Court finds that Plaintiffs' choice of

4    clothing is sufficiently communicative.

5                    **2.   *The Dress Code Ordinance is Content Neutral***

6            A law is content based if it "applies to particular speech because of the topic discussed or

7    the idea or message expressed."  Reed v. Town of Gilbert, Ariz., 135 S.Ct. 2218, 2227 (2015).

8    Where a law is content neutral on its face, the Court considers whether it is nevertheless content

9    based because it cannot be "'justified without reference to the content of the regulated speech,'"

10   or was adopted "'because of disagreement with the message' conveyed."  Id. (quoting Ward v.

11   Rock Against Racism, 491 U.S. 781, 791 (1989)).

12           Plaintiffs contend that the Dress Code Ordinance is content based because it is "designed

13   to suppress certain ideas that the City finds distasteful."  (Dkt. No. 36 at 6.)  The City responds

14   that it is content neutral because its enactment was motivated not by disagreement with any

15   particular message, but rather to "target the negative secondary effects of [Plaintiffs'] business

16   model."  (Dkt. No. 28 at 12.)

17           At this stage in the proceedings, the Court finds that the Dress Code Ordinance is content

18   neutral.[3]  The Dress Code Ordinance is content neutral on its face, and was enacted, at least in

19

20   _____

21           [3] The Court notes that, although the stated purpose of the Dress Code Ordinance is to
     deter secondary effects, there is some indication that it was motivated at least in part by the
22   City's disagreement with Plaintiffs' message.  For instance, the City describes the Plaintiffs'
     bikinis as conveying "an entirely 'sexualized image,'" (Dkt No. 28 at 10) and submits a
23   declaration describing in detail the "impact of wearing a swimsuit on the wearer and the
     observers," including "sexual self-objectification" and "sexualization of women."  (See Dkt. No.
     31.)  These statements would seem to support, but do not compel at this stage, a finding that the
24   Dress Code Ordinance is content based.

part, in an effort to control secondary effects "unrelated to the suppression of free expression." City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 48 (1986) (where predominate purpose of statute is to control secondary effects, this is "more than adequate" to establish an interest unrelated to the suppression of expression). As a content neutral regulation, the Dress Code Ordinance is subject to intermediate scrutiny.

### 3. *The Dress Code Ordinance Does Not Satisfy Intermediate Scrutiny*

An ordinance satisfies intermediate scrutiny "if it is designed to serve a substantial government interest, is narrowly tailored to serve that interest, and does not unreasonably limit alternative avenues of communication." World Wide Video of Washington, Inc. v. City of Spokane, 368 F.3d 1186, 1192 (9th Cir. 2004) (citation omitted).

First, the Court determines whether the Dress Code Ordinance is designed to serve a substantial government interest. See City of Los Angeles v. Alameda Books, 535 U.S. 425, 434-35 (2002). The City contends that bikini barista stands have generated "increases in crime," "increases in public sexual conduct," "increases in the opportunity for the spread of sexually transmitted diseases," "increases in corruption of minors," and "adverse impacts upon the aesthetics and property values of the surrounding neighborhoods and businesses." (Dkt. No. 8-2 at 3.) The Court finds that the City has a substantial interest in deterring these claimed secondary effects.

Second, the Court determines whether the City has "demonstrate[d] a connection between the speech regulated by the ordinance and the secondary effects that motivated the adoption of the ordinance." Alameda Books, 535 U.S. at 441. "[V]ery little evidence is required." Id. at 451 (Kennedy, J., concurring). While the City may rely on any evidence that is "reasonably

1   believed to be relevant" and that "fairly support[s]" its rationale for the ordinance, it cannot rely

2   on "shoddy data or reasoning."  Id. at 438.

3          The Court does not conclude that the City's evidence reasonably supports the Dress Code

4   Ordinance.  The City claims it relied on years of data, police reports, and interviews describing

5   the secondary effects of bikini barista stands.  (Dkt. No. 28 at 4, 14; see also Dkt. No. 9, Exs. A-

6   D.)  However, the City's evidence is hardly overwhelming, and its methodology suspect.  For

7   instance, the City contends that crime occurs disproportionately in the areas surrounding bikini

8   barista stands.  In support, it offers results from a police database.  (See Dkt. No. 28 at 6; Dkt.

