```
1                    UNITED STATES DISTRICT COURT

2                   WESTERN DISTRICT OF WASHINGTON
     _____
3
     JOVANNA EDGE, an                )
4    individual; LEAH HUMPHREY,      )
     an individual; LIBERTY          )
5    ZISKA, an individual; AMELIA    )
     POWELL, an individual;          )
6    NATALIE BJERKE, an              )
     individual; BRITTANY GIAZZI,    )
7    an individual; JUANITA          )
     CASTANEDA GUERRERO, an          )
8    individual; AND MATTESON        )
     HERNANDEZ, an individual,       )
9                                    )
             Plaintiffs,             )  No. 2:17-cv-01361-MJP
10                                   )
                                     )
11        vs.                        )  Seattle, WA
                                     )
12   CITY OF EVERETT, a              )
     Washington Municipal            )
13   Corporation,                    )
                                     )  Preliminary Injunction Hearing
14           Defendant.              )  November 21, 2017

15   _____

16                VERBATIM REPORT OF PROCEEDINGS
          BEFORE THE HONORABLE JUDGE MARSHA J. PECHMAN
17                UNITED STATES DISTRICT COURT
     _____
18

19   APPEARANCES:

20   FOR THE PLAINTIFFS:  DEREK ALAN NEWMAN
                          Newman & Du Wors LLP
21                        2101 Fourth Avenue, Suite 1500
                          Seattle, WA 98121
22                        derek@newmanlaw.com

23                        JESSICA V. NEWMAN
                          Newman Du Wors LLP
24                        2101 Fourth Avenue, Suite 1500
                          Seattle, WA 98121
25                        jessica@newmanlaw.com
```

```
 1                      JASON SYKES
                        Newman Du Wors LLP
 2                      2101 Fourth Avenue, Suite 1500
                        Seattle, WA 98121
 3                      jason@newmanlaw.com

 4    FOR THE DEFENDANT:    SARAH C. JOHNSON
                        Pacifica Law Group LLP
 5                      1191 Second Avenue, Suite 2000
                        Seattle, WA 98101
 6                      sarah.johnson@pacificalawgroup.com

 7                      JAMIE L. LISAGOR
                        Pacifica Law Group LLP
 8                      1191 Second Avenue, Suite 2000
                        Seattle, WA 98101
 9                      jamie.lisagor@pacificalawgroup.com

10                      SARAH S. WASHBURN
                        Pacifica Law Group LLP
11                      1191 Second Avenue, Suite 2000
                        Seattle, WA 98101
12                      sarah.washburn@pacificalawgroup.com

13                      RAMSEY RAMERMAN
                        City of Everett
14                      2930 Wetmore Avenue, Suite 10-C
                        Everett, WA
15                      98201
                        rramerman@everettwa.gov
16

17

18

19    Andrea Ramirez, CRR, RPR
      Official Court Reporter
20    United States District Court
      Western District of Washington
21    700 Stewart Street, Suite 17205
      Seattle, WA 98101
22    andrea_ramirez@wawd.uscourts.gov

23    Reported by stenotype, transcribed by computer

24

25
```

Edge, et al. vs. City of Everett, 11/21/17

```
 1        THE CLERK:  This is in the matter of Jovanna Edge vs.
 2   the City of Everett, Cause Number C17-1361-MJP.
 3      Counsel, please rise and make your appearance for the
 4   record.
 5        MR. NEWMAN:  Good morning, Your Honor.  My name is
 6   Derek Newman.  I'm joined by Jessica Newman and Jason Sykes.
 7   We represent the plaintiffs, Jovanna Edge, Amelia Powell, Leah
 8   Humphrey, Matteson Hernandez, Natalie Bjerke, and Liberty
 9   Ziska, all of whom are bikini baristas in the city of Everett.
10        MS. JOHNSON:  Good morning, Your Honor.  Sarah
11   Johnson, from Pacifica Law Group, here on behalf of the City of
12   Everett.  And with me here today are Jamie Lisagor and Sarah
13   Washburn, also from Pacifica, and Ramsey Ramerman, from the
14   City of Everett City Attorney's Office.
15        THE COURT:  Very good.  Well, welcome.
16      I have had an opportunity to read the plaintiffs' motion
17   for the preliminary injunction, the City of Everett's
18   opposition to the motion for the preliminary injunction.  I
19   have read the attendant affidavits that were supplied in
20   support of the motions.  And I have read the reply and the
21   surreply.
22      Is there anything else I should have reviewed in order to
23   hear you this morning?
24        MS. JOHNSON:  Not that I'm aware of.
25        THE COURT:  Okay.  All right.  Then it's the
```

Edge, et al. vs. City of Everett, 11/21/17

1   plaintiffs' motion for the preliminary injunction.  They get to

2   argue first and last.

3          MR. NEWMAN:  Your Honor, this case is about how far

4   the City of Everett can go to control what women wear at work

5   and in public.  To obtain a preliminary injunction, the

6   baristas first have to establish a likelihood of success on the

7   merits.  And I'll start with the first claim for violation of

8   the First Amendment to the United States Constitution.

9       The First Amendment protects expression.  And conduct

10  sufficiently imbued with elements of communication qualifies as

11  expression under the First Amendment.  Baristas confidently

12  serving coffee while wearing a bikini portrays messages of

13  empowerment, acceptance, fearless body acceptance,

14  individuality, openness, and acceptance.  And each of the

15  baristas has her own message.  Liberty Ziska, for example, has

16  tattoos that she can only display if she's wearing a bikini.

