**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOVANNA EDGE, an individual; LEAH HUMPHREY, an individual; LIBERTY ZISKA, an individual; AMELIA POWELL, an individual; NATALIE BJERKE, an individual; MATTESON HERNANDEZ, an individual, *Plaintiffs-Appellees*, <br><br> v. <br><br> CITY OF EVERETT, a Washington municipal corporation, *Defendant-Appellant*. | No. 17-36038 <br><br> D.C. No. 2:17-cv-01361-MJP <br><br><br> OPINION |

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, District Judge, Presiding

Argued and Submitted February 4, 2019
Seattle, Washington

Filed July 3, 2019

Before: Sandra S. Ikuta and Morgan Christen, Circuit
Judges, and Jennifer Choe-Groves,* Judge.

Opinion by Judge Christen

---

* The Honorable Jennifer Choe-Groves, Judge for the United States
Court of International Trade, sitting by designation.

# SUMMARY[**]

## Constitutional Law / Preliminary Injunction

The panel vacated the district court's preliminary injunction against enforcement of the City of Everett, Washington's Dress Code Ordinance—requiring that the dress of employees, owners, and operators of Quick-Service facilities cover "minimum body areas"—and the amendments to the Lewd Conduct Ordinances.

Plaintiffs are owners and employees of a bikini barista stand in Everett, Washington.

The panel held that plaintiffs did not show a likelihood of success on the merits of their two Fourteenth Amendment void-for-vagueness challenges, nor on their First Amendment free expression claim.

Concerning the Lewd Conduct Ordinances, which expanded the definition of "lewd act" and also created the misdemeanor offense of Facilitating Lewd Conduct, the panel held that the activity the Lewd Contact Amendments prohibited was reasonably ascertainable to a person of ordinary intelligence. The panel also held that the Amendments were not amenable to unchecked law enforcement discretion. The panel concluded that the district court abused its discretion by holding that the plaintiffs were likely to succeed on the merits of their void-for-vagueness challenge to the Amendments.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Concerning enjoinment of the enforcement of the Dress Code Ordinance, the panel held that the vagueness principles governing the panel's analysis of the Lewd Conduct Amendments applied with equal force to the Dress Code Ordinance. The panel concluded that the vagueness doctrine did not warrant an injunction prohibiting enforcement of the Dress Code Ordinance. As to plaintiffs' First Amendment contention that the act of wearing almost no clothing while serving coffee in a retail establishment constituted speech, the panel held that plaintiffs had not demonstrated a "great likelihood" that their intended messages related to empowerment and confidence would be understood by those who view them. The panel concluded that the mode of dress at issue in this case was not sufficiently communicative to merit First Amendment protection. The panel also held that the district court's application of intermediate scrutiny under the "secondary effects" line of authority was inapposite, and the City need only demonstrate that the Dress Code Ordinance promoted a substantial government interest that would be achieved less effectively absent the regulation. Because the district court did not analyze the ordinance under this framework, the panel vacated the preliminary injunction and remanded for further proceedings.

## COUNSEL

Ramsey Everett Ramerman (argued), City of Everett, Everett, Washington; Sarah C. Johnson and Matthew J. Segal, Pacifica Law Group LLP, Seattle, Washington; for Defendant-Appellant.

4          Edge v. City of Everett

Melinda W. Ebelhar (argued) and Gerald M. Serlin, Benedon & Serlin LLP, Woodland Hills, California, for Plaintiffs-Appellees.

**OPINION**

CHRISTEN, Circuit Judge:

"Bikini barista" stands are drive-through businesses where scantily clad employees sell coffee and other non-alcoholic beverages. In Everett, Washington, a police investigation confirmed complaints that some baristas were engaging in lewd conduct at these establishments, that some baristas had been victimized by patrons, and that other crimes were associated with the stands. The City responded by adopting Everett Municipal Code (EMC) § 5.132.010–060 (the Dress Code Ordinance) requiring that the dress of employees, owners, and operators of Quick-Service Facilities cover "minimum body areas." Separately, the City also broadened its lewd conduct misdemeanor by expanding the Everett Municipal Code's definition of "lewd act" to include the public display of specific parts of the body. EMC § 10.24.010. The City also created a new misdemeanor called Facilitating Lewd Conduct for those who permit, cause or encourage lewd conduct. EMC § 10.24.020.

