UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOVANNA EDGE, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF EVERETT, a Washington Municipal Corporation,<br><br>    Defendant. | Case No. C17-1361RSM<br><br>ORDER RE: MOTIONS FOR SUMMARY JUDGMENT |

## I.    INTRODUCTION

This case comes before the Court on the parties' Motions for Summary Judgment, Dkts. #74 and #76. The Court has determined that it can rule without oral argument. For the following reasons, the Court GRANTS IN PART and DENIES IN PART these Motions as stated below.

## II.    BACKGROUND

The general background facts of this case have been set forth previously by this Court when granting Plaintiff's Motion for Preliminary Injunction, Dkt. #55, and by the Ninth Circuit when that Order was appealed, Dkt. #65. These facts are generally sufficient for the Court's

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 1

analysis below.[1] The Court adopts the factual and procedural background set forth in the Ninth Circuit's Opinion. *See* Dkt. #65.

Plaintiffs Jovanna Edge and others are or were employed by "bikini barista stands." Plaintiffs challenge the constitutionality of two ordinances enacted by the City of Everett, Ordinance No. 3559-17 (the "Lewd Conduct Ordinance") and Ordinance No. 3560-17 (the "Dress Code Ordinance"). The Lewd Conduct Ordinance expanded the definition of a lewd act to include an exposure of "more than one-half of the part of the female breast located below the top of the areola," "the genitals, anus, bottom one-half of the anal cleft, or any portion of the areola or nipple of the female breast" and created the new crime of Facilitating Lewd Conduct. Dkt. #65 at 7–8. The Dress Code Ordinance requires all employees, owners, and operators of "Quick-Service Facilities" to wear clothing that covers "the upper and lower body (breast/pectorals, stomach, back below the shoulder blades, buttocks, top three inches of the legs below the buttocks, pubic area and genitals)." *Id.* at 8. The Ordinance defines Quick-Service Facilities as "coffee stands, fast food restaurants, delis, food trucks, and coffee shops" in addition to all other drive-through restaurants. *Id*. Violations are deemed civil infractions. *Id*. To ensure that stand owners are motivated to enforce the dress code, the City instituted a $250 fine for first time offenders. *Id*. Repeat offenders face increased fines and risk losing their business licenses.

Although the Dress Code Ordinance defines "Quick-Service Facilities" broadly, it is clear from the title ("an Ordinance concerning the regulation of Quick Service Facilities including Barista Stands") and the preamble (*e.g.*, "The City has seen a proliferation of crimes

---

[1] The parties have stipulated to "rely solely on the factual record already presented to the Court during the preliminary injunction proceedings, with the exception of expert witness testimony and supporting materials" in filing and defending the instant Motions. Dkt. #73.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 2

of a sexual nature occurring at bikini barista stands…") that this Ordinance was enacted to respond to the perceived problems associated with bikini barista stands. *See* Dkt. #1-2 at 2.

In their Complaint, Plaintiffs allege both Ordinances violated the First Amendment, the Fifth and Fourteenth Amendments (equal protection, vagueness and substantive due process), and corollary provisions in the Washington Constitution (art. I, sec. 5 (free speech) and art. I, sec. 12 (equal protection)). Dkt. #1.

This Court granted Plaintiffs' Motion for a Preliminary Injunction on December 4, 2017. Dkt. #55. In that Order, the Court found a likelihood of success on the merits with regard to Plaintiffs' Fourteenth and First Amendment claims. Specifically, the Court found that the Lewd Conduct Ordinance was likely void for vagueness and that both ordinances create dangers of arbitrary enforcement. The Court found that Plaintiffs' choice of clothing was communicative, the dress code ordinance was content neutral, that it was subject to intermediate scrutiny, and that it did not satisfy that test. Everett filed an appeal, which was granted. The Ninth Circuit found that the Lewd Conduct Ordinance was not void for vagueness and did not "create a constitutional problem by inviting discretionary enforcement." Dkt. #65 at 14–17. The Ninth Circuit ruled that "the vagueness doctrine does not warrant an injunction prohibiting enforcement of the Dress Code Ordinance." *Id*. at 19. Plaintiffs' First Amendment claims failed to "show a likelihood that their intended message will be understood by those who receive it." *Id*. at 22; *see also id.* at 23 ("The baristas' act of wearing pasties and g-strings in close proximity to paying customers creates a high likelihood that the message sent by the baristas' nearly nonexistent outfits vastly diverges from those described in plaintiffs' declarations."). The Ninth Circuit then provided a framework for this Court in thinking about the First Amendment claims:

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 3

> We stress that plaintiffs deny that they engage in nude dancing and erotic performances, thereby disavowing the First Amendment protections available for that conduct. *See Barnes*, 501 U.S. at 566. The outcome of this case turns on the plaintiffs' contention that the act of wearing almost no clothing while serving coffee in a retail establishment constitutes speech. Because wearing pasties and g-strings while working at Quick-Service Facilities is not "expressive conduct" within the meaning of the First Amendment, the Dress Code Ordinance does not burden protected expression.
>
> The district court's application of intermediate scrutiny under the "secondary effects" line of authority was inapposite because that doctrine applies to regulations that burden speech within the ambit of the First Amendment's sphere of protection. *See World Wide Video of Wash., Inc. v. City of Spokane*, 368 F.3d 1186, 1192 (9th Cir. 2004). Here, because the Dress Code Ordinance does not burden expressive conduct protected by the First Amendment, the City need only demonstrate that it "promotes a substantial government interest that would be achieved less effectively absent the regulation." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 67 (2006) (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)). The district court did not analyze the ordinance under this framework, so we vacate its preliminary injunction and remand for further proceedings.

*Id*. at 23. The Court now considers these claims on summary judgment.

### III.   DISCUSSION

**A. Legal Standard for Summary Judgment**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 4

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party.  *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004).  The Court must draw all reasonable inferences in favor of the non-moving party.  *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994).  However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### B. No Genuine Disputes of Material Fact

As an initial matter, the parties appear to agree that there are no genuine disputes as to any material facts such that entry of judgment as a matter of law would be precluded.  *See* Dkt. #74 at 8.  The parties have stipulated to the facts, although they disagree with the admissibility of certain expert testimony.  They have apparently agreed to submit the remaining issues in this case to the Court on these cross motions.

### C. First Amendment Claims

Plaintiffs allege in the Complaint that they use their clothing (or lack of it) to convey messages including "female empowerment, positive body image, freedom of choice, and personal and political viewpoints," and claim that the Dress Code and Lewd Conduct Ordinances infringe on their First Amendment right to convey such messages at work and on their free time in public areas of the City.  Dkt. #1 at 11-13.  Plaintiffs affirmatively "deny that they engage in nude dancing and erotic performances."  *Edge*, 929 F.3d at 669; Dkt. #32-1 at 4, 116, 208-09.

Plaintiffs do not contest dismissal of their First Amendment challenge to the Lewd Conduct Ordinance. The Court agrees that this claim should be dismissed for the reasons stated by the City of Everett. *See* Dkt. #74 at 11–12.

Turning to the Dress Code Ordinance, the Ninth Circuit has already ruled that it does not burden expressive conduct protected by the First Amendment and that the City of Everett need only demonstrate that it "promotes a substantial government interest that would be achieved less effectively absent the regulation." *See* Dkt. #65 at 23 (citing *Rumsfeld*, *supra*).

The City of Everett points to the record before the Everett City Council and this Court as sufficient to explain why this Ordinance "promotes a substantial government interest in reducing crime and other negative impacts stemming from the Quick Service business model and why the ability to do so would be less effective absent the regulation." Dkt. #74 at 10–11 (citing Dkt. #9-1 at 71; Dkt. #9-2; Dkt. #9-4 at 82-96; Dkt. #9-5 at 67-90; Dkt. #29 at 2-18; Dkt. #9-6 at 54-57). The City passed this Ordinance after seven police investigations of bikini barista stands uncovered criminal conduct. These investigations revealed that "baristas routinely appeared in the windows of coffee stands nude or partially nude, posed in various states of nudity, allowed customers to photograph and/or touch them for a fee, performed sexual 'shows,' openly advertised prostitution activities, and allowed customers to masturbate while watching them perform, all within public view." *Id*. at 5. The City Council considered the alternative of sticking with "existing enforcement tools," but the City argues that "prosecution of the baristas has proven ineffective and prosecuting stand owners required extensive, expensive undercover operations, which resulted in the creation of pornographic videos and photographs that engendered numerous public records requests and lawsuits over those images." *Id*. at 6 (citing Dkt. #9-5 at 71-75, 84; Dkt. #9-4 at 92-93, 96). The City notes that the

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 6

Ordinance "puts the burden on stand owners to regulate the conduct at their establishments at risk of losing their business license." *Id*. at 11.