9   No. 30 at 2.)  But these results do not distinguish between coffee stands where baristas wear

10  bikinis and those where they do not, nor do they suggest that the reported incidents were caused

11  by the baristas' choice of clothing.  (See Dkt. No. 30 at 2-3; Ex. A.)  The City contends that it

12  has been unable to regulate the secondary effects of these stands using existing laws.  However,

13  most of the criminal incidents cited in the legislative record occurred years ago and were

14  perpetrated by two individuals who have since been convicted.  (See Dkt. No. 9, Exs. A-D; Dkt.

15  No. 29.)  In short, the legislative record does not demonstrate a causal connection between

16  bikinis and crime and other secondary effects.

17         Finally, the Court determines whether the City has "regulate[d] the secondary effects of

18  speech by suppressing the speech itself."  Alameda Books, 535 U.S. at 445 (Kennedy, J.,

19  concurring).  Nor may the City "burden substantially more speech than is necessary to further the

20  government's legitimate interests," Ward, 491 U.S. at 799, or "unreasonably limit alternative

21  avenues of communication."  World Wide Video, 368 F.3d at 1192 (citation omitted).  The City

22  does not meet these requirements.  While the City contends Plaintiffs are "free to express

23  whatever message they wish by wearing bikinis (or less) in other aspects of their lives" or "in

24

ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 11

1    other ways at work, such as by conversation" (Dkt. No. 28 at 16), it is precisely by wearing

2    bikinis while serving coffee to customers that Plaintiffs convey their intended messages.  The

3    Dress Code Ordinance suppresses Plaintiffs' speech itself and does not leave open alternative

4    avenues of communication.  Moreover, the Dress Code Ordinance goes far beyond prohibiting

5    the "pasties and G-strings" complained of by the City, and requires Plaintiffs and other

6    employees of "Quick-Service Facilities" to wear substantially more clothing than all other city

7    residents.  The City's legitimate interest in deterring crime could reasonably be furthered in less

8    restrictive ways.

9         Therefore, the Court finds that the Dress Code Ordinance does not satisfy intermediate

10   scrutiny.  Having found that Plaintiffs have demonstrated a likelihood of success on the merits of

11   their Fourteenth and First Amendment claims, the Court does not reach Plaintiffs remaining

12   claims at this time.

13                    **B.  Likelihood of Irreparable Harm**

14        Having demonstrated a likelihood of success on the merits, Plaintiffs have also

15   demonstrated irreparable harm, as "loss of First Amendment freedoms, for even minimal periods

16   of time, unquestionably constitutes irreparable injury."  See Klein v. City of San Clemente, 584

17   F.3d 1196, 1207-08 (9th Cir. 2009) (quoting Elrod v. Burns, 427 U.S. 347 (1976)).

18                    **C.  Public Interest and Balance of the Equities**

19        Without a preliminary injunction, Plaintiffs will be deprived of their constitutional rights.

20   On the other hand, the City will face no serious injustice if the injunction issues.  The City

21   concedes that "[f]or nearly a decade" it has "grappled with the harms associated with bikini

22   barista stands," and the Court sees no reason it cannot continue to do so pending resolution of

23   this action on the merits.  (Dkt. No. 28 at 1.)

24

| | |
|---|---|
| 1 | **Conclusion** |
| 2 | Plaintiffs have demonstrated that they are entitled to a preliminary injunction based upon |
| 3 | their claims that the Citywide Ordinance and the Dress Code Ordinance are unconstitutional |
| 4 | under the Fourteenth and First Amendments.  Therefore, the Court GRANTS Plaintiffs' Motion |
| 5 | for a Preliminary Injunction. |

The clerk is ordered to provide copies of this order to all counsel.

Dated December 4, 2017.

Marsha J. Pechman
United States District Judge