17  She proudly displays them when she's working as a bikini

18  barista, and she does so to open dialogue with customers about

19  what those bikinis mean to her -- those tattoos.  And the

20  customers understand that message, because they ask her about

21  the tattoos.  Similarly, Leah Humphrey has scars.  They each

22  represent a different part of her life.  They only show when

23  she's wearing a bikini.  And she displays them so that

24  customers open a dialogue about those parts of her life.  And

25  customers understand that message, because they do ask her

1    about them.  And Natalie Bjerke custom designed outfits for the

2    bikini barista stand.  Those outfits constitute her art, and

3    she proudly displays her art while working as a bikini barista.

4        So the baristas are engaged in expression.  And I don't

5    know that that is really in dispute.  I think the only dispute

6    as to expression is what the message is.  The City submits that

7    it's a message of sexualization.  On the face of the dress code

8    ordinance, it says that the conduct being regulated is that

9    closely associated with adult entertainment.  And the City is

10   going to ask the Court to strictly construe *Spence vs. State of*

11   *Washington*, which held that expression requires a

12   particularized message that's readily understood by those who

13   view it.  But the Supreme Court, 20 years after *Spence*, over 20

14   years ago, held that a particularized message is not required.

15   And so even if the City is successful at convincing the Court

16   the message is one of sexualization, it's irrelevant to the

17   analysis, it's still expression, and still qualifies for

18   protection under the First Amendment.

19       So having established expression, the Court then looks at

20   the ordinances at issue and asks whether they're content based

21   on content neutral.  A content-based regulation is one that

22   applies because of the message expressed.  These ordinances

23   apply because of the message expressed.  They are content

24   based.  The ordinances, the dress code ordinance, for example,

25   regulates what women wear, specifically requires that they

1    cover the upper and lower parts of their body, including the

2    back below the shoulder blades, and the stomach, and those are

3    the very parts that form the foundation of their expression at

4    a bikini barista stand.

5         In *State of Texas vs. Johnson*, the Supreme Court

6    considered Texas' ban on flag burning.  The State of Texas said

7    that that ban on flag burning was necessary to prevent a breach

8    of the peace.  Because whenever a flag is burned, there's

9    generally a breach of the peace.  The Supreme Court, analyzing

10   that ordinance, found that it was content based.  Because to

11   prohibit a breach of the peace, Texas already had a law in

12   place that expressly prohibited a breach of the peace, and that

13   this ordinance banning flag burning could only go to the

14   message expressed.

15        The ordinances here are no different.  The City of Everett

16   says that the ordinances are necessary to protect against

17   crimes, like prostitution, sexual exploitation of minors, and

18   lewd conduct.  But the City already has ordinances in place

19   that expressly prohibit prostitution, lewd conduct, and the

20   sexual exploitation of minors.  These new ordinances do nothing

21   to further that interest; rather, they go to the baristas'

22   message.  They are, therefore, content based.  And when an

23   ordinance is content based, strict scrutiny applies.  Strict

24   scrutiny places the burden on the City to show that the law is

25   narrowly tailored to its stated interest, and that no least

1    restrictive means exists to accomplish that same interest.

2         In *Texas vs. Johnson*, the Supreme Court looked at the

3    ordinance governing flag burning and found that the less

4    restrictive means of achieving the interest was the law that

5    already existed that expressly banned a breach of the peace.

6    And so the law banning flag burning, although it might address

7    a breach of the peace, wasn't the less restrictive means

8    possible, and the State of Texas could not survive strict

9    scrutiny.  Similarly here, because there are already laws that

10   prohibit prostitution and sexual exploitation of minors and

11   lewd conduct, this law can't survive strict scrutiny, because

12   there's already a less restrictive means of achieving the

13   stated interest, which is the existing laws.

14        And the City cannot survive strict scrutiny, and I don't

15   know that the City even disputes that.  Because in the

16   opposition to the plaintiffs' motion for preliminary

17   injunction, the City never argued that it could survive strict

18   scrutiny; rather, the City argued that intermediate scrutiny

19   should apply.  Intermediate scrutiny applies when a regulation

20   is content neutral.  A regulation is content neutral when it is

21   unrelated to the suppression of free expression.  This

22   ordinance, these ordinances, are not unrelated to the

23   suppression of free expression.  But assuming that they are,

24   intermediate scrutiny places the burden on the City to show

25   that there are legitimate secondary effects of crime, and that

Edge, et al. vs. City of Everett, 11/21/17

1   there is a causal connection between the secondary effects and
2   the regulated conduct, here the wearing of a bikini at a
3   barista stand.
4        In order to establish the secondary effects, the City
5   submits a legislative record full of police reports.  But
6   90 percent of those police reports relate to two criminal
7   actors, from between four and eight years ago.  Both those
8   criminals the City successfully prosecuted under existing laws,
9   and neither of the criminals are in the bikini barista business
10  today.  It's unreasonable to assume that if these ordinances
11  were in effect, that those criminals would have complied with
12  the law.  And also, the City can't establish that those crimes
13  were committed because of a connection to wearing bikinis, as
14  opposed to covering the back below the shoulder blades and the
15  stomach.  And so there isn't a causal connection between the
16  alleged secondary effects and the regulated conduct.
17       The City also submits a declaration of Captain John
18  DeRousse.  He's a captain with the Everett Police Department.
19  And he used a police database and typed in the word "barista"
20  and concludes that there were 65 incidences of crime at the
21  bikini barista stands in the last year and a half.  But when
22  looking further into that data, it is apparent that there are
23  actually only 12 incidences.  And that same data reveals that
24  most of those incidences were, quote, "unfounded," end quote,
25  and only one was of a sexual nature.  And when looking at

1  public crime data from the City of Everett, it's clear that

2  more than twice as many crimes occurred at McDonald's and

3  Starbucks locations than at any bikini barista stand within the

4  City of Everett.  So even though there may be crime in Everett,

5  there is no connection between the secondary effects of crime

6  and the regulated conduct, that is, wearing a bikini while

7  serving coffee at a stand.