A stand owner and several baristas sued the City pursuant to 42 U.S.C. § 1983, contending that the Dress Code Ordinance and the amendments to the Lewd Conduct Ordinances violate their First and Fourteenth Amendment rights. The district court granted plaintiffs' motion for a preliminary injunction and enjoined enforcement of these provisions. The City appeals. We have jurisdiction over the

City's interlocutory appeal pursuant to 28 U.S.C. § 1292. Because we conclude that plaintiffs did not show a likelihood of success on the merits of their two Fourteenth Amendment void-for-vagueness challenges, nor on their First Amendment free expression claim, we vacate the district court's preliminary injunction and remand this case for further proceedings.

## I.  Factual Background

Bikini barista stands have operated in and around Everett since at least 2009.  The baristas working at these stands wear what they call "bikinis," but the City describes them as "nearly nude employees," and the district court made clear that their attire is significantly more revealing than a typical bikini.  The district court's finding that at least some of the baristas wear little more than pasties and g-strings is well-supported by the record.

Beginning in summer 2009, the Everett Police Department (EPD) began fielding numerous citizen complaints related to bikini barista stands.  One complainant asserted that she observed a female barista wearing "pasties" and "a thong and what appeared to be garter belts sitting perched in the window with her feet on the ledge[.]"  The complainant went on to describe how a customer in a truck approached the window and began "groping" the barista in intimate areas.  According to the complainant, "the next customer in line . . . was clearly touching his genitals through his clothes as he was waiting his turn."  Stuck in traffic, the complainant wrote that she "had to sit there w/ my 2 young daughters and was so disgusted[.]"

After receiving upwards of forty complaints, EPD launched an undercover investigation and documented that some baristas at this type of stand were openly violating the existing criminal code prohibiting various forms of lewd conduct. At the time, EMC § 10.24.010 defined lewd conduct to include exposure or display of one's genitals, anus or any portion of the areola or nipple of the female breast, but EPD's investigation revealed that some of the bikini baristas removed their costumes entirely. EPD also discovered that some baristas were not paid hourly wages and worked for tips only, resulting in pressure to engage in lewd acts, and that other baristas were paid wages but still performed lewd acts in exchange for large tips. Everett undercover police officers took a series of graphic photos documenting the extremely revealing nature of the baristas' garb and instances in which baristas removed their tops and bottoms altogether. Officers also documented a wide variety of customer-barista physical contact. At least one bikini stand owner was convicted of sexually exploiting a minor after he was caught employing a sixteen-year old at one of the bikini stands. *See State v. Wheeler*, No. 72660-9-I, 2016 WL 1306132, at *1–3 (Wash. Ct. App. 2016). Another stand turned out to be a front for a prostitution ring, and some of the baristas, who worked in isolated locations late at night, reported being victims of sexual violence. A Snohomish County Sheriff's Deputy was convicted of a criminal offense after helping an owner evade the City's undercover officers in exchange for sexual favors.

Enforcing the City's existing lewd conduct ordinance required extensive use of undercover officers and proved to be both expensive and time consuming. The City also complained that policing the stands detracted from EPD's efforts to address the City's other priorities.

After five years of using undercover operations to prosecute individual offenders, EPD decided its "investigative approach was an ineffective and resource-intensive method of motivating stand owners to stop the illegal conduct" and it began collaborating with the City on a legislative fix.   The City complied by enacting EMC §§ 5.132.010–060, a Dress Code Ordinance applicable only to "Quick-Service Facilities" like drive-throughs and coffee stands.   The City also amended its criminal code to broaden the definition of "lewd act" and created the crime of Facilitating Lewd Conduct.   *See* EMC §§ 10.24.010; 10.24.025.   Because the constitutional challenges in this case focus on the text and effect of these enactments, we describe each in some detail.

## A.  The Lewd Conduct Amendments

The Lewd Conduct Amendments expanded the definition of "lewd act" to include:

> An exposure or display of one's genitals, anus, bottom one-half of the anal cleft, or any portion of the areola or nipple of the female breast[] or [a]n exposure of more than one-half of the part of the female breast located below the top of the areola; provided that the covered area shall be covered by opaque material and coverage shall be contiguous to the areola.