The Court agrees that the undisputed existing record is sufficient to reach a ruling here. The Court need not consider the City's expert testimony. Reducing the crime associated with the bikini barista stands would alone be a substantial government interest, and Plaintiffs do not contend otherwise. The attempts by Plaintiffs to cloud the issue with expert testimony are unpersuasive and ultimately insufficient to overcome the test set forth by the Ninth Circuit. *See, e.g.,* Dkt. #82 at 26 ("[Plaintiffs' expert] concluded that the Ordinances have no positive impact on preventing crime…. Instead, commercial establishments, such as Starbucks or McDonald's actually experience higher incidents of crimes, specifically violent crimes, than the bikini-barista stands in Everett…. This evidence shows that crime prevention will be achieved more effectively absent the regulation because the bikini-barista stands are not the primary cause of serious crime."). The crimes at the bikini barista stands include sexual assault, but also prostitution. *See* Dkt. #65 at 6. The reduction of any of these crimes constitutes a substantial government interest, even if the ordinance cannot eliminate such crime. Plaintiffs speculate that a reduction in crime in one area comes at the expense of fighting crime in another. Although police resources are finite, the Dress Code Ordinance is designed to be enforced by the owners of the establishments, not with constant police patrols. The City of Everett need not show that this Ordinance is perfectly effective, or that it is better than an ordinance crafted by Plaintiffs' expert. The City need only show that a substantial government interest would be achieved *less* effectively without it. The City has clearly met this reduced standard. There is no genuine dispute of material fact, and this claim can be dismissed on summary judgment.[2]

---

[2] The Court declines to speculate as to the adoption of the Eleventh Circuit's reasonable-person test by the Ninth Circuit or Supreme Court, as sought by Plaintiffs. *See* Dkt. #76 at 27–28.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 7

Under the above reasoning, Plaintiffs' claims under Article 1, Section 5 of the Washington State Constitution are also dismissed.

### D. Equal Protection Clause Claim

Plaintiffs claim the Ordinances violate the Equal Protection Clause by discriminating against women and women-only businesses because (1) the Lewd Conduct Ordinance criminalizes the partial exposure or touching of female breasts but not male breasts and (2) the Dress Code Ordinance targets bikini-barista stands at which "only women work." Dkt. #1 at 13-14. The Complaint also indicates that the Ordinances discriminate against women by targeting "bikini wearing." *Id.* at 14.

The Equal Protection Clause requires that all similarly situated persons be treated alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Gender-based classifications require a heightened standard of review—intermediate scrutiny. *United States v. Virginia*, 518 U.S. 515, 531 (1996). Classifications based on sex must have an "exceedingly persuasive" justification, serve "important governmental objectives" and the means must be "substantially related to the achievement of those objectives." *Id.* at 533. Unlike race, sex is not a proscribed classification. *Id.* The Supreme Court has noted that "[p]hysical differences between men and women . . . are enduring" and "[t]he two sexes are not fungible[.]" *Id.* Therefore, there are "'[i]nherent differences' between men and women" that "we have come to appreciate [and] remain cause for celebration, but not for denigration of the members of either sex or for artificial constraints on an individual's opportunity." *Id*.

If the Ordinances do not impose gender-based classifications, the Court exercises a rational-basis review. That would require, at minimum, the Ordinances to "bear a rational

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 8

relationship to an independent and legitimate legislative end." *Romer v. Evans*, 517 U.S. 620, 633 (1996).

### 1. Lewd Conduct Ordinance

The City of Everett argues that this Ordinance does not discriminate on the basis of gender because it "prohibits both men and women from engaging in lewd conduct in public places, and it defines what constitutes lewd conduct by reference to both genders' most intimate body parts." Dkt. #74 at 14. To the City, the Ordinance's definition of lewd conduct to include exposure of the female but not male breast simply reflects the fact that "men and women are not fungible with respect to the traditional understanding of what constitutes nudity." *Id.* (citing *State v. Lilley*, 204 A.3d 198, 208 (N.H. 2019)).