8         The City can't meet intermediate scrutiny showing the

9  causal connection between the secondary effects and the

10  regulated conduct of the way women dress at work.  And even

11  assuming that the City could, intermediate scrutiny requires

12  that there be left open alternative channels of communication

13  of the expression.  And most of the cases relating to

14  intermediate scrutiny relate to strip clubs.  There are

15  secondary effects associated with strip clubs, and it's fair

16  for a city to zone strip clubs so that churches and schools

17  might be in one part of town, strip clubs might be in another

18  part of town.  Here, the ordinances at issue have the impact of

19  creating a complete ban on the expression of a bikini barista

20  stand.  There aren't any alternative channels of communication

21  available for the expression.  And the Supreme Court has said,

22  several times, that a complete ban is not a reasonable time,

23  place, and manner of restriction.  And thus, the City cannot

24  survive even intermediate scrutiny.

25              THE COURT:  Well, let's talk about some of the things

Edge, et al. vs. City of Everett, 11/21/17

1    that might be appropriate for the City to do.

2         Would it be appropriate for the City to basically say that

3    you can't have a window that somebody could reach in, if what

4    they're worried about is a trading sex acts for tips?

5              MR. NEWMAN:  Your Honor, that sounds reasonable to

6    me.

7              THE COURT:  Or if they are concerned about the

8    response to the bikinis, men coming in and exposing themselves

9    or masturbating, that you put a camcorder outside the barista

10   stand.

11             MR. NEWMAN:  Your Honor, that sounds quite reasonable

12   to me.

13             THE COURT:  That you record license plates that come

14   through.

15             MR. NEWMAN:  Your Honor, that sounds very reasonable.

16             THE COURT:  All right.  Now let's talk about void for

17   vagueness.

18        Do I need to reach the constitutional issue if I find that

19   the statute is void on its face?  Because, honestly, they've

20   used some terms that I'm not sure are known or one wouldn't

21   have to get out a diagram to understand how you'd enforce it.

22   For example, when you look up the term "anal" and "cleft,"

23   there is no combination of those two.  You get "anal," or you

24   get "cleft."

25             Would I be justified in stopping there?  In other words,

Edge, et al. vs. City of Everett, 11/21/17

1    why do you need me to reach the constitutional issue on a

2    preliminary case?

3            MR. NEWMAN:  Your Honor, to the extent that the

4    ordinances are void for vagueness, the Court can find that they

5    are unconstitutional for that reason.  But we would also

6    submit, of course, that they're unconstitutional because they

7    violate the First Amendment and the equal protection clause.

8    The equal protection clause prohibits the City from passing an

9    ordinance that discriminates based upon gender, unless the City

10   has an exceedingly persuasive justification.  The citywide

11   ordinance discriminates on its face, calling out the female

12   breast, and requiring that women do not wear any clothing that

13   exposes the lower half of the breast, measuring from the top of

14   the areola.

15           The City states two justifications for the citywide

16   ordinance.  The first is to protect the community from nudity.

17   The second is ease of enforcement.  Neither is an exceedingly

18   persuasive justification.  The first, protecting the community

19   from nudity, is unnecessary with this citywide ordinance,

20   because there's already an existing lewd conduct ordinance that

21   does just that.  Nudity is already prohibited.  And the second

22   justification, ease of enforcement, doesn't apply, because with

23   the existing lewd conduct ordinance that prohibits nudity, an

24   officer need only glance to see if a woman's covered up.  If

25   so, she complies with the law.  If not, she doesn't.  Whereas

1    with the citywide ordinance, that amends the lewd conduct

2    ordinance, in order for an officer to enforce the law, the

3    officer must require a woman to undress so that the officer can

4    measure from the top of the areola to ensure that not more than

5    half of the bottom half of the breast is exposed.  And there's

6    some wiggle room, some subjectivity, because it's not always

7    clear where a breast begins and ends.  There is no ease of

8    enforcement in the citywide ordinance, and so there's no

9    exceedingly persuasive justification for it, and it violates

10   the equal protection clause.

11         THE COURT:  Well, let's get back to my question,

12   though.  Let's assume, for the purposes of argument, that I

13   might agree with you.  So I've entered the preliminary

14   injunction, that it cannot be enforced.  And by doing so, I'm

15   telling the City that there's a likelihood of success on the

16   merits.

17       Why should I go forward and reach the constitutional issue

18   if I've already told the City that they're going to have to

19   rewrite their ordinance?

20         MR. NEWMAN:  Well, the Court need not reach any

21   issue, to the extent that the Court finds just one reason to

22   establish that the plaintiffs have a likelihood of success on

23   the merits.  So while we would like the Court to reach the

24   issue that the ordinances violate the First Amendment to the

25   equal protection clause, the Court may not do that.  The Court

Edge, et al. vs. City of Everett, 11/21/17

1   could find whatever door necessary to enter to establish that

2   the plaintiffs have a likelihood of success on the merits.

3       As to the equal protection clause on the dress code

4   ordinance, while the dress code ordinance is facially neutral,

5   there has never, in the history of the City of Everett, been a

6   bikini barista that is a man, and so that ordinance only

7   applies to women.  And the City's justification, again, are the

8   secondary effects, of prostitution and sexual exploitation of

9   minors and lewd conduct.  But the criminal data shows that

10  there are more crimes at McDonald's and Starbucks than at any

11  bikini barista stand, and so that is not an exceedingly

12  persuasive justification.