EMC § 10.24.010(A)(1)–(2).   An "owner, lessee, lessor, manager, operator, or other person in charge of a public place" commits the offense of Facilitating Lewd Conduct if that person "knowingly permits, encourages, or causes to be

committed lewd conduct" as defined in the ordinance.  *Id.* § 10.24.025(A).   Findings supporting the City's Lewd Conduct Amendments state that the City "seeks to protect its citizens from those who profit from facilitating others to engage in the crime of Lewd Conduct, and so deems it necessary . . . to create the new crime Facilitating Lewd Conduct, a gross misdemeanor punishable by a maximum penalty of 364 days in jail and a $5,000.00 fine[.]"

**B.  The Dress Code Ordinance**

The City did not hide its effort to specifically address the problems associated with the bikini barista stands when it adopted the Dress Code Ordinance.  The very first factual finding in the enactment establishing the Dress Code stated that "[t]he City has seen a proliferation of crimes of a sexual nature occurring at bikini barista stands throughout the City[.]"   The next paragraph memorialized the City's conclusion "that the minimalistic nature of the clothing worn by baristas at these 'bikini' stands lends itself to criminal conduct[.]"

The Dress Code Ordinance requires all employees, owners, and operators of "Quick-Service Facilities" to comply with a "dress requirement" mandating coverage of "minimum body areas."  EMC § 5.132.020(A).  Minimum body areas are further defined as "the upper and lower body (breast/pectorals, stomach, back below the shoulder blades, buttocks, top three inches of legs below the buttocks, pubic area and genitals)."  *Id.* § 5.132.020(B).  The Dress Code Ordinance defines Quick-Service Facilities as "coffee stands, fast food restaurants, delis, food trucks, and coffee shops" in addition to all other drive-through restaurants.  *Id.* § 5.132.020(C).  This ordinance prohibits owners of Quick-

Service Facilities from operating their businesses if any employee is not in full compliance with the dress requirement.  EMC § 5.132.040(A)(1).  Violations are deemed civil infractions.  *Id.*  To ensure that stand owners are motivated to enforce the dress code, the City instituted a $250 fine for first time offenders.  EMC § 5.132.040(B)(1).  Repeat offenders face stiffer fines and risk losing their business licenses.  EMC § 5.132.040(B)(1)–(2).  In enacting these provisions, the City expressed its intent to "provide powerful tools for reducing the illegal conduct that has occurred at bikini barista stands in a cost-effective manner."

## II. Procedural Background

Plaintiff Jovanna Edge owns Hillbilly Hotties, a bikini barista stand in Everett.  Plaintiffs Leah Humphrey, Liberty Ziska, Amelia Powell, Natalie Bjerke, and Matteson Hernandez are, or at one time were, baristas employed at Hillbilly Hotties.  Approximately one week after the Lewd Conduct Amendments and Dress Code Ordinance went into effect, plaintiffs filed this lawsuit alleging multiple constitutional violations, two of which are relevant to this appeal.  Plaintiffs' complaint alleges: (1) that the Dress Code Ordinance and the Lewd Conduct Amendments violate their First Amendment rights to free expression, and (2) that the new provisions violate the Due Process Clause because they are unconstitutionally vague.

Plaintiffs' First Amendment free expression claim asserts that the baristas convey messages such as "female empowerment," "confiden[ce]," and "fearless body acceptance" by wearing bikinis while working.  In support of their motion for a preliminary injunction, plaintiffs submitted declarations from several baristas explaining their views that

"a bikini is not a sexual message, [it's] more a message of empowerment," "we are empowered to be comfortable in our bodies," "[t]he bikini sends the message that I am approachable," "the message I send is freedom[,]" and "my employees expose messages through tattoos and scars."**[1]**  The baristas assert that their choice of clothing demonstrates that they are "fun and more open," and that wearing bikinis at work shows they are "empowered, confident, and free." Plaintiff Edge, owner of Hillbilly Hotties, explained that her employees' dress allows them to "tell stories of who they are[.]"