Plaintiffs point out that *Lilley*, a New Hampshire state case, hardly summarizes the state of federal law on this issue:

> Every federal appellate decision to confront the issue after *Virginia* has either assumed or directly held that laws like the Lewd Conduct Ordinance trigger intermediate scrutiny. Where on "its face, the ordinance plainly does impose different rules for women and men," intermediate scrutiny must apply. *Tagami v. City of Chicago*, 875 F.3d 375, 380 (7th Cir. 2017), *as amended* (Dec. 11, 2017) (emphasis in original) (rejecting the same position advanced by the City here); *see Ways v. City of Lincoln*, 331 F.3d 596, 600 (8th Cir. 2003) (assuming without deciding); *see also Buzzetti v. City of New York*, 140 F.3d 134, 141 (2d Cir. 1998) (considering issue in context of challenge to adult-entertainment zoning law rather than lewd conduct ordinance).

Dkt. #82 at 15–16. The Court agrees with Plaintiffs' analysis of the law and concludes that the Lewd Conduct Ordinance on its face imposes different rules for women and men, triggering intermediate scrutiny.

The City of Everett nevertheless argues that the "'overwhelming majority' of courts have held that laws or ordinances prohibiting public exposure of female (but not male) breasts

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 9

do not violate equal protection." Dkt. #74 at 15 (citing *State v. Vogt*, 775 A.2d 551, 558 (N.J. Super. Ct. 2001); Dkt. #74 at 15 n.13 (citing *Ways v. City of Lincoln*, 331 F.3d 596, 600 (8th Cir. 2003); *Buzzetti v. City of New York*, 140 F.3d 134, 142-43 (2d Cir. 1998); *United States v. Biocic*, 928 F.2d 112, 115-16 (4th Cir. 1991); *SDJ, Inc. v. City of Houston*, 837 F.2d 1268, 1279-80 (5th Cir. 1988); *J & B Social Club No. 1, Inc. v. City of Mobile*, 966 F. Supp. 1131, 1139-40 (S.D. Ala. 1996); *Craft v. Hodel*, 683 F. Supp. 289, 299-301 (D. Mass. 1988); *Tolbert*, 568 F. Supp. at 1290; *City of Tucson v. Wolfe*, 917 P.2d 706, 707-09 (Ariz. Ct. App. 1995); *Locker v. Kirby*, 31 Cal. App. 3d 520, 526 (Cal. Ct. App. 1973); *State v. Turner*, 382 N.W.2d 252, 255-56 (Minn. Ct. App. 1986); *City of Jackson v. Lakeland Lounge of Jackson, Inc.*, 688 So.2d 742, 751-52 (Miss. 1996)). The City maintains that its objectives in "preventing the secondary adverse effects of public nudity and protecting the order, morality, health, safety, and well-being of the community are important or substantial interests" and that the Lewd Conduct Ordinance's "distinction between male and female breasts is substantially related to the City's objectives in protecting unwilling audiences from exposure to nudity (which, consistent with community standards, includes the public exposure of female breasts) and in simplifying enforcement activities with respect to lewd conduct violations." *Id*. at 16. In support of its contention that the treatment of public exposure of female breasts is consistent with community standards, the City of Everett notes:

> Numerous jurisdictions across Washington have adopted similar lewd conduct prohibitions applicable to conduct in streets, sidewalks, parks, and other public places. *See, e.g.*, Pierce Cty. Code 9.16.080 (criminalizing exposure of "any portion of the female breast lower than the upper edge of the areola"); Snohomish Cty. Code 10.04.010, .025 (criminalizing exposure of "[a]ny part of the areola or nipple of the female breast" and "[m]ore than one-half of the part of the female breast located below the top of the areola"); Kent Mun. Code 9.02.800 (similar); Olympia Mun. Code 9.24.010, .110 (criminalizing exposure of

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 10

"female breasts"); Bellevue Mun. Code 10.04.010- .020 (criminalizing exposure of "the female breast lower than the upper edge of the areola"); Tacoma Mun. Code 8.32.010-.020 (criminalizing exposure or display of "female breasts" in public places); Yakima Mun. Code 6.55.020 (criminalizing exposure of the "areola, the nipple and/or the area of the breast below the bottom of the areola of the female breasts" in a public place).

*Id*. at 16 n.16.