13      Seeing that I only have five-and-a-half minutes left, if

14  the Court has no remaining questions, I would like to reserve

15  my remaining time for rebuttal.

16          THE COURT:  Thank you.

17          MS. JOHNSON:  For nearly a decade, the City of

18  Everett has been dealing with the illegal conduct associated

19  with bikini barista stands.  The City tried addressing this

20  conduct through its existing law enforcement tools, which

21  proved to be largely ineffective and very challenging and

22  burdensome to implement.

23          THE COURT:  And part of that was because your own

24  detectives were accepting sexual favors in order to tip off the

25  baristas when they were coming; isn't that fair?

Edge, et al. vs. City of Everett, 11/21/17

1    MS. JOHNSON:  Well, no.  Actually, Your Honor, there

2    was a Snohomish County detective, not a City of Everett

3    detective, but certainly that was one of the issues that was in

4    place in the conduct that was -- in the legislative record.

5    THE COURT:  Well, let's talk a little bit about what

6    it is the City is trying to stop.

7    MS. JOHNSON:  Sure.

8    THE COURT:  Is the City trying to stop what the

9    baristas are doing, or is the City trying to stop what men are

10   doing in response to the baristas?  Because as I understand it,

11   you know, one of the things you list is that you don't want

12   indecent exposure, you don't want masturbation, you don't want

13   prostitution, you don't want minors being pressed into service.

14   But aren't all of -- except for the minor situation, which

15   I'm going to turn to the employer in a minute -- aren't all the

16   other things what the customers are doing in response to the

17   baristas?  Why not litigate and charge the customers?

18   MS. JOHNSON:  Well, Your Honor, I think that what

19   the -- what the City's goal here is multifaceted.  It's to

20   address all of the problems that you've identified.  I think

21   that the problems, as exhibited and demonstrated in the record,

22   are that there is criminal conduct occurring, by a variety of

23   actors, in this business.

24   THE COURT:  By who?

25   MS. JOHNSON:  Well, there's criminal conduct by the

Edge, et al. vs. City of Everett, 11/21/17

1  baristas.  There's criminal conduct by the customers.  There's

2  criminal conduct by the owners.

3         THE COURT:  And have you prosecuted the baristas?

4         MS. JOHNSON:  The City has done some prosecution of

5  baristas, but largely the baristas that were arrested were not

6  fully prosecuted, because they were -- gave information in

7  exchange for deferred prosecution.

8         THE COURT:  I see.  So you found them helpful, but

9  you haven't prosecuted baristas.

10        MS. JOHNSON:  Well, I can't say for sure, one way or

11 the other, whether the City has prosecuted baristas for this.

12 But I think that the point is, Your Honor, that what the City

13 is attempting to do is get to the cause of these problems,

14 which is this business model that is at issue.  And it's not

15 hard to understand why this business model is problematic.  We

16 have a situation where we have women working in relative

17 isolation, wearing next to no clothing, in an environment where

18 they are encouraged to maximize the amount of tips that they

19 make, and where there are owners who have absolutely no

20 incentive to regulate the behavior, because all they have to do

21 is say, "We didn't know what was going on."  And so what the

22 ordinance is intended to do is to say, "Look, we're going to

23 make this conduct more difficult."  We are going to say, "There

24 have to be certain minimum areas of the body that are covered,"

25 which make it harder to do and engage in the types of activity

Edge, et al. vs. City of Everett, 11/21/17

1    that we have been talking about.  And the -- and it's easier to

2    detect.

3                THE COURT:  So is it what people wear that you're

4    trying to control, or is it the business model?  Because, for

5    example, would it be possible to pass an ordinance that says

6    there would be no tipping?  Period.  I mean, Mr. Newman has

7    gotten up and said this is about free expression.

8                MS. JOHNSON:  Yes.  And we dispute that.

9                THE COURT:  And if it's about tipping, then you

10   basically say that barista stands, that there are no tips.  The

11   cost of a latte might be ten bucks, but there are no tips.

12               MS. JOHNSON:  Well, Your Honor, I think that that may

13   be one hypothetical alternative here.

14               THE COURT:  Okay.  Let me pose another one.  If you

15   want to stop -- if you want to stop masturbation and lewd

16   conduct on the part of the men who are aroused here, why not

17   post a camera right outside and take down license plates?  You

18   could post it in the *Everett Herald*.

19               MS. JOHNSON:  Well, Your Honor, I think the point

20   that the case law makes, very clearly, is that the job of the

21   courts here isn't to second-guess what the City has done.  And

22   the City has given substantial latitude to try and address

23   problems within its own borders.

24               THE COURT:  What the Court's job, though, is to look

25   for a less restrictive alternative, if there's something else

Edge, et al. vs. City of Everett, 11/21/17

1   that can substitute.  So I'm making some suggestions to you as

2   to how it is that you might regulate this, without trying to

3   regulate what people wear.

4       So if you're going to regulate what people wear, tell me

5   how it is that the police officer is going to decide who has

6   violated the statute that concerns the anal cleft.  And my

7   question to you is, from which end do you measure?