Notably, in the district court and on appeal, plaintiffs persistently disavow that they are nude dancers or that they engage in erotic performances, conduct that is expressly protected under the First Amendment. *See Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 566 (1991).**[2]**  Plaintiffs' argument is that simply *wearing* what they refer to as bikinis is itself sufficiently expressive to warrant First Amendment protection, and that the City's new ordinance and amendments therefore impermissibly burden their speech.

---

**[1]** We have considered all of plaintiffs' diverse messages.  For brevity, we refer to the baristas' intended messages as those "relating to empowerment and confidence" throughout this opinion, recognizing that each individual barista's intended message is likely somewhat unique.

**[2]** Nude dancing and erotic performances are subject to Everett's pre-existing ordinances regulating "public places of adult entertainment."  *See* EMC § 5.120.  These regulations require adult entertainment businesses to obtain licenses and adhere to standards of conduct and operations, among other restrictions.  *See* EMC §§ 5.120.030; 5.120.070.  Everett's zoning ordinances also restrict the location of adult businesses, excluding them from operating within the downtown core.  *See id.* §§ 19.05.090; 19.05 Table 5.2.

The City disputes the baristas' premise that the act of wearing pasties and g-strings at work constitutes speech. The City also offers extensive evidence of adverse secondary effects associated with the stands, including prostitution and sexual violence, and argues that the new ordinance and Lewd Conduct Amendments are aimed at those effects.

Plaintiffs' motion for a preliminary injunction alleged that the new measures are impermissibly vague because they use ambiguous language to define parts of the body that must be covered by employees, owners, and operators of barista stands, and that a person of ordinary intelligence is denied a reasonable opportunity to know what conduct the City now prohibits. The City's opposition denied that the text of the Dress Code Ordinance and Lewd Conduct Amendments is vague or ambiguous, but the City voluntarily agreed to suspend enforcement of the new measures pending resolution of plaintiffs' motion for a preliminary injunction.

## III. The Preliminary Injunction

In *Winter v. Natural Resources Defense Council*, the Supreme Court held that a plaintiff seeking a preliminary injunction must establish "[(1)] that he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his favor, and [(4)] that an injunction is in the public interest." *Coffman v. Queen of Valley Med. Ctr.*, 895 F.3d 717, 725 (9th Cir. 2018) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)) (alterations in original). "Likelihood of success on the merits is the most important factor; if a movant fails to meet this threshold inquiry, we need not consider the other factors." *California*

*v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (internal quotation marks omitted).

The district court applied the *Winter* factors and concluded that plaintiffs had demonstrated a likelihood of success on the merits of their vagueness challenges. The court expressed concern that the compound term "anal cleft" in the definition of "lewd act" is vague, and also ruled that both ordinances are susceptible to "arbitrary enforcement." Separately, the court concluded that plaintiffs had established a likelihood of success on the merits of their First Amendment free expression challenge to the Dress Code Ordinance, a ruling based on the court's conclusion that the act of wearing pasties and g-strings at Quick-Service Facilities was sufficiently expressive to merit constitutional protection.

The district court decided that plaintiffs had satisfied the remaining *Winter* factors, *see* 555 U.S. at 7, and enjoined enforcement of the new ordinances and amendments.

## IV.  Standard of Review

We review the district court's order granting a preliminary injunction "for an abuse of discretion," *Gorbach v. Reno*, 219 F.3d 1087, 1091 (9th Cir. 2000) (en banc), but "legal issues underlying the injunction are reviewed de novo because a district court would necessarily abuse its discretion if it based its ruling on an erroneous view of law." *Adidas Am., Inc. v. Sketchers USA, Inc.*, 890 F.3d 747, 753 (9th Cir. 2018) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204 (9th Cir. 2000)). When an injunction involves a First Amendment challenge, constitutional questions of fact (such as whether certain restrictions create a severe burden on

an individual's First Amendment rights) are reviewed de novo. *See Prete v. Bradbury*, 438 F.3d 949, 960 (9th Cir. 2006) (citing *Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1070 (9th Cir. 2002)).

## V. The Lewd Conduct Amendments

We first analyze the Lewd Conduct Amendments, which expanded the definition of "lewd act" and also created the misdemeanor offense of Facilitating Lewd Conduct.