Plaintiffs' briefing relies on *Free the Nipple - Fort Collins v. City of Fort Collins*, 237 F. Supp. 3d 1126 (D. Colo. 2017), *aff'd*, 916 F.3d 792 (10th Cir. 2019), where the Tenth Circuit ruled in favor of challengers claiming equal protection violations arising from a lewd conduct ordinance prohibiting exposure of female breasts. As the City of Everett points out, the Tenth Circuit recognized its position was the minority viewpoint nationwide and that most other courts had upheld similar laws. Subsequent federal cases in other districts have declined to follow the Tenth Circuit's holding. *See City of Springfield*, 923 F.3d 508, 510 (8th Cir. 2019); *Eline v. Town of Ocean City*, 452 F. Supp. 3d 270, 281 (D. Md. 2020) *aff'd*, 7 F.4th 214 (4th Cir. 2021). Plaintiffs argue:

> As the Ninth Circuit noted, "the particular history of sex discrimination has led to judicial recognition that certain forms of purported state interest are illegitimate as justifications for sex discrimination, such as interests stemming from romantic paternalism toward women or sex stereotyping." *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 543 (9th Cir. 2004).
>
> The City's bare bones appeal to community standards and protecting women from exploitation are rooted in exactly such impermissible "romantic paternalism toward women or sex stereotyping." It is the embodiment of the belief that women must dress a certain way to avoid exciting men to sexual misconduct. Or that society should be able to tell women—but not men—to cover up certain body parts because others might find those parts sexual. Those beliefs are rooted in impermissible stereotypes about what is and is not proper dress and behavior for one's sex.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 11

> By contrast, the Baristas offer ample evidence that both Ordinances fail to serve the interests identified by the City, and that differences in sex and gender are not substantially related to those interests.

Dkt. #82 at 20. Plaintiffs rely on the expert testimony of Dr. Tomi-Ann Roberts, professor of psychology and Chair of the Psychology Department at Colorado College in Colorado Springs. While her testimony has value academically, it does little to illuminate community standards. Ms. Roberts did not speak with City of Everett community members about this issue. *See* Dkt. #80 at 53-54 (Roberts Dep. at 8:15-9:6).

The Court has considered the record and the case law above and finds that the Lewd Conduct Ordinance does not violate the Equal Protection Clause because the City's objectives in preventing the secondary adverse effects of public nudity and protecting the order, morality, health, safety, and well-being of the community are important or substantial interests properly addressed by the Ordinance. Although public attitudes about gender and sexuality are constantly changing and evolving, there is simply no basis on this record to conclude that the public exposure of female breasts no longer violates the community standards of the City of Everett, or that protecting those public sensibilities is not an important government interest. The Court finds that the City of Everett has met its burden of providing an exceedingly persuasive justification for treating the public exposure of bare breasts by females and males differently in the Ordinance, and that this is substantially related to the important governmental interest of protecting the public sensibilities of the City of Everett.

As acknowledged by the Fourth Circuit when addressing this issue last year, "[t]he judicial legacy of justifying laws on the basis of the perceived moral sensibilities of the public is far from spotless." *Eline v. Town of Ocean City*, 7 F.4th 214, 222. However, the Court agrees

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 12

here, as in that case, that "in this situation, protecting public sensibilities serves an important basis for government action." *Id*.

The Court agrees with the City of Everett that Plaintiffs' state law privileges and immunities claim under Article 1, Section 12 is subject to federal equal protection analysis and fails for the same reasons above. *See* Dkt. #74 at 20–21. Because Plaintiffs did not plead it, a claim under Washington State's Equal Rights Amendment is not properly before the Court.

### 2. Dress Code Ordinance

The parties appear to agree that the Dress Code Ordinance is "gender-neutral on its face." Dkt. #74 at 18; Dkt. #82 at 16. That would typically shift the Court's analysis from intermediate scrutiny to rational-basis review.

However, Plaintiffs can still trigger heightened scrutiny here in at least three ways. First, they can show that the law is covertly targeted at one gender. *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 274, (1979). Second, they can show that adverse effects of the law reflect invidious gender-based discrimination—*i.e.*, that "a gender-based discriminatory purpose has, at least in some measure, shaped" the law at issue. *Id*. at 274, 276. "Discriminatory purpose… implies more than intent as volition or intent as awareness of consequences…. [i]t implies that the decisionmaker… selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id*. at 279. Third, plaintiffs can show that an ostensibly neutral classification is an obvious pretext for discrimination based on the law's application. *Id*. at 275 (citing *Yick v. Hopkins*, 118 U.S. 356, 373–74 (1886)). If any of these tests are met, heightened scrutiny applies because "[c]lassifications based upon gender, not unlike those based upon race, have traditionally been the touchstone for pervasive and often subtle discrimination…[and] such

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 13

classifications must bear a close and substantial relationship to important governmental objectives…" *Id.* at 273.