8           MS. JOHNSON:  Well, Your Honor, the term "anal

9   cleft," first of all, does not appear in the dress code

10  ordinance.  That is only in the lewd conduct ordinance.  And

11  the lewd conduct ordinance almost is -- identically mirrors the

12  ordinance that's in effect in Snohomish County.  So the

13  language of that ordinance is the same as what the plaintiffs

14  themselves acknowledge they already understand and follow, when

15  they are working in Snohomish County.  And so I think any claim

16  that it's vague or not understandable is completely undercut by

17  the fact that the ordinance is the same.  And there's no

18  question that they have not only not challenged that ordinance,

19  but they follow it.  And so --

20          THE COURT:  Why should I be worried about that

21  ordinance?  That's not the one in front of me.

22          MS. JOHNSON:  Well, I agree, Your Honor.

23          THE COURT:  Okay.

24          MS. JOHNSON:  I don't think the lewd conduct

25  ordinance -- I think that's very secondary here.  I think that

Edge, et al. vs. City of Everett, 11/21/17

1    plaintiffs' claim here is a First Amendment challenge to the

2    dress code ordinance.  And the plaintiffs are saying, "We have

3    a right of expression here."  And we disagree, Your Honor.  We

4    think that this is not a case in which there is any type of

5    particular message that's being offered.  And we think that

6    it's considerably unlikely that the message is going to be

7    received in the manner intended.  And it's plaintiffs' burden

8    here to establish that they do have a protected First Amendment

9    right.  And it's our position that they simply haven't done so.

10              THE COURT:  You didn't answer my question, which is,

11   how is it that a police officer is going to decide whether

12   somebody has violated the statute, without some subjective

13   measurement?

14              MS. JOHNSON:  Which -- which ordinance are you

15   referring to?

16              THE COURT:  I'm talking about the lewd conduct.

17              MS. JOHNSON:  The lewd conduct ordinance?

18              THE COURT:  The one that applies to the baristas, not

19   the one that applies citywide.

20              MS. JOHNSON:  Well, no.  I think it's backwards,

21   though, Your Honor.  The dress code ordinance only would apply

22   to the baristas --

23              THE COURT:  All right.  The dress code --

24              MS. JOHNSON:  -- the quick-service facilities.

25        So the dress code ordinance, first of all, is broader,

Edge, et al. vs. City of Everett, 11/21/17

```
 1   obviously, than the lewd conduct ordinance.  So to the extent
 2   that the Court accepts the dress code ordinance, I don't think
 3   you need to even to get to the lewd conduct ordinance, under
 4   the facts here, because the plaintiffs, I don't believe, are
 5   making a facial challenge in their motion to the lewd conduct
 6   ordinance.  And certainly in their work as bikini baristas,
 7   they would be required to wear more clothing than what they are
 8   wearing -- would be required to wear under the lewd conduct
 9   ordinance.
10        And I think what Your Honor's question is going to is
11   really a question of enforcement.  And I think the testimony in
12   the record is that these are not -- these terms are not vague,
13   in any sense.  They're actually used commonly in these types of
14   ordinances, including the Snohomish County ordinance.  They've
15   been upheld against vagueness challenges by the Court.
16             THE COURT:  Really?  Do you have a case upholding
17   that particular language?
18             MS. JOHNSON:  With the "anal cleft" language, Your
19   Honor?  Yes.  We cite a number of cases.  I don't have them at
20   my fingertips, but there are a number of cases in our briefing
21   that expressly address --
22             THE COURT:  In the State of Washington.
23             MS. JOHNSON:  They are federal cases, Your Honor, or
24   from other jurisdictions.  They are not, as I understand, from
25   this particular jurisdiction.
```

Edge, et al. vs. City of Everett, 11/21/17

1        But in any event, Your Honor, I think that the question

2    with respect to the lewd conduct ordinance really is not one

3    that Your Honor needs to reach on the facts that are at issue

4    here.

5            THE COURT:  All right.  Let's talk about the

6    expression issue.

7        Would you agree with me that wearing a pink pussy hat was

8    speech, at this point?  Somebody wants to March and put on a

9    hat.  Is that speech?

10           MS. JOHNSON:  Well, Your Honor, I think then you're

11   getting straight into the *Spence* analysis, right?  You're

12   saying, is there a particular message that was being conveyed

13   by wearing a pink hat, and was it understandable the way --

14   what that message was?  And I think, in that case -- I think

15   there's a good likelihood that there was that understanding of

16   the message.  Whereas here, when you look at what the

17   plaintiffs are saying their message is, in Mr. Newman's own

18   words, it's varied.  It's not even consistent among the

19   plaintiffs themselves, right?  They actually say -- there are

20   15 different terms that they're using to describe what their

21   message is.

22           THE COURT:  And if one of the baristas were to

23   fashion a bikini out of pussy hats, would that be speech?

24           MS. JOHNSON:  So an outfit that would not comply with

25   the dress code ordinance, Your Honor?  Well, no, Your Honor, I

1    don't think that you would take it to that degree, because I

2    don't think anyone would understand that that's what they're

3    doing, and particularly -- I'm not sure how, first of all, you

4    would make a hat into something akin to what the baristas are

5    wearing in the stands.  But there has to be also -- the message

6    has to be understood, right?  So there has to be both an

7    intention to send a message and, simultaneously, an

8    understanding of that message.  And that's what we're saying

9    doesn't happen here.

10        And there are numerous cases that talk about the way

11   people dress, and how that is not protected First Amendment

12   speech if there's not that sufficient particularization and

13   comprehensibility.  And in fact, the cases go so far as to

14   say -- to recognize the idea that we're going to protect

15   someone's attire when they say, "Oh, I feel good," or, "I feel

16   sexy," that that's going to give essentially the expressive

17   conduct cases a bad name.  And I think recognizing what the

18   plaintiffs are saying here would do the same, because I just

19   don't think there's any basis to get into the First Amendment,

20   under the facts that we have here before us.