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). That said, we recognize that "[c]ondemned to the use of words, we can never expect mathematical certainty from our language." *Id.* at 110. To put a finer point on it: "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *United States v. Williams*, 553 U.S. 285, 304 (2008) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)).

The vagueness doctrine incorporates two related requirements. First, "laws [must] give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned*, 408 U.S. at 108. Typically, all that is required to satisfy this due process concern is "'fair notice' of the conduct a statute proscribes." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018). But "where [F]irst [A]mendment freedoms are at stake, an even greater degree of specificity and clarity of laws is required," *Kev, Inc. v. Kitsap Cty.*, 793 F.2d 1053, 1057 (9th Cir. 1986) (citing *Grayned*, 408 U.S. at 108–09), and

14          EDGE V. CITY OF EVERETT

courts ask whether language is sufficiently murky that "speakers will be compelled to steer too far clear of any forbidden area[s.]"  *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 588 (1996) (internal quotation marks omitted). This enhanced standard protects against laws and regulations that might have the effect of chilling protected speech or expression by discouraging participation.

The vagueness doctrine's second requirement aims to avoid "arbitrary and discriminatory enforcement," and demands that laws "provide explicit standards for those who apply them."  *Grayned*, 408 U.S. at 108.  A law that relies on a subjective standard—such as whether conduct amounts to an "annoyance"—is constitutionally suspect.  *See id.* at 113. In *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971), for example, an ordinance was deemed unconstitutionally vague because it criminalized the assembly of three or more persons on city sidewalks if they conducted themselves in a manner annoying to passers by.  The Supreme Court observed that "[c]onduct that annoys some people does not annoy others," *id.*, and it struck down the ordinance because "men of common intelligence must necessarily guess at its meaning." *Id*. (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)).

Here, the district court concluded that the amended definition of "lewd act" similarly fails to give a person of ordinary intelligence a reasonable opportunity to conform his or her conduct to the City's law.  The court explained that it was "uncertain as to the meaning of the compound term 'anal cleft' as used" in the amended definition, because "[t]he term 'bottom one-half of the anal cleft' is not well-defined or reasonably understandable[.]"   We reach the opposite conclusion.  Having examined the text adopted by the City,

we are not persuaded that the public will be left to guess at the meaning of the term "anal cleft," particularly because the meanings of both "anal" and "cleft" are easily discerned through recourse to a common dictionary.  *See*, *e.g.*, *United States v. Wyatt*, 408 F.3d 1257, 1261 (9th Cir. 2005) (relying in part on the dictionary definition of an allegedly ambiguous term); *Kev, Inc.*, 793 F.2d at 1057 (same).[3]  Moreover, "[t]his circuit has previously recognized that otherwise imprecise terms may avoid vagueness problems when used in combination with terms that provide sufficient clarity." *Gammoh v. City of LaHabra*, 395 F.3d 1114, 1120 (9th Cir. 2005) (citing *Kev, Inc.*, 793 F.2d at 1057).   The Lewd Conduct Ordinance uses the term "anal cleft" in near proximity to a list of other intimate body parts.  Viewing these facts together, we conclude that a person of ordinary intelligence reading the ordinance in its entirety will be adequately informed about what body areas cannot be exposed or displayed "in a public place or under circumstances where such act is likely to be observed by any member of the public."  EMC § 10.24.020.  Likewise, we conclude that the modifier "bottom one-half" does no more than specify an easily ascertained fractional part of an otherwise well-understood area of the body.  Plaintiffs do not expressly challenge the new misdemeanor Facilitating Lewd Conduct on vagueness grounds, but we note that this provision does no more than prohibit owners, operators, lessors, lessees or any person "in charge of a public place"

---

[3] Merriam-Webster defines "anal" as "of, relating to, *situated near*, or involving the anus" and defines "cleft" as "a space or opening made by or as if by splitting." (emphasis added).  It goes on to identify the phrase "the anal cleft of the human body" as an example.  *See* Merriam-Webster Online Dictionary, www.merriam-webster.com/dictionary/cleft (last visited June 25, 2019).  We agree with the City that "[t]here is only one possible portion of the human body that fits this description."