The Court declines to find that the Dress Code Ordinance is covertly targeting one gender. Based on the undisputed facts, there is nothing covert in the Ordinance's intentions—it was clearly meant to address secondary problems caused by women wearing bikinis or "pasties and g-strings" in drive-thru settings.[3] To respond to those problems, it sets a dress code that applies to workers of all genders.

A better fit can be found in the other two tests. The Court finds that "a gender-based discriminatory purpose has, at least in some measure, shaped" the Ordinance. The record shows this Ordinance was passed in part to have an adverse impact on female workers at bikini barista stands. The Ordinance's ostensibly neutral classification is also an obvious pretext for discrimination based on the law's application. Plaintiffs' expert Dr. Roberts points out that the Dress Code Ordinance prohibits clothing typically worn by women rather than men, including mid-riff and scoop-back shirts, as well as bikinis. Dkt. #83-1 ("Roberts Report"), ¶ 18. There is evidence in the record that the bikini barista profession, clearly a target of the Ordinance, is entirely or almost entirely female. It is difficult to imagine how this Ordinance would be equally applied to men and women in practice. It appears designed to ban not just "pasties and g-strings" or bikinis, but a wide range of women's clothing. Intermediate scrutiny is appropriate here.

Under this heightened standard, the Ordinance must have an "exceedingly persuasive" justification, serve "important governmental objectives" and the means must be "substantially related to the achievement of those objectives." The City of Everett addresses this standard in

---

[3] As Plaintiffs point out, the City does not point to a single instance of a man being employed as a bikini barista in Everett. Dkt. #82 at 17.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 14

its Response to Plaintiffs' Motion. *See* Dkt. #78 at 14–19. Plaintiffs point to at least some expert testimony indicating that this Ordinance fails to serve the interests identified by the City. *See* Dkt. #76 at 19–20.

Some of this evidence is strong, and some of it weak. The City of Everett clearly has an interest in reducing secondary effects of the bikini barista stands like crime, lewd conduct, and exploitation. As stated above, the record shows that this business model has been linked to at least some incidents of prostitution, lewd conduct, and sexual assault. However, it does not necessarily follow that the Dress Code Ordinance "will further the City's goal of preventing these harms by establishing minimum dress requirements and making it easier to detect violations and hold owners accountable," as stated by the City. Dkt. #78 at 14. The means by which the City is attempting to reduce crime and lewd conduct—a dress code for drive-thrus that bans midriffs and scoop back shirts—is so broad as to veer from being "substantially related" to just "related." The Court is particularly swayed by Dr. Roberts' observations that this Ordinance poses an unreasonable risk of demeaning enforcement. Assuming the owners of bikini barista stands are unable or unwilling to enforce this dress code, at some point law enforcement will be asked to measure exposure of skin by some method. This "encourage[s] a humiliating, intrusive, and demoralizing search on women, disempowering them and stripping them of their freedom." Roberts Report at ¶ 31.

The Court finds that, although this Ordinance satisfies the lower standard set forth by the Ninth Circuit under the First Amendment, it does not satisfy the heightened standard under the Equal Protection Clause of the Fourteenth Amendment. This Ordinance clearly treats women differently than men by banning a wide variety of women's clothing, not just pasties and g-strings, or bikinis. The restrictions are so detailed they effectively prescribe the clothes to be

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 15

worn by women in quick service facilities.  In sum, the City has failed to demonstrate how this disparate treatment of women is substantially related to the achievement of the Ordinance's stated objectives.  Summary judgment in favor of Plaintiffs is warranted on this claim.[4]

E. **Substantive Due Process Claim**

Plaintiffs challenge the Ordinances on substantive due process grounds, claiming that both Ordinances infringe on their "liberty right to dress in the manner they so choose" and that the Dress Code Ordinance further infringes their "liberty right to engage in the occupation of their choice." Dkt. #1 at 16-17.

There is a limited "liberty interest" in one's personal appearance/dress. *See Kelley v. Johnson*, 425 U.S. 238, 244 (1976); *Neinast v. Bd. of Trustees of Columbus Metro. Library*, 346 F.3d 585, 596 (6th Cir. 2003).  To prevail on this claim, Plaintiffs must prove the Ordinances are "so irrational that [they] may be branded 'arbitrary,' and therefore a deprivation of [Plaintiffs'] 'liberty' interest[.]" *Kelley*, 425 U.S. at 248.