21        And, Your Honor, touching on the equal protection issue,

22   again, Your Honor, the plaintiffs acknowledge that the dress

23   code ordinance is facially neutral.  It's going to apply

24   equally as across genders.  And there is no -- so essentially,

25   it's subject to rational basis, and I don't think there's any

Edge, et al. vs. City of Everett, 11/21/17

1   way that the Court can strike it down on that ground.

2        And with respect to the lewd conduct ordinance -- which,

3   again, I don't think the Court needs to reach here -- the

4   weight of authority supports the City's position that there is

5   a governmental interest that is served by regulating male and

6   female breasts differently.  And that has been upheld

7   throughout the case law, including most recently just last week

8   by the Seventh Circuit.  So I think there isn't any basis on

9   that ground to challenge the lewd conduct ordinance either.

10       And, Your Honor, with respect to -- going back, just

11  briefly, to the First Amendment, I think that it's very clear

12  that to the extent the plaintiffs do have some message that

13  they are intending to convey, that they have adequate

14  alternative channels of doing that, including through simply

15  the spoken word.  They can interact in a friendly, open,

16  empowered manner with their customers.  There isn't anything

17  inherent about what they're wearing that means that they have

18  to have that particular outfit on in order to send those

19  messages.  And, Your Honor, I think that to hold to the

20  contrary would be just to simply define what is being regulated

21  as the message, and that the courts have never gone in that

22  direction.

23            THE COURT:  Well, let's back up here.  You told me

24  that what the City of Everett wants to do is to regulate this

25  business model, but most of your argument has gone to the dress

Edge, et al. vs. City of Everett, 11/21/17

1    issue.

2         Is the City of Everett trying to legislate modesty, or are

3    they trying to attack a business model?  You seem to be arguing

4    both things.  In other words, why should I be worried whether

5    somebody wears a bikini or not?  There are changing mores.  It

6    used to be that women didn't expose their ankles.  And then

7    women didn't wear pants.  And then women didn't wear spaghetti

8    straps going to church.  And so the mores change.

9         Why does the City of Everett want to change what the mores

10   are?

11        MS. JOHNSON:  Well, I don't think the City of Everett

12   wants to change what the mores are.  I think what the City of

13   Everett is doing is regulating -- we're talking here about the

14   dress code ordinance.  The City of Everett is saying there

15   needs to be certain minimum body areas that are covered when

16   you are working in the -- in a quick-service facility.  And the

17   City --

18        THE COURT:  Now answer why.  Why is it that you need

19   to regulate the dress, if what you're after is the business

20   model, or if what you're after is the response to the dress?

21        MS. JOHNSON:  Well, Your Honor, I think what the

22   intent behind the regulation -- and this is in the un-rebutted

23   testimony from the police -- is that this will be an important

24   tool in being able to address the illegal conduct.  So this is

25   going to the secondary effects.  This is not about regulating

Edge, et al. vs. City of Everett, 11/21/17

 1    modesty, or not wanting to see women wearing certain clothing.

 2    It's that the evidence here is that this model has harmful

 3    secondary effects, and that this ordinance will address those

 4    secondary effects by regulating what the attire is and --

 5    which, again, makes it more difficult to engage in this

 6    criminal conduct.  And it also makes it easier to detect.  So

 7    if, for example, you are expecting to see someone wearing

 8    clothes in a barista stand, and you drive by and they're not

 9    wearing a shirt, because they're engaged in some form of sex

10    show or lewd conduct, then it's a lot easier to see that.  It's

11    not such a close call here.  And it doesn't involve the same

12    level of law enforcement resources that are necessary, under

13    the existing laws, in order to target this problem.

14         And I think, again, Your Honor, that the City doesn't have

15    an obligation to say, "This ordinance is the panacea.  This is

16    going to solve every problem that we've ever encountered."  The

17    case law is very clear that this just has to have some effect

18    on what's happening.  And I think there's no dispute that it

19    will.  And in large part, Your Honor --

20              THE COURT:  Let's talk about the "no dispute."

21    Mr. Newman has basically gone through, saying your data is --

22    doesn't support the position that you argue for, and your data

23    is old, and your data concerned two particular actors that are

24    no longer on the scene.

25         So, you know, where is your nexus between the clothing and

1   the crime that you are trying to -- that you're trying to stop?

2           MS. JOHNSON:  Well, I don't think it's a fair

3   characterization of the record, in the first place, and I think

4   that there is clear indication that the conduct wasn't limited

5   solely to these two actors.  In fact, the plaintiffs' stand,

6   that's at issue here, was the subject of criminal enforcement.

7           And I think in addition to that, Your Honor, there is

8   further evidence in the record that these crimes continue in

9   other jurisdictions, and quite possibly and quite likely in

10  Everett, as well.  It's just the City has turned its

11  enforcement efforts away from the intensive law enforcement

12  focus to a legislative solution here.  And so the City is

13  entitled to look at other jurisdictions' experiences, which

14  mirror its own, and legislate accordingly.  And so the idea

15  that we have to prove that these plaintiffs are responsible for

16  anything is not the case.  We can say, setting aside whether

17  that's going to have any impact in a particular case, there is

18  a broader problem here.  And we think that this record

19  establishes that.  This is a robust record, in comparison to

20  what courts have found to be sufficient to support a secondary

21  effects analysis.

22          THE COURT:  Well, then, tell me what about this

23  record is robust.

24          And, you know, maybe I'm missing something here.  But

25  you've got anecdotal.  You've got police reports going back a

Edge, et al. vs. City of Everett, 11/21/17

1    certain period of time.  Do you have any direct sociological

2    studies about what is going on here?