from knowingly permitting, or causing another person to commit lewd conduct as defined in EMC § 10.24.010. This prohibition is clear, as is the definition of lewd conduct. We therefore hold that the activity the Lewd Conduct Amendments prohibit is reasonably ascertainable to a person of ordinary intelligence.[4]

The second part of the vagueness test concerns whether the Lewd Conduct Amendments are amenable to unchecked law enforcement discretion. *See, e.g.*, *Papachristou v. City of Jacksonville*, 405 U.S. 156, 169–70 (1972).[5] Definitions of proscribed conduct that rest wholly or principally on the

---

[4] The district court did not analyze whether any term other than "anal cleft" is reasonably ascertainable to a person of ordinary intelligence, and we decline to do so in the first instance.

[5] The Jacksonville, Florida ordinance at issue in *Papachristou* deemed the following people "vagrants" and therefore guilty of a criminal offense:

> Rogues and vagabonds, or dissolute persons who go about begging, common gamblers, persons who use juggling or unlawful games or plays, common drunkards, common night walkers, thieves, pilferers or pickpockets, traders in stolen property, lewd, wanton and lascivious persons, keepers of gambling places, common railers and brawlers, persons wandering or strolling around from place to place without any lawful purpose or object, habitual loafers, disorderly persons, persons neglecting all lawful business and habitually spending their time by frequenting houses of ill fame, gaming houses, or places where alcoholic beverages are sold or served, persons able to work but habitually living upon the earnings of their wives or minor children[.]

*Papachristou*, 405 U.S. at 156 n.1.

subjective viewpoint of a law enforcement officer run the risk of unconstitutional murkiness. *See*, *e.g.*, *Gammoh*, 395 F.3d at 1119–20 (collecting cases); *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 554–55 (9th Cir. 2004). Everett's definition of lewd conduct requires that certain areas of the body be covered in public and as we have explained, the definition is not ambiguous. Nor does the definition rely on the subjective assessment of an enforcing officer. The term "anal cleft" is clear and ascertainable and what constitutes the "bottom half" of this unambiguously described part of the human body is also an objective standard. In short, EMC § 10.24.010's description of the body parts that must be covered in public does not create a constitutional problem by inviting discretionary enforcement because there are "standards governing the exercise of the discretion granted by the ordinance[.]" *Papachristou*, 405 U.S. at 170.

Plaintiffs argue that there will be close cases requiring some degree of law enforcement subjectivity when the Lewd Conduct Amendments are enforced, and the district court shared this concern. But "the mere fact that close cases can be envisioned" does not render an otherwise permissible statute unconstitutionally vague. *Williams*, 553 U.S. at 305. The Supreme Court has observed in other criminal contexts that close cases are addressed "not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt." *Id.* at 306. Put another way, in close cases, a fact finder will decide whether the City has met its burden by the required standard of proof. That determination does not raise constitutional vagueness concerns *so long as* the legal standard against which it is measured is sufficiently clear. All a statute must define with specificity is what the fact finder is required to decide in any given case. *See id.* ("What renders a statute vague is not the possibility that it

will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather *the indeterminacy of precisely what that fact is*." (emphasis added)).

The district court abused its discretion by ruling that plaintiffs are likely to succeed on the merits of their void-for-vagueness challenge to the Lewd Conduct Amendments. We therefore vacate the district court's preliminary injunction with respect to the Lewd Conduct Amendments.

## VI.  The Dress Code Ordinance

We next consider the district court's order enjoining enforcement of the Dress Code Ordinance.  EMC § 5.132.030 mandates that employees, operators, and owners of "Quick-Service Facilities" comply with the City's dress requirement. The Dress Code Ordinance makes it unlawful to serve customers or operate a Quick-Service Facility if "minimum body areas" of the owner or any employee are not covered. EMC § 5.132.030.  "Minimum body areas" are defined as: "breast/pectorals, stomach, back below the shoulder blades, buttocks, top three inches of legs below the buttocks, pubic area and genitals."  EMC § 5.132.020(B).  The district court enjoined the Dress Code Ordinance for two distinct reasons: (1) the court concluded that the Dress Code Ordinance's susceptibility to arbitrary enforcement renders it unconstitutionally vague; and (2) the district court concluded that the Dress Code Ordinance likely fails First Amendment review because it impermissibly burdens plaintiffs' rights to free expression.  We address each rationale in turn.