The City of Everett argues:

> As detailed above, the City has made reasonable determinations that the Ordinances are necessary to stem harmful effects of bikini barista stands and lewd conduct more generally. This satisfies rational basis review.
>
> Nor can Plaintiffs establish that the Dress Code Ordinance infringes on their right to engage in an occupation. To implicate this right, the Ninth Circuit has held that the regulation at issue must "operate as a complete prohibition" on the ability to pursue a profession. *Franceschi*, 887 F.3d at 938. And even when a law amounts to a complete prohibition, it will only be subject to the rational basis standard of review. As Plaintiffs admitted in depositions, neither Ordinance at issue here prevents them from working in the coffee service business. *See* Dkt. #32-1 at 220 (Powell at 102:20-25). The Ordinances simply impose minimum

---

[4] Because the Court has granted summary judgment on this claim, it finds a discussion of Article I, Section 12 of the Washington State Constitution unnecessary.  It is not analyzed by Plaintiffs, other than to state that it affords at least the same equal protection guarantees as those in the Fourteenth Amendment.  *See* Dkt. #76 at 13.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 16

>clothing requirements on Plaintiffs and all other employees of Quick Service Facilities. These requirements do not amount to a complete prohibition and, thus, do not violate substantive due process. *See Franceschi*, 887 F.3d at 938-39. And even if they did, the record demonstrates the reasonableness of the Ordinances and they easily pass rational basis review as discussed above. 29 Because Plaintiffs fail to show that the City "could have had no legitimate reason for its decision," their substantive due process claim should be dismissed. *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1234 (9th Cir. 1994) (quotations and emphasis omitted).

Dkt. #74 at 21–22.

The Court agrees. Under the undisputed facts, Plaintiffs have failed to show that these Ordinances are so irrational as to be arbitrary. These laws are clearly related, thinly at times, to the City's identified harms of crime prevention and the upholding of the community's sensibilities. While the Court agrees that the Dress Code Ordinance's language as to which body parts must be covered and by how many inches is excessive, such specifics are left to legislators under applicable case law and in any event the rational basis standard does not require that the City "choose the best means of advancing its goals;" all that is needed is some "rational connection" between the rule and the governmental interest, regardless of whether that rule is an "exact fit" for the interest at issue. *United States v. Navarro*, 800 F.3d 1104, 1114 (9th Cir. 2015) (citing *Vermouth v. Corrothers*, 827 F.2d 599, 603 (9th Cir. 1987); *Mauro v. Arpaio*, 188 F.3d 1054, 1059-60 (9th Cir. 1999)). The Ordinances do not infringe on Plaintiffs' right to engage in the occupation of serving coffee, and Plaintiffs have failed to convince the Court that their occupation should be construed more narrowly for purposes of this constitutional analysis. This claim is properly dismissed.

//

//

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 17

### F. Vagueness Claim

Plaintiffs concede that their claim that the Ordinances are void for vagueness is foreclosed by the Ninth Circuit's decision. Dkt. # 82 at 14 n.6 (citing 929 F.3d at 666-67). This claim is dismissed.

### G. Motions to Strike

The Court has considered the evidence submitted by the parties and the objections and declines to strike any of it. The evidence submitted into the record is consistent with the parties' stipulation. The Court has properly weighed the admissibility of hearsay testimony attacks on the opinions of experts go to the weight, not admissibility. Plaintiffs' expert reports have been properly submitted into the record. *See* Dkts. #83 – #85.

## IV. CONCLUSION

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS:

1) Defendant City of Everett's Motion for Summary Judgment, is GRANTED IN PART and DENIED IN PART. All of Plaintiffs' claims are DISMISSED except for Plaintiffs' claims that the Dress Code Ordinance violates the Equal Protection Clauses of the U.S. and Washington State Constitutions.

2) Plaintiffs' Motion for Summary Judgment, Dkt. #76, is GRANTED as to Plaintiffs' claims that the Dress Code Ordinance violates the Equal Protection Clause of the Fourteenth Amendment.

3) The Court DIRECTS the parties to meet and confer within 14 days of this Order regarding how to proceed, including the submission of an additional proposed order if necessary.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 18

DATED this 19th day of October, 2022.

						_____
						RICARDO S. MARTINEZ
						UNITED STATES DISTRICT JUDGE

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 19