3         MS. JOHNSON:  Well, I think the studies that the City

4    has relied on are those that relate to the adult entertainment

5    industry, because there are similar harmful secondary effects.

6    And the case law, again, is clear that the City doesn't have to

7    have particular data or studies about a solution that may not

8    have been implemented previously, but that the City can look at

9    similar situations and legislate from those experiences.  So

10   the studies in the record really go to what those secondary

11   effects are, and that's entirely permissible for the City to

12   look at and use as a comparator.

13        THE COURT:  Okay.  So you're telling me that buying

14   lattes and going into strip clubs are comparable?

15        MS. JOHNSON:  Well, what I'm saying, Your Honor, is

16   that the type of adult -- well, first of all, Your Honor, I

17   think in some situations that the attire here is the same as

18   what is in a strip club.  And so the same types of secondary

19   effects that those businesses have been proven to have have

20   also been observed with respect to the bikini barista stands.

21   So those include public masturbation.  Those include

22   harassment.  And those include the variety of sexual conduct

23   that we've talked about.  And, you know, unlike a strip club,

24   where there are very clear regulations and protections, we

25   don't have the same thing here.  And that's, in part, what the

Edge, et al. vs. City of Everett, 11/21/17

1   ordinance is intended to address.

2          THE COURT:  Well, in the strip club, they don't have

3   a clothing ordinance, presumably, but they do have other

4   restrictions.  For example, lighting, distances.  Why is it

5   that those kinds of ordinances wouldn't work?  If you believe

6   that these baristas are engaged in criminal conduct, you know,

7   put a cam in the barista stand.  Why do you change what they

8   wear, as opposed to what they do?

9          MS. JOHNSON:  Well, Your Honor, I think, again, going

10  back to what I said before, I think that this is about

11  regulating the conduct that's at issue here, and that changing

12  the clothing will eliminate much of that conduct.

13      And with respect to your specific question about cameras,

14  again, Your Honor, the job here isn't to say, "Are there

15  theoretical possible alternatives that might work?"  It's to

16  look at what's here.  And it doesn't have to be the least

17  restrictive of the alternatives.  And there is actually case

18  law that says video surveillance isn't necessary -- even if it

19  could be considered to be less intrusive, or less restrictive,

20  that we're not going to require that.  And the testimony also

21  in the record is that, in and of itself, just monitoring that

22  surveillance, is significantly time consuming, and doesn't

23  address the type of enforcement issues that we have here, in

24  particular where we're trying to say, "We don't want the police

25  to have to spend significant resources doing something, when

Edge, et al. vs. City of Everett, 11/21/17

1   the business owners are in as good, or better, of a position to

2   help address these same concerns."

3       THE COURT:  So why not fashion an ordinance that

4   fines the business owner if one of their employees engages in

5   lewd conduct?

6       MS. JOHNSON:  Well, Your Honor, I think that, again,

7   then, we have to go through the proof of the lewd conduct,

8   which is more challenging than going through the proof of the

9   dress code violation.  And the purpose of that is to say,

10  again, it's much harder to engage in the conduct when you're

11  wearing certain minimum clothing.  And so it's a good proxy

12  here for the lewd conduct, to say, "You have to wear certain

13  clothes."  And so, for example, if we see that someone is not

14  wearing clothing, then we can say, "Okay.  Well, that is lewd

15  conduct," and so it's easier to detect.  And, Your Honor,

16  again, it's the idea that the stand owners need to have a stake

17  in this, and not involve the requirement that the police spend

18  the significant amount of resources that are necessary in order

19  to enforce the existing laws with this current business model.

20      And, Your Honor, if Your Honor -- I'm not sure where I am

21  with time, but if Your Honor doesn't have any further

22  questions, I think that it's important here to understand that

23  this isn't a case about the First Amendment.  And I think in

24  order to even get to all of the questions that Your Honor has

25  been asking, you have to find that the conduct here is

Edge, et al. vs. City of Everett, 11/21/17

1    protected under the First Amendment.  And I think that there is

2    no authority that supports that proposition.  I think it would

3    go -- be contrary to all of the existing authority to find

4    that.

5         But even if Your Honor does find that, I think, again, the

6    case law is clear, that the City has a substantial interest in

7    regulating secondary effects that it sees within its borders,

8    and that the City needs to have the latitude in order to do

9    that, even if we disagree that it may be not the least

10   restrictive means.  That isn't the test that the Court needs to

11   apply here.

12        And so, Your Honor, for those reasons and the reasons that

13   we've stated in our brief, we would ask that you deny the

14   plaintiffs' motion.

15              THE COURT:  Thank you.

16              MR. NEWMAN:  Your Honor, the City should regulate the

17   crime, and not the clothing.  And to the extent that some

18   additional regulations would be helpful, such as a distance

19   requirement between the window, cameras, capturing license

20   plates, I don't know that there would be a constitutional

21   issue.  But there is a constitutional issue when the City is

22   regulating clothing choices and not crimes.  Whether a barista

23   covers the back below the shoulder blades won't change, one way

24   or another, criminal activity.  And if the City needs to

25   monitor that, there are other types of ordinances that could be

Edge, et al. vs. City of Everett, 11/21/17

1    in place to help them monitor whether there's criminal activity

2    going on.  But preventing baristas from expressing the message

3    that they do would not be helpful.

4        The City indicates that there isn't any expression, but

5    yet one of its primary declarations is expert testimony to

6    establish this message of sexualization.  And the City, seeing

7    this message of sexualization, has passed these ordinances

8    because it objects to that message, which means the message is

9    content based, strict scrutiny applies, and the City must

10   exercise the least restrictive means possible to regulate the

11   activity.  And even the City implicitly acknowledges that it

12   can't meet strict scrutiny.