## A. Vagueness

The vagueness principles governing our analysis of the Lewd Conduct Amendments apply with equal force to the Dress Code Ordinance. The fact that law enforcement may have to make some close judgment calls regarding compliance with these provisions does not, perforce, mean that police are vested with impermissibly broad discretion. *See Williams*, 553 U.S. at 306. The terms of the Dress Code Ordinance are sufficiently clear to preclude enforcement on "an ad hoc and subjective basis" because the dress requirement clearly defines areas of the body that owners and employees must cover while operating Quick-Service Facilities, using commonly understood names for those body areas. *Hunt v. City of L.A.*, 638 F.3d 703, 712 (9th Cir. 2011). Enforcement does not require subjective judgments. *Id.* All an officer must determine is whether the upper body (specifically, the breast/pectorals, stomach, back below the shoulder blades) and lower body (the buttocks, top three inches of legs below the buttocks, pubic area and genitals) are covered. The meaning of these parts of the body is not beyond the common experience of an ordinary layperson, and the ordinance does not require that officers assessing potential violations delve into subjective questions. *Cf. id.* (observing that what constitutes a "religious, political, philosophical, or ideological" message is subjective). Because the Dress Code Ordinance is not open to the kind of arbitrary enforcement that triggers due process concerns, the vagueness doctrine does not warrant an injunction prohibiting enforcement of the Dress Code Ordinance.

**B.  Free Expression**

The district court also concluded that plaintiffs demonstrated a likelihood of success on the merits of their First Amendment challenge to the Dress Code Ordinance. This part of the court's order relied on its determination that the baristas' choice to wear provocative attire (pasties and g-strings) constituted sufficiently expressive conduct to warrant First Amendment protection, that the Dress Code Ordinance amounted to a content-neutral restriction on the baristas' speech, and that the Dress Code Ordinance failed intermediate scrutiny under the "secondary effects" line of cases. *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48 (1986) (applying intermediate scrutiny to ordinances aimed at combating the side-effects of adult and sexually oriented businesses).

"The First Amendment literally forbids the abridgment only of 'speech,'" but the United States Supreme Court has "long recognized that its protection does not end at the spoken or written word." *Texas v. Johnson*, 491 U.S. 397, 404 (1989). The Supreme Court refers to non-speech activity that is within the ambit of the First Amendment's protections as "expressive conduct." *See*, *e.g.*, *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984). Conduct that is "sufficiently imbued with elements of communication" is protected by the First Amendment, *Johnson*, 491 U.S. at 404 (quoting *Spence v. Washington*, 418 U.S. 405, 409 (1974) (per curiam)), but the Court "has consistently rejected 'the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea.'" *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1058 (9th Cir. 2010) (quoting *United States v. O'Brien*, 391 U.S. 367, 376 (1968)).

The Court has never "invalidated the application of a general law simply because the conduct that it reached was being engaged in for expressive purposes and the government could not demonstrate a sufficiently important state interest." *Barnes*, 501 U.S. at 577 (Scalia, J., concurring). "Because the Court has eschewed a rule that 'all conduct is presumptively expressive,' individuals claiming the protection of the First Amendment must carry the burden of demonstrating that their nonverbal conduct meets the applicable standard." *Knox v. Brnovich*, 907 F.3d 1167, 1181 (9th Cir. 2018) (quoting *Clark*, 468 U.S. at 293 n.5).

Expressive conduct is characterized by two requirements: (1) "an intent to convey a particularized message" and (2) a "great" "likelihood . . . that the message would be understood by those who viewed it." *Johnson*, 491 U.S. at 404 (quoting *Spence*, 418 U.S. at 410–11); *see also Vivid Entm't, LLC v. Fielding*, 774 F.3d 566, 579 (9th Cir. 2014). With respect to the first requirement—an intent to convey a particularized message—First Amendment protection is only granted to the act of wearing particular clothing or insignias where circumstances establish that an unmistakable communication is being made. *See*, *e.g.*, *Nat'l Socialist Party of Am. v. Village of Skokie*, 432 U.S. 43 (1977) (per curiam) (declining to enjoin Nazi marchers from wearing symbols of ideology in parade); *Cohen v. California*, 403 U.S. 15, 18 (1971) (concluding that a person wearing a jacket bearing the inscription "F— the Draft" was entitled to First Amendment protections); *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 505–06 (1969) (holding that students who wore black armbands to protest Vietnam War engaged in expressive conduct "'closely akin to pure speech[.]'").