13       I was correct in predicting that the City would suggest

14   that *Spence vs. State of Washington* should be strictly

15   construed, and that there has to be a particularized message.

16   But in *Hurley vs. Irish-American*, the United States Supreme

17   Court expressly held a particularized message is not required.

18       The City also submits that because there are individual

19   messages, instead of a collective message, that somehow those

20   individualized messages are not protected, but there is no

21   authority that would indicate that.  Individualized messages

22   should be protected.

23       The City also suggests that the spoken word would be

24   sufficient.  But that wouldn't allow Liberty Ziska to display

25   tattoos, or Leah Humphrey to display scars to invite the

Edge, et al. vs. City of Everett, 11/21/17

1    dialogue.  And body confidence is a big part of the message
2    here, and that can't be done through the spoken word.  With
3    flag burning, for example, there was argument that the people
4    burning flags could simply march down to the capitol.  But
5    that's a different type of expression.  Or they could, through
6    a bullhorn, talk about objections to government activity.  But
7    that's not the same thing as flag burning.
8        The United States Constitution and the First Amendment
9    protects all forms of expression.  And here, the City is
10   attempting to ban a very important form of expression for these
11   baristas.
12            THE COURT:  Mr. Newman, let's talk about the
13   secondary effects.  The City argues that this is resulting in
14   large secondary effects.  And we've already talked about the
15   kind of behavior that they are concerned about.
16       Is there material in their proposals that shows that
17   secondary effect?  You attacked it, previously, on -- that
18   these police reports show unfounded things, or that the numbers
19   that they claim.  Is there anything in this material that shows
20   a connection?
21            MR. NEWMAN:  No, Your Honor.  And for that reason, we
22   appreciate the Court reviewing the entire record.  The Court
23   will find a substantial record, thousands of pages.  But of the
24   police reports, most deal with these two criminal actors that
25   the City successfully prosecuted.  The City didn't need

1    additional ordinances to prosecute them.  And the City should

2    read the declarations that -- the Court should read the

3    declarations that the City submitted.  The declaration of the

4    captain, who typed into the police database "barista," and then

5    concludes that there were 65 incidences, when, in truth, there

6    were 12, most were unfounded, and only one was of a sexual

7    nature.

8              THE COURT:  I read the material, and I know that

9    there's also a motion to strike that you've brought, as well.

10   But what I'm looking for, is there -- is there material out

11   there?  Your sister counsel argues that they turned to the

12   strip clubs for analogous examples.  Is that a fair analysis?

13             MR. NEWMAN:  It is not, Your Honor.  Serving coffee,

14   while confidently wearing a bikini, through a window, is not

15   the same as being completely nude, in a dark room, for long

16   periods of time.  A bikini barista stand is in a public

17   location, with a window, that police officers can monitor, and

18   can send their compatriots of -- undercover.  There is no

19   comparison between a strip club and what the bikini baristas

20   do.  And if the Court reads the deposition transcripts -- the

21   City has taken the deposition of most of my clients -- they

22   explain why.  They earn a fair living expressing themselves in

23   a way that is unique.  And it is that message of fearless body

24   acceptance, and confidence, and openness, and acceptability

25   that allows them to portray themselves in a positive light.

Edge, et al. vs. City of Everett, 11/21/17

1   They have changed the message.  They are no longer sexual

2   objects, such as women want to be in a strip club.  They are

3   portraying themselves positively.  And it is that message that

4   must be presented.

5          THE COURT:  So is it the message, or is it the money?

6   Because if the City were to pass an ordinance saying that fast

7   food places could not charge -- could not accept tips, you

8   know, you could have a latte that was worth $20, but you don't

9   accept tips.

10      Wouldn't that take off the pressure that the City says is

11  being exerted on women to perform lewd acts in order to make

12  more money?

13         MR. NEWMAN:  No, Your Honor, because the pressure

14  does not exist.  The bikini baristas who are plaintiffs in this

15  case have testified that because they are earning a good

16  living, they are less likely to take off clothing.  If they

17  take off clothing, they lose their jobs.  And they earn a

18  really good living as bikini baristas, because it is an art

19  form that customers come to see.  So customers do pay more than

20  at Starbucks.  They should be allowed to earn that living.  And

21  to the extent that they don't earn as good of a living as they

22  do, then perhaps they would work elsewhere, or perhaps then

23  there would be some kind of pressure to perform acts that they

24  would never perform now because they would be fired and lose

25  their job.  It would be extremely short-sighted, and that's not

Edge, et al. vs. City of Everett, 11/21/17

1    why they are bikini baristas.  They're bikini baristas to

2    express themselves in a way that shines a positive light on

3    them, unlike the criminal bad actors who have been prosecuted

4    under existing laws.

5        The Court should enter a preliminary injunction.  Thank

6    you.

7            THE COURT:  It's my understanding that there is an

8    agreement that this ordinance is not going to be enforced until

9    a ruling comes down; is that right?

10            MR. NEWMAN:  Yes, Your Honor.

11            THE COURT:  You can expect to see a -- an order from

12   me coming out in approximately ten days.  So not this week, but

13   you should look for it at the end of next week.

14       Thank you for your arguments.

15                        (Adjourned)

16                  (End of requested transcript)

17                      *    *    *

18       I certify that the foregoing is a correct transcript from

19   the record of proceedings in the above matter.

20

21   Date:  11/21/17                    Andrea Ramirez

22                           _____

23                           Signature of Court Reporter

24

25