Even if plaintiffs could show that their intent is to convey a particularized message, and thereby satisfy the first requirement for classification as expressive conduct, *Johnson*, 491 U.S. at 404, plaintiffs' First Amendment claim falters for failure to show a great likelihood that their intended message will be understood by those who receive it.  *See id.*

Context is everything when deciding whether others will likely understand an intended message conveyed through expressive conduct.  To decide whether the public is likely to understand the baristas' intended messages related to empowerment and confidence, we consider "the surrounding circumstances[.]"  *Spence*, 418 U.S. at 411.  The Supreme Court made this clear in *Spence*, where a college student displayed a flag with an attached peace symbol from his university dorm room "roughly simultaneous with" the United States' invasion of Cambodia and the Kent State shootings.  *Id.* at 410.  Under these circumstances, the Supreme Court observed that "it would have been difficult for the great majority of citizens to miss the drift of [the student's] point at the time that he made it."  *Id.*  Likewise, the choice to wear military medals—even medals one has not earned—"communicates that the wearer was awarded that medal and is entitled to the nation's recognition and gratitude 'for acts of heroism and sacrifice in military service.'" *United States v. Swisher*, 811 F.3d 299, 314 (9th Cir. 2016) (en banc) (quoting *United States v. Alvarez*, 567 U.S. 709, 724 (2012) (Kennedy, J., plurality opinion)).  In the same way, a student group's choice to wear black arm bands to school during the 1965 holiday season was protected by the First Amendment because the group's intended anti-Vietnam War message "was closely akin to 'pure speech[.]'"  *Tinker*, 393 U.S. at 505.

The context here is starkly different from cases where First Amendment protection has been extended to expressive clothing or symbols. The Dress Code Ordinance applies at Quick-Service Facilities—coffee stands, fast food restaurants, delis, food trucks, coffee shops and drive-throughs. *See* EMC § 5.132.020(C). In other words, it applies at retail establishments that invite commercial transactions, and in these transactions, the baristas undisputedly solicit tips. The baristas' act of wearing pasties and g-strings in close proximity to paying customers creates a high likelihood that the message sent by the baristas' nearly nonexistent outfits vastly diverges from those described in plaintiffs' declarations. The commercial setting and close proximity to the baristas' customers makes the difference.

Because plaintiffs have not demonstrated a "great likelihood" that their intended messages related to empowerment and confidence will be understood by those who view them, we conclude that the mode of dress at issue in this case is not sufficiently communicative to merit First Amendment protection.

We stress that plaintiffs deny that they engage in nude dancing and erotic performances, thereby disavowing the First Amendment protections available for that conduct. *See Barnes*, 501 U.S. at 566. The outcome of this case turns on the plaintiffs' contention that the act of wearing almost no clothing while serving coffee in a retail establishment constitutes speech. Because wearing pasties and g-strings while working at Quick-Service Facilities is not "expressive conduct" within the meaning of the First Amendment, the Dress Code Ordinance does not burden protected expression.

The district court's application of intermediate scrutiny under the "secondary effects" line of authority was inapposite because that doctrine applies to regulations that burden speech within the ambit of the First Amendment's sphere of protection. *See World Wide Video of Wash., Inc. v. City of Spokane*, 368 F.3d 1186, 1192 (9th Cir. 2004). Here, because the Dress Code Ordinance does not burden expressive conduct protected by the First Amendment, the City need only demonstrate that it "promotes a substantial government interest that would be achieved less effectively absent the regulation." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc*., 547 U.S. 47, 67 (2006) (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)). The district court did not analyze the ordinance under this framework, so we vacate its preliminary injunction and remand for further proceedings.

**VACATED AND REMANDED.**